# EXHIBIT 1

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
ALTERA DIGITAL HEALTH INC., a Delaware corporation; and DOES 1 through 10, inclusive



F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

MAR 26 2024

Y. Saldana

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
PALO VERDE HEALTHCARE DISTRICT, a public entity

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: | CASE NUMBER: *(Número del Caso):* |
|---|---|
| *(El nombre y dirección de la corte es):* Riverside County Superior Court<br><br>Blythe Courthouse - 265 North Broadway, Blythe, CA 92225 | CVPS 2401780 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Maria C. Roberts, SBN 137907, Greene & Roberts, 402 West Broadway, Suite 1025, San Diego, CA 92101; Tel: (619) 398-3400

| DATE: *(Fecha)* MAR 26 2024 | Clerk, by *(Secretario)* Y. Saldana | , Deputy *(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):*   ALTERA DIGITAL HEALTH INC., a Delaware corporation

   under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)      ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

Maria C. Roberts, SBN 137907
Greene & Roberts, 402 W. Broadway, Ste. 1025, San Diego, CA 92101

TELEPHONE NO.: (619) 398-3400          FAX NO.: (619) 330-4907
EMAIL ADDRESS: mroberts@greeneroberts.com
ATTORNEY FOR *(Name):* Plaintiff Palo Verde Healthcare District

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF  RIVERSIDE**
STREET ADDRESS: 265 North Broadway
MAILING ADDRESS: 265 North Broadway
CITY AND ZIP CODE: Blythe, CA  92225
BRANCH NAME: Blythe Courthouse

**F I L E D**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

MAR 26 2024

Y. Saldana

CASE NAME:
Palo Verde Healthcare District v. Altera Digital Health, Inc., et al.

| **CIVIL CASE COVER SHEET** | | **Complex Case Designation** | | CASE NUMBER: |
|---|---|---|---|---|
| [X] Unlimited (Amount demanded exceeds $35,000) | [ ] Limited (Amount demanded is $35,000 or less) | [ ] Counter  [ ] Joinder | | **CVPS 2401780** |

Filed with first appearance by defendant
(Cal. Rules of Court, rule 3.402)

JUDGE:

DEPT.:

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [X] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [ ] is  [X] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [X] monetary  b. [X] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action *(specify):* Four (4)
5. This case [ ] is  [X] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: March 26, 2024
Maria C. Roberts

*(TYPE OR PRINT NAME)*          ▶  *(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)*

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. January 1, 2024]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
*www.courts.ca.gov*

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Maria C. Roberts, SBN 137907 | |

Greene & Roberts, 402 W. Broadway, Ste. 1025, San Diego, CA  92101

TELEPHONE NO.: (619) 398-3400     FAX NO.: (619) 330-4907
EMAIL ADDRESS: mroberts@greeneroberts.com
ATTORNEY FOR *(Name):* Plaintiff Palo Verde Healthcare District

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  RIVERSIDE
STREET ADDRESS: 265 North Broadway
MAILING ADDRESS: 265 North Broadway
CITY AND ZIP CODE: Blythe, CA  92225
BRANCH NAME: Blythe Courthouse

CASE NAME:
Palo Verde Healthcare District v. Altera Digital Health, Inc., et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [x] Unlimited (Amount demanded exceeds $35,000) | [ ] Limited (Amount demanded is $35,000 or less) | [ ] Counter  [ ] Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | JUDGE: |
| | | | | DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [x] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [ ] is  [x] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [x] monetary  b. [x] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action *(specify):* Four (4)
5. This case [ ] is  [x] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: March 26, 2024
Maria C. Roberts
_____
(TYPE OR PRINT NAME)            ► *(signature)*            (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. January 1, 2024]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courts.ca.gov

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**CM-010**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
Damage/Wrongful Death
Uninsured Motorist (46) *(if the
case involves an uninsured
motorist claim subject to
arbitration, check this item
instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death) Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/
Wrongful Death
Product Liability *(not asbestos or
toxic/environmental)* (24)
Medical Malpractice (45)
Medical Malpractice–
Physicians & Surgeons
Other Professional Health Care
Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip
and fall)
Intentional Bodily Injury/PD/WD
(e.g., assault, vandalism)
Intentional Infliction of
Emotional Distress
Negligent Infliction of
Emotional Distress
Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
Practice (07)
Civil Rights (e.g., discrimination,
false arrest) *(not civil
harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice
*(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease
Contract *(not unlawful detainer
or wrongful eviction)*
Contract/Warranty Breach–Seller
Plaintiff *(not fraud or negligence)*
Negligent Breach of Contract/
Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open
book accounts) (09)
Collection Case–Seller Plaintiff
Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally
complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent
domain, landlord/tenant, or
foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
drugs, check this item; otherwise,
report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court
Case Matter
Writ–Other Limited Court Case Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor Commissioner
Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
*(arising from provisionally complex
case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of County)
Confession of Judgment *(non-domestic
relations)*
Sister State Judgment
Administrative Agency Award
*(not unpaid taxes)*
Petition/Certification of Entry of
Judgment on Unpaid Taxes
Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
Declaratory Relief Only
Injunctive Relief Only *(non-
harassment)*
Mechanics Lien
Other Commercial Complaint
Case *(non-tort/non-complex)*
Other Civil Complaint
*(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
Governance (21)
Other Petition *(not specified above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late Claim
Other Civil Petition

Fee Exempt
(Gov. Code, § 6103)

1   Maria C. Roberts, SBN 137907
    mroberts@greeneroberts.com
2   Nicolas J. Echevestre, SBN 273747
    nechevestre@greeneroberts.com
3   Noel J. Meza, SBN 331169
    nmeza@greeneroberts.com
4   GREENE & ROBERTS
    402 West Broadway, Suite 1025
5   San Diego, CA 92101
    Telephone:    (619) 398-3400
6   Facsimile:    (619) 330-4907

7   Attorneys for Plaintiff
    PALO VERDE HEALTHCARE DISTRICT

8

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

MAR 26 2024

Y. Saldana

9           SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                        COUNTY OF RIVERSIDE

11  PALO VERDE HEALTHCARE DISTRICT, a      Case No. CVPS 2401780
    public entity,
12                                          Judge:
                Plaintiff,                  Action Date:
13                                          Trial Date:      Not Yet Set
           v.
14                                          COMPLAINT FOR:
    ALTERA DIGITAL HEALTH INC., a Delaware
15  corporation, and DOES 1 through 10, inclusive,   1.  BREACH OF CONTRACT
                                            2.  VIOLATION OF BUS. & PROF. CODE
16              Defendants.                      §17200 ET SEQ.
                                            3.  BREACH OF IMPLIED COVENANT OF
17                                              GOOD FAITH AND FAIR DEALING
                                            4.  UNJUST ENRICHMENT
18

19

20

21

22

23

24

25

26

27

28

COMPLAINT

Plaintiff PALO VERDE HEALTHCARE DISTRICT hereby alleges:

1.     Plaintiff PALO VERDE HEALTHCARE DISTRICT ("PVHD") provides medical care to the underserved and vulnerable population of Blythe, California, and the surrounding areas. To enable the provision of such healthcare services, PVHD entered into an agreement (the "Agreement") with Defendant ALTERA DIGITAL HEALTH INC. ("ALTERA") for a functioning electronic health records system (the "EHR System").  As ALTERA has known at all times, the EHR System is ***critically important*** because it allows PVHD to perform the most basic—yet essential—functions of running a hospital, such as admitting patients, accessing patients' history, charting medical services, sending bills, and tracking payments and accounts receivable.

2.     Despite knowing how crucially important the EHR System is to PVHD's ability to function as a hospital and, more importantly, to provide medical care to its patients, ALTERA has repeatedly failed to fulfill its obligations under the Agreement.  Most notably, ALTERA provided PVHD with an EHR System that suffers from a number of significant defects, which prevent PVHD from, among other things, sending out bills correctly and processing accounts receivable.  As admitted by one of ALTERA's own employees: "***[The EHR System] is the worst system I have ever seen at a hospital client.***"  ALTERA's own employees have also conceded that the defects with the EHR System are ***ALTERA's own fault*** and that the defects have likely caused PVHD to lose tens of millions of dollars in revenue.  Yet, despite its obligations under the Agreement and continuous requests from PVHD, ALTERA has failed to fix *any* of the problems with the EHR System.

3.     To date, PVHD has paid more than $10 million to ALTERA under the Agreement. Nevertheless, ALTERA has threatened to completely cut off PVHD's access to the EHR System on April 1, 2024, unless PVHD pays it an *additional* $1.3 million.  But ALTERA is not entitled to this money because it is in breach of the Agreement.

4.     Permitting ALTERA to sever PVHD's access to the EHR System will cause ***irreparable harm*** to both PVHD and its patients.  Most notably, without access to the EHR System, PVHD will not have access to patient records, which will put the health and safety of thousands of patients at risk.  Treating healthcare workers will be ignorant about their patients' care history and doctors' orders, which at a minimum, will result in delayed medical treatment.

**THE PARTIES**

5.     Plaintiff PVHD is, and at all times mentioned in the complaint was, a public healthcare district formed and existing under the Local Hospital District Law, Health & Safety Code sections 32000, *et seq*. and is a California public entity.  PVHD operates Palo Verde Hospital, which is located in Blythe, California.

6.     PVHD is informed and believes, and thereupon alleges that, at all times mentioned in the complaint, Defendant ALTERA is a corporation incorporated under the laws of the state of Delaware and authorized to do business in California, with its principal place of business in Niagara Falls, New York.

7.     PVHD is ignorant of the true names and capacities of DOES 1 through 10 inclusive and will seek leave of court to amend this complaint to allege such names and capacities as soon as they are ascertained.

**JURISDICTION AND VENUE**

8.     The acts and transactions giving rise to this action occurred, in substantial part, in Blythe, County of Riverside, California.

9.     Additionally, under the terms of the Agreement that is the subject of the instant action, the obligations of ALTERA were to be performed, in substantial part, in Blythe, County of Riverside, California.

**FACTS**

10.     On March 31, 2015, PVHD entered into the Master Client Agreement with Allscripts Healthcare LLC (the "Agreement").  Allscripts Healthcare LLC was subsequently acquired by N. Harris Computer Corporation, which re-branded Allscripts Healthcare LLC to operate under its subsidiary Defendant, ALTERA. PVHD is informed and believes, and thereupon alleges that, ALTERA assumed all of Allscripts Healthcare LLC's contractual obligations under the Agreement.

11.     Pursuant to the terms of the Agreement, ALTERA agreed to provide PVHD with a functioning electronic health records software (the "EHR System").  In addition, ALTERA agreed to provide PVHD with a 24-hour help desk phone line, operated by a dedicated and qualified ALTERA

1  employee, to support PVHD when the EHR System encountered problems.  In exchange, PVHD

2  agreed to pay ALTERA monthly payments of approximately $67,400.

3       12.    In July 2023, PVHD hired a new Chief Financial Officer, William Van Noll, who

4  began to notice problems with the EHR System.  This prompted Mr. Van Noll to begin immediate

5  and regular communications with ALTERA's team about the issues with the system at PVHD.

6       13.    In response to Mr. Van Noll's calls and concerns, on August 15, 2023, ALTERA sent

7  a sales and account representative, Morgan Kinnett, to PVHD to inspect the EHR System firsthand.

8  After her review, Ms. Kinnett made the following statements to PVHD staff about the EHR System:

9         •  *"[It] is the worst system I have seen at a hospital client."*

10         •  "I have never seen a system so bad."

11         •  "I have never seen anything like this."

12       14.    In addition, on August 15, 2023, Ms. Kinnett said that ***PVHD had likely lost many***

13  ***millions of dollars in revenue*** due to EHR System's failures.  Ms. Kinnett also informed PVHD that

14  the dedicated support employee provided by ALTERA pursuant to the Agreement was only a

15  "generalist" and had no expertise in dealing with PVHD's EHR System or accounts receivable.

16       15.    On August 30, 2023, the CFO of PVHD had a meeting with ALTERA's Area Vice

17  President, Thomas McCabe, and ALTERA's Managed Services Program Director, Kelly Johnson.

18  During that meeting, ALTERA's Vice President stated that PVHD's EHR Software was "uglier than

19  what we had hoped for" and admitted that at least 50% of the issues were ALTERA's fault.

20       16.    During this August 30, 2023 meeting, Mr. McCabe and Ms. Johnson disclosed to

21  PVHD—for the first time—the true extent of the problems with the EHR System.  These issues were

22  previously unknown to PVHD, as they were only visible to ALTERA:

23  
24         •  ALTERA had set up PVHD's EHR System incorrectly so that it could not electronically recognize remittances;

25  
26         •  ALTERA had failed to correctly configure the Financial Classes, which prevents work queues from populating correctly, causes claims to go unfinished or unworked, and makes it difficult to know which balances need to be sent to patients;

27  
28         •  ALTERA had not provided PVHD's EHR System with necessary software updates or Managed IT services; and

- The EHR System was incorrectly showing balances for over 400 patients as $0 even though no money had been collected.

To date, none of the problems identified during the August 30, 2023 meeting have been remedied by ALTERA.

17.    In September 2023, PVHD discovered that the EHR Software was incorrectly sending bills to patients rather than the insurance company.  PVHD provided ALTERA with 174 examples of this issue, totaling over $630,000.  ALTERA's response was insufficient, as it blamed the problem on a "user error"—which was later demonstrated by PVHD to be false.  To date, this problem has not been fixed by ALTERA.

18.    Also in September 2023, PVHD determined that the EHR Software was incorrectly showing that claims had been billed even though there was no corresponding outbound claim that had been sent.  PVHD alerted ALTERA about this problem, but to date, this issue has not been fixed.

19.    In October 2023, PVHD informed ALTERA that charges for radiology were not being added to the billing claim.  To date, this issue has not been fixed by ALTERA.

20.    Also in October 2023, PVHD advised ALTERA that patients with recurring visits were not appearing in the queue/worklist for PVHD to bill.  To date, this issue has not been fixed by ALTERA.

21.    Despite its obligations under the Agreement, PVHD's continuous requests for help and ALTERA's assurances that all of the problems would be fixed and its receipt of more than $10 million, ALTERA never made any meaningful fixes to PVHD's EHR System.  Despite failing to perform its obligations under the Agreement to fix the EHR System, in November 2024, ALTERA demanded payment of $405,000 from PVHD.  When PVHD refused to pay this sum, ALTERA cut off all support services to PVHD on December 4, 2023.

22.    On January 31, 2024, despite still being in breach of its obligations under the Agreement to fix the EHR System, ALTERA threatened to completely cut off PVHD's access to the EHR System on April 1, 2024, unless PVHD pays it more than $1.3 million.

1

**FIRST CAUSE OF ACTION**

2

**(Breach of Contract)**

3    23.    PVHD incorporates by reference all of the foregoing paragraphs as if set forth herein.

4    24.    Effective March 31, 2015, the parties entered into the Agreement requiring ALTERA

5    to, among other things, provide PVHD with a functioning EHR System and a 24-hour "Managed IT

6    Support" or help desk phone line, operated by a dedicated and qualified ALTERA employee.

7    25.    PVHD has performed all conditions, covenants, and promises required of it under the

8    Agreement, except those conditions, covenants, and promises that have been excused.

9    26.    ALTERA has materially breached its obligations under the Agreement in numerous

10   respects, including but not limited to, the following:

11   • Failing to provide PVHD with a functioning EHR System;

12   • Refusing to fix the many defects in the EHR System after being put on notice of
13   such defects;

14   • Failing to provide a "qualified" employee to provide support to PVHD's EHR
15   System;

16   • Cutting off all support services to PVHD;

17   • Threatening to cut off PVHD's access to the EHR System, which is necessary to
     provide health care to thousands of patients, in order to extract payments to which
18   it is not entitled, not only because it breached the contract, but also because it
     overcharged PVHD for an upgrade PVHD did not receive and has received
19   millions of dollars in overpayments.

20   27.    PVHD did not, and could not, through the exercise of reasonable diligence, discover

21   ALTERA's breach of the Agreement prior to August 30, 2023.  PVHD was prevented from

22   discovering ALTERA's breach earlier as a result of ALTERA's own conduct and ALTERA's acts

23   causing the breach of contract were impossible for PVHD to detect.

24   28.    The material breaches by ALTERA have caused, and will continue to cause,

25   irreparable harm to PVHD.

26

27

28

## SECOND CAUSE OF ACTION

**(Unfair Business Practice in Violation of Bus. & Prof. Code § 17200, *et seq.*)**

29.   PVHD incorporates by reference all of the foregoing paragraphs as if set forth herein.

30.   The Unfair Competition Law defines "unfair competition" to include any "unfair" business act or practice.  (Bus. & Prof. Code § 17200.)  "A business practice is unfair within the meaning of the UCL if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits."  (*McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th 1457, 1473.)

31.   ALTERA has engaged in unfair business practices by, among other things, engaging in the following acts:

- Failing to provide PVHD with a functioning EHR System;
- Refusing to fix the many defects in the EHR System after being put on notice of such defects;
- Failing to provide a "qualified" employee to provide support to PVHD's EHR System; and
- Overcharging PVHD more than $2 million for services and support it did not provide.
- Cutting off all support services to PVHD;
- Threatening to cut off PVHD's access to the EHR System, which is necessary to provide health care to thousands of patients, in order to extract payments to which it is not entitled, not only because it breached the contract, but also because it overcharged PVHD for an upgrade PVHD did not receive and has received millions of dollars in overpayments.

32.   ALTERA's unfair business practices have caused, and will continue to cause, irreparable harm to PVHD.

33.   No reasonable person could have discovered the factual basis for ALTERA's unfair business practices claim prior to August 30, 2023.

34.   Unless ALTERA is enjoined from continuing to engage in such unfair business practices as described herein, PVHD will be irreparably damaged.  PVHD, therefore, is entitled to injunctive relief and other equitable relief under Business and Professions Code §17203.

**THIRD CAUSE OF ACTION**

**(Breach of Implied Covenant of Good Faith & Fair Dealing)**

35.     PVHD incorporates by reference all of the foregoing paragraphs as if set forth herein.

36.     Effective March 31, 2015, the parties entered into the Agreement requiring ALTERA to, among other things, provide PVHD with a functioning EHR System and a 24-hour help desk phone line, operated by a dedicated and qualified ALTERA employee.

37.     PVHD has performed all conditions, covenants, and promises required of it under the Agreement, except those conditions, covenants, and promises that have been excused.

38.     ALTERA failed to act fairly and/or in good faith and, as a result, prevented PVHD from receiving the benefits under the Agreement by, among other things:

- Failing to provide PVHD with a functioning EHR System;

- Refusing to fix the many defects in the EHR System after being put on notice of such defects;

- Failing to provide a "qualified" employee to provide support to PVHD's EHR System; and

- Threatening to cut off PVHD's access to the EHR System, which is necessary to provide health care to thousands of patients, in order to extract payments that it is not entitled to.

39.     PVHD did not, and could not, through the exercise of reasonable diligence, discover ALTERA's breach of the covenant of good and fair dealing prior to August 30, 2023.

40.     ALTERA's bad faith conduct has caused, and will continue to cause, irreparable harm to PVHD.

**FOURTH CAUSE OF ACTION**

**(Unjust Enrichment)**

41.     PVHD incorporates by reference all of the foregoing paragraphs as if set forth herein.

42.     PVHD has conferred upon ALTERA the benefit of approximately $10 million.

43.     It would be inequitable and unjust for ALTERA to be permitted to retain any of the money paid to it by PVHD because, among other things, ALTERA has:

- Engaged in unfair business practices that are prohibited by California Business & Professions Code § 17200, *et seq*.;

7

- Failed to provide PVHD with a functioning EHR System;

- Refused to fix the many defects in the EHR System after being put on notice of such defects;

- Failed to provide a "qualified" employee to provide support to PVHD's EHR System; and

- Threatened to cut off PVHD's access to the EHR System, which is necessary to provide health care to thousands of patients, in order to extract payments that it is not entitled to.

44.    ALTERA has been unjustly enriched as a result of their wrongful conduct. Accordingly, PVHD is entitled to equitable relief, including restitution and/or disgorgement, of all profits, money, and benefits ALTERA has obtained as a result of such unjust and inequitable business practices.

## **PRAYER FOR RELIEF**

**WHEREFORE**, PVHD prays for judgment against ALTERA as follows:

1.    A judgment that ALTERA has breached the Agreement with PVHD in violation of California law;

2.    A judgment that ALTERA has engaged in unfair competition in violation of Business and Professions Code § 17200 *et seq.;*

3.    A judgment that ALTERA has breached the implied covenant of good faith and fair dealing in violation of California law;

4.    That the Court enter an injunction that enjoins and prohibits ALTERA from removing, restricting, impeding, obstructing, or hindering PVHD's access to the EHR System and requiring ALTERA to promptly provide to PVHD all of its data contained within the EHR System in human, readable format.

5.    That PVHD be awarded restitution, including disgorgement, of all profits, money, and benefits obtained by ALTERA as a result of their wrongful conduct and acts of unjust enrichment;

6.    That PVHD be awarded any legally authorized attorneys' fees and costs; and

1      7.     That the Court grant all such other and further relief as the Court may deem just and

2 proper.

3

**<u>DEMAND FOR JURY TRIAL</u>**

4      PVHD hereby demands a trial by jury on all issues so triable.

5

6 Dated: March 26, 2024                   GREENE & ROBERTS LLP

7

8                             By: _Maria C Roberts_

9                                Maria C. Roberts
                                  Nicolas J. Echevestre

10                              Noel J. Meza
                              Attorneys for Defendant

11                              Palo Verde Healthcare District

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9
COMPLAINT

Fee Exempt
(Gov. Code, § 6103)

Maria C. Roberts, SBN 137907
mroberts@greeneroberts.com
Noel J. Meza, SBN 331169
nmeza@greeneroberts.com
GREENE & ROBERTS
402 West Broadway, Suite 1025
San Diego, CA 92101
Telephone:    (619) 398-3400
Facsimile:    (619) 330-4907

Attorneys for Plaintiff
Palo Verde Healthcare District

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

MAR 26 2024

Y. Saldana

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF RIVERSIDE – BLYTHE DIVISION

| | |
|---|---|
| PALO VERDE HEALTHCARE DISTRICT, a California public entity,<br><br>Plaintiff,<br><br>v.<br><br>ALTERA DIGITAL HEALTH INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. CVPS 2401780.<br><br>Judge:<br>Department:<br><br>**PLAINTIFF'S *EX PARTE* APPLICATION FOR TEMPORARY INJUNCTIVE RELIEF AND AN ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION**<br><br><u>SUPPORTING DOCUMENTS:</u><br>MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF WILLIAM VAN NOLL, SANDRA ANAYA, AND MARIA C. ROBERTS; (PROPOSED) TEMPORARY RESTRAINING ORDER; (PROPOSED) PRELIMINARY INJUNCTION<br><br>[Code Civ. Proc. §§ 525 *et seq.*; Cal. Rules of Court, rules 3.1150 and 3.1200 *et seq.*]<br><br>Hearing Date:    March 29, 2024<br>Time:    8 : 30 a.m.<br>Department:    PS1 |

PLAINTIFF'S *EX PARTE* APPLICATION FOR TEMPORARY INJUNCTIVE RELIEF AND
AN ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION

Fee Exempt
(Gov. Code, § 6103)

1    Maria C. Roberts, SBN 137907
     mroberts@greeneroberts.com
2    Noel J. Meza, SBN 331169
     nmeza@greeneroberts.com
3    GREENE & ROBERTS
     402 West Broadway, Suite 1025
4    San Diego, CA 92101
     Telephone:    (619) 398-3400
5    Facsimile:    (619) 330-4907

6    Attorneys for Plaintiff
     Palo Verde Healthcare District
7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              COUNTY OF RIVERSIDE – BLYTHE DIVISION

10   PALO VERDE HEALTHCARE DISTRICT, a    | Case No.
     California public entity,             |
11                                         | Judge:
                  Plaintiff,               | Department:
12                                         |
           v.                              | **PLAINTIFF'S *EX PARTE* APPLICATION
13                                         | FOR TEMPORARY INJUNCTIVE RELIEF
     ALTERA DIGITAL HEALTH INC., a Delaware | AND AN ORDER TO SHOW CAUSE FOR
14   corporation; and DOES 1 through 10, inclusive, | PRELIMINARY INJUNCTION**
15                Defendants.              | **SUPPORTING DOCUMENTS:**
                                           | MEMORANDUM OF POINTS AND
16                                         | AUTHORITIES; DECLARATIONS OF
                                           | WILLIAM VAN NOLL, SANDRA ANAYA,
17                                         | AND MARIA C. ROBERTS; (PROPOSED)
                                           | TEMPORARY RESTRAINING ORDER;
18                                         | (PROPOSED) PRELIMINARY INJUNCTION
19                                         | [Code Civ. Proc. §§ 525 *et seq.*; Cal. Rules of
                                           | Court, rules 3.1150 and 3.1200 *et seq.*]
20                                         |
                                           | Hearing Date:    March __, 2024
21                                         | Time:            ____ a.m.
                                           | Department:
22
23
24
25
26
27
28

1  TO THE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2  Plaintiff PALO VERDE HEALTHCARE DISTRICT *dba* Palo Verde Hospital ("PVHD")

3  hereby applies *ex parte* for a Temporary Restraining Order ("TRO") that:

4  • enjoins and prohibits Defendant ALTERA DIGITAL HEALTH INC. ("ALTERA"), and its agents, assigns, employees, and any individual or entity acting in concert with or under the direction of ALTERA, from removing, restricting, impeding, obstructing, or hindering PVHD's access to and use of the electronic health record and financial management software system in place and in use at Palo Verde Hospital over the past 6-plus years, which system contains all patient information, including medical and health records, patient history, pharmacy, laboratory, radiology, emergency room records, and the information required for PVHD to bill for treatment, care, and related services it provides to its entire patient population;

9  • enjoins and prohibits ALTERA, and its agents, assigns, employees, and any individual or entity acting in concert with or under the direction of ALTERA, from removing, restricting, impeding, obstructing, or hindering PVHD's access to and use of any related software, software modules, content, and materials identified or referenced in the written contract between PVHD and ALTERA dated March 31, 2015;

12  • requires ALTERA to provide all of PVHD's data contained in the electronic health record and financial management system to PVHD in human, readable format within 30 days; and

14  • remains in effect until terminated by the Court.

15  Exceptional circumstances exist to justify the emergency relief sought by this Application on

16  an *ex parte* basis, as ALTERA has threatened to permanently remove PVHD's access to the

17  electronic health record and financial management systems on April 1, 2024.  ALTERA has also

18  intermittently removed PVHD's access to that system since January 1, 2024, which has significantly

19  compromised and hindered PVHD's ability to provide treatment and care for its patients, denied

20  patients access to their own patient records to which they have a statutory right, and further limited

21  PVHD's ability to bill for and track care and services provided to patients.

22  By way of background, PVHD is a public healthcare district that operates a small rural

23  hospital, known as Palo Verde Hospital, which provides critical healthcare services to those in need

24  in the rural community of Blythe, California. To serve its patients, PVHD relies on its electronic

25  health record and financial management systems —a critical tool for facilitating the seamless

26  recording, retrieval, and coordination of medical information, managing medical billing, and, most

27  importantly, providing and ensuring safe and precise patient care.  In particular, these systems allow

28  physicians to access vital patient information instantly, including, for example, medical history,

1

1   radiology studies, prior diagnoses, prior treatment, medications being taken, allergies, and past
2   treatment. This quick access is especially crucial in emergency situations, where every second
3   counts. In fact, studies show that hospitals without such systems have a patient mortality rate nearly
4   20% higher than those with such systems.[1]

5   PVHD's access to its electronic health record and financial management systems is not just a
6   matter of convenience or administrative efficiency—it's a matter of life or death for PVHD's
7   patients and for its business operations. Without uninterrupted access to these systems, PVHD's
8   ability to deliver prompt and informed treatment is seriously compromised and put hundreds of
9   patients in Blythe at risk of mistreatment, misdiagnoses, serious injury, and even death. It also will
10  prevent PVHD from being able to bill for any of its services and care provided to patients. As such,
11  the injunction sought against ALTERA to protect PVHD's access to the electronic health record and
12  financial management systems and all software/programs related to these systems is imperative for
13  safeguarding the health and well-being of the community PVHD serves and its own survival.

14  On **March 31, 2015**, PVHD and Defendant ALTERA[2] entered into a written agreement for
15  the provision of the electronic health record and financial management systems, including related
16  software, equipment, and professional support IT services. (Van Noll Decl., ¶3, Exh. 1.) Since that
17  date, PVHD has paid over $10 million to ALTERA for the software and support services (including
18  millions of dollars in overcharges by ALTERA). However, it has been discovered recently that
19  these systems are fraught with problems caused by the way the systems were built by ALTERA.

20  In **July 2023**, PVHD's new Chief Financial Officer, William Van Noll, began to investigate
21  and uncover serious problems with the ALTERA electronic health record and financial management
22  systems and what appeared to be errors and irregularities in the way the system was built by
23  ALTERA. This prompted Mr. Van Noll to begin immediate and regular communications with
24  ALTERA's team about the problems with the system at PVHD. In response, ALTERA met at

25  _____

26  [1] (See Trout et al., *The Impact of Electronic Health Records and Meaningful Use on Inpatient Quality* (The Journal for Healthcare Quality 2022) https://pubmed.ncbi.nlm.nih.gov/34267170/.)

27  [2] This agreement was actually entered into with Allscripts Healthcare LLC—an Illinois corporation. However, on May 6, 2022, N. Harris Computer Corporation acquired Allscripts Healthcare LLC and re-branded Allscripts to operate under
28  its subsidiary Defendant ALTERA DIGITAL HEALTH INC. (See https://www.alterahealth.com/newsroom/harris-completes-purchase-of-allscripts-hospitals-and-large-physician-practices-business-segment.)

PLAINTIFF'S *EX PARTE* APPLICATION FOR TEMPORARY INJUNCTIVE RELIEF AND
AN ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION

1  PVHD, analyzed the system in place and its functionality and described their own system as one of

2  the "worst they had ever seen" at any hospital. ALTERA employees conceded many of the errors in

3  the way the system was built by it that significantly impacted PVHD's ability to properly and timely

4  bill and pursue payment for treatment, care and services provided to PVHD patients, causing many

5  millions of dollars in losses to PVHD.  Compounding the situation was the fact that, because of the

6  way the system was built by ALTERA, the billing problems were actually hidden from PVHD,

7  which could not detect, observe, discover or correct the problems.

8      By **August 2023**, it was clear to PVHD that ALTERA failed to fulfill its contractual

9  obligations and was in breach of those obligations (a reality admitted by numerous ALTERA

10 employees), despite billing and receiving more than $10 million in payments for the system and

11 support services. At that same time, ALTERA directed that PVHD allow ALTERA to fix the

12 problems with the way it set up the system and to demonstrate to PVHD how the system should have

13 been built and should have been operating. PVHD agreed.

14     In **August 2023**, PVHD began to withhold the $180,000 in monthly payments being charged

15 by ALTERA for its failed system, with the intent to resume payments once the system was fixed,

16 functioning as ALTERA represented it should function and when PVHD was able to properly,

17 accurately and timely bill for the treatment, care and services it provides.

18     In **late August 2023**, ALTERA presented PVHD with a memo of steps it planned to take to

19 rectify billing problems it created, which would help PVHD "get cash in the door." ALTERA

20 assigned a new employee to provide the required "Managed IT Services" to PVHD, because the

21 ALTERA employee who had been assigned to that role for the prior 6 years (James O'Brien), was

22 described by ALTERA as lacking the expertise and knowledge to serve in that role or to support the

23 needs of PVHD. However, within weeks of the new employee being put in that role, that employee

24 went on an indefinite leave of absence and was replaced by a team out of India, who proved to be

25 nonresponsive and who provided no solutions in response to any of PVHD's needs.

26     In **September, October, and November 2023**, Mr. Van Noll, met/spoke on a weekly basis

27 with members of ALTERA's team of employees assigned to address and rectify the problems with

28 the system at PVHD. In those calls, Mr. Van Noll would discuss the continued problems PVHD was

3

PLAINTIFF'S *EX PARTE* APPLICATION FOR TEMPORARY INJUNCTIVE RELIEF AND
AN ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION

experiencing with the financial management and billing side of the system and ALTERA would agree to investigate and fix the problems. ***Despite many calls, meetings, emails and ALTERA's repeated assurances that its system would be fixed, no meaningful progress was made on any of the promised fixes to the system*** and PVHD continued to experience the same problems.  And, as time passed, ALTERA became less and less responsive to PVHD and the longer the system failed, the greater the economic losses were to PVHD, which ALTERA estimated to be in the ***hundreds of millions of dollars***.

In the face of complete failure by ALTERA to do what its contract required and what it had promised PVHD it would do and, despite knowing the horrific financial losses ALTERA's system had caused PVHD, on **November 21, 2023**, ALTERA demanded PVHD pay it more than $405,000 and threatened if payment was not received within two weeks, all support services to PVHD would be cut off.  In other words, as ALTERA's broken system continued to cause PVHD to be crushed financially and as it failed to fix the system, it was simultaneously demanding payment and threatening to cause even greater harm to PVHD. When PVHD did not pay the hundreds of thousands of dollars demanded by ALTERA, it fulfilled its threat and cut off all support services to PVHD on **December 4, 2023**.

In **early January, 2024**, ALTERA locked PVHD out of the electronic health record and financial management system altogether. Because of the seriousness of this situation and the fact that problems had persisted for months without being fixed by ALTERA, PVHD's outside counsel became involved and immediately engaged in communications with ALTERA and its in-house lawyers. The in-house lawyers initially suggested the system lock-out was not caused by ALTERA, but that proved false and, more than 24 hours after the lock-out occurred, PVHD's access to the system was restored. This had a devastating impact on PVHD's operations and its ability to care for patients. ALTERA locked PVHD out of its system on a few subsequent occasions, leaving PVHD without access to the system for hours and hours at a time, compromising patient care and related decision-making, putting PVHD and its providers at grave risk and compounding its financial losses.

/ / /

/ / /

On **January 31, 2024**, without ALTERA making any meaningful repairs to the system, after cutting off all support services to PVHD, and locking PVHD out of its system on several occasions, ALTERA wrote to PVHD making assertions that were objectively and provably false, demanding more than $1.3 million and threatening to terminate the contract with PVHD, i.e., cut off all access to the system if payment was not received within 60 days.

On **February 13, 2024**, counsel for PVHD responded with a detailed letter that addressed every falsehood in ALTERA's January 31 letter and which set forth many of the contractual breaches by ALTERA and misrepresentations it had made. These back and forth communications have continued since, but ALTERA (and its outside lawyers) has refused to withdraw its threat to end all services to PVHD on April 1, 2024, unless the $1.3 million plus payment is made to it.

In these communications, PVHD has pleaded with ALTERA not to cut off its access to the electronic health record and financial management system until sometime after June 30, 2024.  It has asked ALTERA to provide it with all of its data in the system in human, readable format. It invited ALTERA to participate in mediation. It has also made clear that if agreement is not reached with ALTERA on these points, PVHD would be forced to initiate legal action against ALTERA and to seek all relief available to it.

As of the date this action was initiated and this *ex parte* application was filed, ALTERA has neither withdrawn its threat to terminate all services to PVHD effective April 1, 2024, has not responded to PVHD's request for its data from the electronic health record and financial management system, and has not responded to the offer to mediate the dispute.

Therefore, this action has been initiated against ALTERA and this application is being filed by PVHD out of dire necessity, in good faith and for good cause, seeking a TRO that:

(1) enjoins and prohibits Defendant ALTERA and its agents, assigns, employees, and any individual or entity acting in concert with or under the direction of ALTERA, from removing, restricting, impeding, obstructing, or hindering PVHD's access to and use of the electronic health record and financial management system in place and in use at Palo Verde Hospital over the past 6-plus years, which system contains all patient information, including medical and health records, patient history, pharmacy, laboratory, radiology, emergency

1  room records, and the information required for PVHD to bill for treatment, care, and related
2  services it provides to its entire patient population;

3

4  (2) enjoins and prohibits Defendant ALTERA, and its agents, assigns, employees, and any
5  individual or entity acting in concert with or under the direction of ALTERA, from
6  removing, restricting, impeding, obstructing, or hindering PVHD's access to and use of any
7  related software, software modules, content, and materials identified or referenced in the
8  written contract between PVHD and ALTERA dated March 31, 2015, pending a hearing on a
9  Preliminary Injunction;

10

11  (3) requires Defendant ALTERA to provide all of PVHD's data contained in the electronic
12  health record and financial management system to PVHD within 30 days in human, readable
13  format; and

14

15  (4) remains in effect until the order is terminated by the Court.

16

17      If ALTERA is not enjoined, PVHD will be denied access to the system that houses every
18  pertinent piece of information about is patients and other highly important financial data, and billing
19  information, causing PVHD to suffer immediate and irreparable harm and likely resulting in its
20  operations being suspended/paralyzed and its patients being deprived of necessary healthcare. (Code
21  Civ. Proc. §526(a).)  No harm will result to ALTERA by the relief requested.

22  / / /
23  / / /
24  / / /
25  / / /
26  / / /
27  / / /
28  / / /

6

1    PVHD also requests the Court to issue an Order to Show Cause ("OSC") pursuant to

2    California Rules of Court, rule 3.1150, affording the opportunity to appear and show cause why a

3    Preliminary Injunction should not issue as follows:

4         Defendant ALTERA shall appear before this Court on _____, 2024 at

5    _____ a.m./p.m. in Department ____, located at 265 North Broadway in Blythe, California

6    92225, to show cause why the Court should not enter an order preliminarily enjoining Defendant

7    ALTERA and its agents, assigns, employees, and any individual or entity acting in concert with or

8    under the direction of ALTERA:

9         (1) from removing, restricting, impeding, obstructing, or hindering PVHD's access to and

10             use of the Electronic Health Record software system in place and in use at Palo Verde

11             Hospital over the past 6-plus years, which system contains all patient information,

12             including medical and health records, patient history, pharmacy, laboratory, radiology,

13             emergency room records, and the information required for PVHD to bill for treatment,

14             care, and related services it provides to its entire patient population;

15

16         (2) from removing, restricting, impeding, obstructing, or hindering PVHD's access to and

17             use of any related software, software modules, content, and materials identified or

18             referenced in the written contract between PVHD and ALTERA dated March 31, 2015,

19             pending a hearing on a Preliminary Injunction; and

20         (3) providing all of PVHD's data contained in the Electronic Health Record system to PVHD

21             within 30 days in human, readable format.

22        There has been no previous *ex parte* application for relief filed in this action or for the relief

23   sought herein.  This application is based upon Code of Civil Procedure section 525, *et seq.* and

24   California Rules of Court, rules 3.1150 and 3.1200, *et seq.*; upon the attached Memorandum of

25   Points and Authorities; the Declarations of PVHD's Chief Financial Officer William Van Noll, its

26   Chief Executive Officer Sandra Anaya, and its counsel Maria C. Roberts and exhibits filed herewith;

27   the records and files in this action; and upon such further evidence and argument as may be

28   presented prior to or at the time of hearing on the motion.

7

PLAINTIFF'S *EX PARTE* APPLICATION FOR TEMPORARY INJUNCTIVE RELIEF AND
AN ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION

1    ALTERA has not appeared in this action and, therefore, the identity of its counsel in this case

2    is not known to PVHD.  However, attorney Eric Kennedy of the Buchalter firm has communicated

3    that he represents ALTERA and has communicated about this dispute with PVHD's counsel in

4    recent weeks. Mr. Kennedy's information is as follows:

5    Eric Kennedy,
     Buchalter,
6    18400 Von Karman Ave, Suite 800,
     Irvine, CA 92612;
7    ekennedy@buchalter.com
     (949) 224-6450.
8

9    Additionally, the in-house attorney for ALTERA with whom PVHD's counsel has

10   communicated in recent weeks/months is Louise Pearson, whose known information is as follows:

11   Louise Pearson,
     Altera, Associate General Counsel,
12   Louise.pearson@alterahealth.com
     (847) 710-1537
13

14

15   Dated: March 26, 2024                    GREENE & ROBERTS LLP

16                                             By:_____
                                                    Maria C. Roberts
17                                                   Noel J. Meza
                                                     Attorneys for Plaintiff
18                                                   Palo Verde Healthcare District

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S *EX PARTE* APPLICATION FOR TEMPORARY INJUNCTIVE RELIEF AND
AN ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE**

| | | |
|---|---|---|
| ☐ | BANNING 311 E. Ramsey St., Banning, CA 92220 | |
| ☒ | BLYTHE 265 N. Broadway, Blythe, CA 92225 | |
| ☐ | CORONA 505 S. Buena Vista, Rm. 201, Corona, CA 92882 | |
| ☐ | MORENO VALLEY 13800 Heacock St., Ste. D201, Moreno Valley, CA 92553 | |

| | |
|---|---|
| ☐ | MURRIETA 30755-D Auld Rd., Suite 1226, Murrieta, CA 92563 |
| ☐ | PALM SPRINGS 3255 E. Tahquitz Canyon Way, Palm Springs, CA 92262 |
| ☐ | RIVERSIDE 4050 Main St., Riverside, CA 92501 |

**RI-CI032**

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar Number and Address)*
Maria C. Roberts, SBN 137907
Greene & Roberts
402 West Broadway, Suite 1025
San Diego, CA 92101
TELEPHONE NO: (619) 398-3400   FAX NO. *(Optional)*: (619) 330-4907
E-MAIL ADDRESS *(Optional)*: mroberts@greeneroberts.com
ATTORNEY FOR *(Name)*: Plaintiff, Palo Verde Healthcare District

FOR COURT USE ONLY

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

MAR 26 2024

Y. Saldana

PLAINTIFF/PETITIONER: Palo Verde Healthcare District, a public entity

DEFENDANT/RESPONDENT: Altera Digital Health, Inc., a Delaware corp., et al.

CASE NUMBER: CVPS 2401780

**CERTIFICATE OF COUNSEL**

The undersigned certifies that this matter should be tried or heard in the court identified above for the reasons specified below:

☒   The action arose in the zip code of:  92225 _____

☐   The action concerns real property located in the zip code of:  _____

☐   The Defendant resides in the zip code of:  _____

For more information on where actions should be filed in the Riverside County Superior Courts, please refer to Local Rule 3115 at www.riverside.courts.ca.gov.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date   March 26, 2024 _____

Maria C. Roberts _____
(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY MAKING DECLARATION)

► *Maria C Roberts* _____
(SIGNATURE)

Page 1 of 1

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE
### Palm Springs Courthouse
3255 E. Tahquitz Canyon Way, Palm Springs, CA 92262
www.riverside.courts.ca.gov

**Case Number:**   CVPS2401780

**Case Name:**   PALO VERDE HEALTHCARE DISTRICT vs ALTERA DIGITAL HEALTH INC

## NOTICE OF DEPARTMENT ASSIGNMENT

The above entitled case is assigned to the Honorable Kira L. Klatchko in Department PS1 for All Purposes.

Any disqualification pursuant to CCP section 170.6 shall be filed in accordance with that section.

The court follows California Rules of Court, Rule 3.1308(a)(1) for tentative rulings (see Riverside Superior Court Local Rule 3316). Tentative Rulings for each law and motion matter are posted on the internet by 3:00 p.m. on the court day immediately before the hearing at http://riverside.courts.ca.gov/tentativerulings.shtml. If you do not have internet access, you may obtain the tentative ruling by telephone at (760) 904-5722.

To request oral argument, you must (1) notify the judicial secretary at (760) 904-5722 and (2) inform all other parties, no later than 4:30 p.m. the court day before the hearing. If no request for oral argument is made by 4:30 p.m., the tentative ruling will become the final ruling on the matter effective the date of the hearing.

The filing party shall serve a copy of this notice on all parties.

| | |
|---|---|
|  | Interpreter services are available upon request. If you need an interpreter, please complete and submit the online Interpreter Request Form (https://riverside.courts.ca.gov/Divisions/InterpreterInfo/ri-in007.pdf) or contact the clerk's office and verbally request an interpreter. All requests must be made in advance with as much notice as possible, and prior to the hearing date in order to secure an interpreter. |
| | Assistive listening systems, computer-assisted real time captioning, or sign language interpreter services are available upon request if at least 5 days notice is provided. Contact the Office of the ADA Coordinator by calling (951) 777-3023 or TDD (951) 777-3769 between 8:00 am and 4:30 pm or by emailing ADA@riverside.courts.ca.gov to request an accommodation. A *Request for Accommodations by Persons With Disabilities and Order* (form MC-410) must be submitted when requesting an accommodation. (Civil Code section 54.8.) |

Dated: 03/26/2024

JASON B. GALKIN,
Court Executive Officer/Clerk of the Court

by: _____
    Y. Saldana, Deputy Clerk

CI-NODACV
(Rev. 02/16/21)

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE
Palm Springs Courthouse
3255 E. Tahquitz Canyon Way, Palm Springs, CA 92262
www.riverside.courts.ca.gov

**Case Number:**   CVPS2401780

**Case Name:**   PALO VERDE HEALTHCARE DISTRICT vs ALTERA DIGITAL HEALTH INC

Maria Christine Roberts
402 W BROADWAY STE 1025
San Diego, CA 92101

## NOTICE OF CASE MANAGEMENT CONFERENCE

The Case Management Conference is scheduled as follows:

| Hearing Date | Hearing Time | Department |
|---|---|---|
| 09/23/2024 | 8:30 AM | Department PS1 |
| Location of Hearing:<br>3255 E. Tahquitz Canyon Way, Palm Springs, CA 92262 | | |

No later than 15 calendar days before the date set for the case management conference or review, each party must file a case management statement and serve it on all other parties in the case.  CRC, Rule 3.725.

The plaintiff/cross-complainant shall serve a copy of this notice on all defendants/cross-defendants who are named or added to the complaint and file proof of service.

Any disqualification pursuant to CCP Section 170.6 shall be filed in accordance with that section.

**Remote Appearance at Hearing:** The court **strongly encourages** parties and counsel to appear remotely for non-evidentiary hearings in civil cases.  Pursuant to local rule 3132, persons intending to appear remotely shall notify all opposing parties of their intention to appear remotely before the hearing.  Notice may be given informally, including by telephone, email, or text message. To appear remotely, on the day of the hearing, either use your computer, mobile device, or dial (833) 568-8864 (toll free) or (669) 254-5252, when prompted enter:

Meeting ID: 160-520-9376 #
Access Code: Press the # key (no number after the #)

Please MUTE your phone until your case is called, and it is your turn to speak.  It is important to note that you must call twenty (20) minutes prior to the scheduled hearing time to check in or there may be a delay in your case being heard.

CI-NOCMC
(Rev. 03/02/22)




| Interpreter services are available upon request. If you need an interpreter, please complete and submit the online Interpreter Request Form (https://riverside.courts.ca.gov/Divisions/InterpreterInfo/ri-in007.pdf) or contact the clerk's office and verbally request an interpreter. All requests must be made in advance with as much notice as possible, and prior to the hearing date in order to secure an interpreter. |
| Assistive listening systems, computer-assisted real time captioning, or sign language interpreter services are available upon request if at least 5 days notice is provided. Contact the Office of the ADA Coordinator by calling (951) 777-3023 or TDD (951) 777-3769 between 8:00 am and 4:30 pm or by emailing ADA@riverside.courts.ca.gov to request an accommodation. A *Request for Accommodations by Persons With Disabilities and Order* (form MC-410) must be submitted when requesting an accommodation. (Civil Code section 54.8.) |

**CERTIFICATE OF MAILING**

I certify that I am currently employed by the Superior Court of California, County of Riverside, and that I am not a party to this action or proceeding. In my capacity, I am familiar with the practices and procedures used in connection with the mailing of correspondence. Such correspondence is deposited in the outgoing mail of the Superior Court. Outgoing mail is delivered to and mailed by the United States Postal Service, postage prepaid, the same day in the ordinary course of business. I certify that I served a copy of the Notice of Case Management Conference on this date, by depositing said copy as stated above.

Dated: 03/26/2024

JASON B. GALKIN,
Court Executive Officer/Clerk of the Court

by: _____

Y. Saldana, Deputy Clerk

CI-NOCMC
(Rev. 03/02/23)

1

2

3

4

5

6

7

8 SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 COUNTY OF RIVERSIDE – BLYTHE DIVISION

| | |
|---|---|
| 10 PALO VERDE HEALTHCARE DISTRICT, a California public entity, | Case No. C V P S 2 4 0 1 7 8 0 |
| 11 Plaintiff, | Judge: Department: |
| 12 v. | (PROPOSED) ORDER ON *EX PARTE* APPLICATION AND TEMPORARY |
| 13 ALTERA DIGITAL HEALTH INC., a Delaware corporation; ALLSCRIPTS HEALTHCARE | RESTRAINING ORDER |
| 14 LLC, an Illinois corporation; and DOES 1 through 25, | [Code Civ. Proc. §§ 525 *et seq.*; Cal. Rules of Court, rules 3.1150 and 3.1200 *et seq.*] |
| 15 | |
| 16 Defendants. | Hearing Date: March ___, 2024<br>Time: _____ a.m.<br>Department: _____ |
| 17 | |

18

19

20

21

22

23

24

25

26

27

28

1      Having considered Palo Verde Healthcare District's *ex parte* application, supporting

2  memoranda and declarations and exhibits thereto, and having heard argument of counsel, and good

3  cause appearing, the Court rules as follows:

4      **Palo Verde Healthcare District's** *ex parte* application for temporary injunctive relief and

5  for order to show cause for preliminary injunction is granted.

6      **IT IS ORDERED THAT** Defendant Altera Digital Health Inc. and its agents, assigns,

7  employees, and any individual or entity acting in concert with or under the direction of Altera are:

8    • Enjoined and prohibited from removing, restricting, impeding, obstructing, or hindering
      PVHD's access to and use of the electronic health record and financial management software
9      system in place and in use at Palo Verde Hospital over the past 6-plus years, which system
      contains all patient information, including medical and health records, patient history,
10     pharmacy, laboratory, radiology, emergency room records, and the information required for
      PVHD to bill for treatment, care, and related services it provides to its entire patient
11     population;

12   • Enjoined and prohibited from removing, restricting, impeding, obstructing, or hindering
      PVHD's access to and use of any related software, software modules, content, and materials
13     identified or referenced in the written contract between PVHD and ALTERA dated March
      31, 2015; and

14   • Ordered to provide all of PVHD's data contained in the electronic health record and financial
      management system to PVHD in human, readable format within 30 days.
15
     • This order granted herein will remain in effect until terminated by the Court.
16

17     **IT IS FURTHER ORDERED THAT** an Order to Show Cause why preliminary injunction

18  should not issue is set for April ____, 2024 at _____ a.m/p.m. in Department ____ of this

19  Court.

20     The Court reserves jurisdiction to modify or dissolve this Order as may be required by the

21  interests of justice.

22

23  Date: _____            _____

24                                        Judge of the Superior Court

25

26

27

28

1

(PROPOSED) ORDER ON *EX PARTE* APPLICATION AND TEMPORARY RESTRAINING ORDER

Fee Exempt
(Gov. Code § 6103)

1  Maria C. Roberts, SBN 137907
   mroberts@greeneroberts.com
2  Noel J. Meza, SBN 331169
   nmeza@greeneroberts.com
3
   GREENE & ROBERTS
4  402 West Broadway, Suite 1025
   San Diego, CA 92101
5  Telephone:   (619) 398-3400
   Facsimile:   (619) 330-4907
6
   Attorneys for Plaintiff
7  Palo Verde Healthcare District

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

MAR 26 2024

Y. Saldana

8
9              SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                 COUNTY OF RIVERSIDE – BLYTHE DIVISION

11  PALO VERDE HEALTHCARE DISTRICT, a     Case No. CVPS 2401780
    California public entity,
12                                         Judge:
               Plaintiff,                  Department:
13
        v.                                 DECLARATION OF SANDRA ANAYA IN
14                                         SUPPORT OF PLAINTIFF'S *EX PARTE*
    ALTERA DIGITAL HEALTH INC., a Delaware  APPLICATION FOR TEMPORARY
15  corporation; and DOES 1 through 10, inclusive,  INJUNCTIVE RELIEF AND ORDER TO
                                           SHOW CAUSE FOR PRELIMINARY
16             Defendants.                  INJUNCTION

17                                         **SUPPORTING DOCUMENTS:**
                                           *EX PARTE* APPLICATION; MEMORANDUM
18                                         OF POINTS AND AUTHORITIES;
                                           DECLARATIONS OF WILLIAM VAN NOLL
19                                         AND MARIA C. ROBERTS; (PROPOSED)
                                           TEMPORARY RESTRAINING ORDER;
20                                         (PROPOSED) PRELIMINARY INJUNCTION
                                           [Code Civ. Proc. §§ 525 *et seq.*; Cal. Rules OF
21                                         Court, rules 3.1150 and 3.1200 *et seq.*]

22                                         Hearing Date:   March __, 2024
                                           Time:          ____ a.m.
23                                         Department:

24
25
26
27
28

DECLARATION OF SANDRA ANAYA IN SUPPORT OF *EX PARTE* APPLICATION FOR TEMPORARY
INJUNCTIVE RELIEF AND AN ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION

Greene & Roberts LLP
402 West Broadway, Suite 1025
San Diego, CA 92101
(619) 398-3400

Fee Exempt
(Gov. Code § 6103)

1   Maria C. Roberts, SBN 137907
    mroberts@greeneroberts.com
2   Noel J. Meza, SBN 331169
    nmeza@greeneroberts.com
3
    GREENE & ROBERTS
4   402 West Broadway, Suite 1025
    San Diego, CA 92101
5   Telephone:    (619) 398-3400
    Facsimile:    (619) 330-4907
6
    Attorneys for Plaintiff
7   Palo Verde Healthcare District

8                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                      COUNTY OF RIVERSIDE – BLYTHE DIVISION

10
    PALO VERDE HEALTHCARE DISTRICT, a          Case No.
11  California public entity,
                                               Judge:
12              Plaintiff,                      Department:

13       v.                                     **DECLARATION OF SANDRA ANAYA IN
                                                SUPPORT OF PLAINTIFF'S** *EX PARTE*
14  ALTERA DIGITAL HEALTH INC., a Delaware     **APPLICATION FOR TEMPORARY
    corporation; and DOES 1 through 10, inclusive,   INJUNCTIVE RELIEF AND ORDER TO**
15                                              **SHOW CAUSE FOR PRELIMINARY
                Defendants.                     INJUNCTION**
16
                                               **SUPPORTING DOCUMENTS:**
17                                              *EX PARTE* APPLICATION; MEMORANDUM
                                               OF POINTS AND AUTHORITIES;
18                                              DECLARATIONS OF WILLIAM VAN NOLL
                                               AND MARIA C. ROBERTS; (PROPOSED)
19                                              TEMPORARY RESTRAINING ORDER;
                                               (PROPOSED) PRELIMINARY INJUNCTION
20                                              [Code Civ. Proc. §§ 525 *et seq.*; Cal. Rules OF
                                               Court, rules 3.1150 and 3.1200 *et seq.*]
21
                                               Hearing Date:   March __, 2024
22                                             Time:           ____ a.m.
                                               Department:
23

24

25

26

27

28

_(left margin, vertical text)_ Greene & Roberts LLP
402 West Broadway, Suite 1025
San Diego, CA 92101
(619) 398-3400

DECLARATION OF SANDRA ANAYA IN SUPPORT OF *EX PARTE* APPLICATION FOR TEMPORARY
INJUNCTIVE RELIEF AND AN ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION

1    I, Sandra Anaya, declare as follows:

2        1.    I am the Chief Executive Officer ("CEO") with Palo Verde Healthcare District and

3    have been employed in that capacity since 2013. I have work in healthcare and hospital

4    administration and as a clinician for more than 40 years. I have a Bachelor of Science degree in

5    Nursing and a Master of Science degree in Healthcare Administration.  I have personal knowledge of

6    the facts stated in this declaration unless otherwise stated.

7        2.    This declaration is submitted in support of the *ex parte* application by Palo Verde

8    Healthcare District ("PVHD") for a temporary injunctive relief and order to show cause for

9    preliminary injunction.  My testimony in this declaration is based on my personal knowledge and my

10   review of information and data pertaining to PVHD's operations and systems and similar situations

11   involving other hospitals.

12       3.    PVHD is a rural hospital that serves low-income, underprivileged communities. It

13   provides significant medical care to minority and uninsured populations in medically underserved

14   regions of the state and is mainly funded by Medicare, Medi-Cal, and district tax dollars. PVHD is

15   the only hospital located in Blythe, California, **with the next closest hospital located in Indio**

16   **nearly 100 miles away**. It is a 25-bed hospital that provides emergency services, as well as routine

17   surgical services. In addition to the hospital, PVHD operates a small community clinic, which

18   provides screenings, immunizations, vaccinations, and wellness examinations to the local

19   community.

20       4.    To serve its patients, PVHD relies on an electronic health records and financial

21   management system ("System) provided by Altera (previously known as Allscripts).  This System is

22   an essential and indispensable tool for recording, retrieval, and coordination of medical information

23   and medical billing. The System is not simply a convenient tool, it is critical for providing access to

24   patient medical information and ensuring safe and precise patient care because patient data is stored

25   in electronic form and cannot be accessed without the System. Paper backups do not exist for most

26   records and thus the patient medical information is not accessible without the use of this System.

27   / / /

28   / / /

5.      The System is the tool used by our providers to access vital patient information instantly, including medication history, diagnoses, allergies, past treatment information and prescriptions.  PVHD serves thousands of patients in the Blythe area. When patients come in for routine, specialty or emergency care, a medical record is created of their visit which includes valuable information about their vital signs, symptoms, medical history, and medications. This information is saved, kept, and shared through the System.

6.      The electronic medical record is a living document that chronologically records the entire patient's stay from admission to discharge. Without uninterrupted access to the electronic record:

- We would not be able to access the records of prior visits, including the medication history, prescriptions, and outcome of prior care. This poses an increased risk for all patients, especially children, elderly, and those who are sent to the emergency department from the skilled nursing facility.

- We would not be able to access medical and drug history from other providers/facilities which increases the potential for adverse events.

- We would not have access to outpatient X-ray reports, or the results of any X-rays taken for the facility.

- We would not be able to e-prescribe medications to local and outside pharmacies.

- Accurate documentation of medications, and intravenous therapy would be difficult to maintain because there would be no link between pharmacy and the inpatient or outpatient units.

- We would not be able to electronically transmit complete information about a patient's healthcare to other facilities or providers.  This would significantly affect patients being transferred for higher level of care like Tertiary Centers for cardiac and neurological services.

- Patients would not have access to their previous medical records or other test results.

- Local health care providers would not have access to needed reports to ensure appropriate continuity of care.

- The ability to provide appropriate discharge instructions, particularly in the emergency department, would be limited posing additional safety risk.

- The integration of cardiac monitoring systems that link into the medical record would be adversely affected.

- The integration of equipment in the laboratory and radiology would be affected, with a significant potential lost or delayed test results.

///

2

7.     These are only some of the more significant consequences which will result from being locked out of the System.  Another example is that clinicians cannot access laboratory results for a hospital patient from records held in a different part of the hospital without having access to the system. Critical information about PVHD patient immunizations is accessible only through the system. To timely and properly immunize patients and provide various vaccinations, PVHD relies exclusively on the System.

8.     Without access to the System, the PVHD will be forced to resort to paper records which are not instantly accessible to providers within the system. Use of paper records, rather than the electronic records, can compromise patient care, cause delays in providing effective and efficient care to our patients and often results in mistakes. After patients are seen, and their care is documented, requests for follow up visits, lab orders and tests are processed through the System. Patient prescriptions and medication dosage are also recorded. Prescription orders are all placed with the pharmacies through use of the system. Billing information for patient visits and treatments is also generated and maintained solely through the System.

9.     PVHD's access to its electronic health record system is not just a matter of convenience or administrative efficiency, but can truly be a matter of life or death.  Without uninterrupted access to the System, PVHD's ability to deliver prompt and informed treatment will be seriously compromised, which will put thousands of patients in the Blythe area at risk of mistreatment, misdiagnoses, severe injury, and even death. When the EHR is unavailable, access to the patient's medical reports and medication records is lost in the same instance.

10.    Ignorance of a patient's medical and care history and doctor's orders also causes patient care delays and congestions, which can pose a serious risk, especially when caring for critically ill patients. Surgeries may also have to be postponed and queues at emergency rooms may grow if we cannot access the System. Communication between departments will also be negatively affected, as will ordering medication and reviewing test results.

///

///

///

11.    One of the most challenging tasks to perform well without access to electronic records is billing for all services rendered. When using a backup paper system, a lot of the little things that usually enter the system with the touch of a button go unrecorded, rates are not known, billing entities (HOM's health insurers, private pay, etc.) are not known. PVHD will not be able to create and recreate contemporaneous records of patient care and treatments for billing purposes. Thus, from a purely billing standpoint, PVHD stands to lose hundreds of thousands of dollars, even millions of dollars, in payments and funding due to its inability to properly document and process its billing records.

12.    Interrupted access to the EHR system will also make it impossible for PVHD to comply with patient requests for production of their medical records, which are only accessible through the System. By law, patients are entitled to a copy of their medical records when requested. PVHD will not be able to provide copies of patient records to patients or to their other providers without access to the System.

13.    If ALTERA denies PVHD access to the System that houses every pertinent piece of information about its patients and other highly important data, and billing information, PVHD will suffer immediate and irreparable harm and injury in that its operations will be paralyzed and likely suspended, its patients will be deprived from receiving necessary healthcare and it is questionable whether its operations can continue. Once the damage is done and patients is injured, this cannot be remedied by the payment of money.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this _16_ day of March 2024, at Blythe, California.

Sandra Anaya

1  Maria C. Roberts, SBN 137907
   mroberts@greeneroberts.com
2  Noel J. Meza, SBN 331169
   nmeza@greeneroberts.com
3  GREENE & ROBERTS
   402 West Broadway, Suite 1025
4  San Diego, CA 92101
   Telephone:     (619) 398-3400
5  Facsimile:     (619) 330-4907

6  Attorneys for Plaintiff
   Palo Verde Healthcare District

7

```
F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

MAR 26 2024

Y. Saldana
```

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                COUNTY OF RIVERSIDE – BLYTHE DIVISION

10 PALO VERDE HEALTHCARE DISTRICT, a        Case No.  CVPS 2401780
   California public entity,
11                                           Judge: _____
                 Plaintiff,                  Department: _____
12
          v.                                 **DECLARATION OF WILLIAM VAN NOLL
13                                           IN SUPPORT OF PLAINTIFF'S *EX PARTE*
   ALTERA DIGITAL HEALTH INC., a             APPLICATION FOR TEMPORARY
14 Delaware corporation; and DOES 1 through 10,   INJUNCTIVE RELIEF AND ORDER TO
                                             SHOW CAUSE FOR PRELIMINARY
15               Defendants.                 INJUNCTION**

16                                           **SUPPORTING DOCUMENTS:**
                                             *EX PARTE* APPLICATION; MEMORANDUM
17                                           OF POINTS AND AUTHORITIES;
                                             DECLARATIONS OF MARIA C. ROBERTS
18                                           AND SANDRA ANAYA; (PROPOSED)
                                             TEMPORARY RESTRAINING ORDER;
19                                           (PROPOSED) PRELIMINARY INJUNCTION
                                             [Code Civ. Proc. §§ 525 *et seq.*; Cal. Rules of
20                                           Court, rules 3.1150 and 3.1200 *et seq.*]

21                                           Hearing Date:   March ___, 2024
                                             Time:           ____ a.m.
22                                           Department:

23

24

25

26

27

28

1   Maria C. Roberts, SBN 137907
    mroberts@greeneroberts.com
2   Noel J. Meza, SBN 331169
    nmeza@greeneroberts.com
3   GREENE & ROBERTS
    402 West Broadway, Suite 1025
4   San Diego, CA 92101
    Telephone:    (619) 398-3400
5   Facsimile:    (619) 330-4907

6   Attorneys for Plaintiff
    Palo Verde Healthcare District

7

8                  SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                     COUNTY OF RIVERSIDE – BLYTHE DIVISION

10  PALO VERDE HEALTHCARE DISTRICT, a          Case No.
    California public entity,
11                                             Judge: _____
              Plaintiff,                       Department:
12
        v.                                     **DECLARATION OF WILLIAM VAN NOLL
13                                             IN SUPPORT OF PLAINTIFF'S *EX PARTE*
    ALTERA DIGITAL HEALTH INC., a              APPLICATION FOR TEMPORARY
14  Delaware corporation; and DOES 1 through 10, INJUNCTIVE RELIEF AND ORDER TO
                                               SHOW CAUSE FOR PRELIMINARY
15            Defendants.                       INJUNCTION**

16                                             **SUPPORTING DOCUMENTS:**
                                               *EX PARTE* APPLICATION; MEMORANDUM
17                                             OF POINTS AND AUTHORITIES;
                                               DECLARATIONS OF MARIA C. ROBERTS
18                                             AND SANDRA ANAYA; (PROPOSED)
                                               TEMPORARY RESTRAINING ORDER;
19                                             (PROPOSED) PRELIMINARY INJUNCTION
                                               [Code Civ. Proc. §§ 525 *et seq.*; Cal. Rules of
20                                             Court, rules 3.1150 and 3.1200 *et seq.*]

21                                             Hearing Date:    March __, 2024
                                               Time:            _____ a.m.
22                                             Department:

23

24

25

26

27

28

I, William Van Noll, declare as follows:

1.    I am the Interim Chief Financial Officer ("CFO") with Palo Verde Healthcare District and have been employed in that capacity since July 2023.  I have personal knowledge of the facts stated in this declaration, unless otherwise stated, and can competently testify thereto.

2.    This declaration is submitted in support of the *ex parte* application by Palo Verde Healthcare District, which operates as Palo Verde Hospital (the "PVHD"), for both prohibitive and mandatory temporary injunctive relief and for an order to show cause regarding preliminary injunction.

3.    When I was hired as Interim CFO at PVHD in July 2023, I quickly became aware that the electronic health record and financial management system (also referred to as the "System") in place at PVHD was one developed and licensed to PVHD by Defendant ALTERA.[1]  According to the March 2015 contract between PVHD and ALTERA (which I have personally reviewed), ALTERA was to provide software and services to PVHD for use in the provision of patient care and for financial management, including billing.  The contract also required ALTERA to provide "Managed IT Services," including access to a 24-hour help desk phone line and a dedicated ALTERA employee to support PVHD if it encountered problems with the system, required fixes, changes, and other items.  ALTERA originally designated James O'Brien as its employee to be PVHD's sole technical support person at a cost to PVHD of about $30,000/month.

4.    According to PVHD's financial records, as of July 2023, it has paid ALTERA more than $10 million for the license of its software and for dedicated Managed IT Services.

5.    Within weeks of being hired as CFO, I began to suspect that there may be problems with ALTERA's software at PVHD, specifically in its billing and related revenue cycle functions.  Consequently, I reached out to ALTERA to express my concerns and ask questions about the billing functions of the financial management part of the System.

---

[1] This agreement was actually entered into with Allscripts Healthcare LLC—an Illinois corporation.  However, on May 6, 2022, N. Harris Computer Corporation acquired Allscripts Healthcare LLC and re-branded Allscripts to operate under its subsidiary Defendant ALTERA DIGITAL HEALTH INC.  (See https://www.alterahealth.com/newsroom/harris-completes-purchase-of-allscripts-hospitals-and-large-physician-practices-business-segment.)

1

6.     In July and August 2023, I requested that an ALTERA engineer or programmer visit PVHD to see firsthand the defective system. ALTERA denied this request, stating they "cannot just send an army of programmers out on site." Instead, on August 15, 2023, ALTERA sent a sales and account representative to PVHD, who viewed the billing system and observed firsthand the magnitude of issues with the software and the problems it had caused and continued to cause.  The employee was visibly shocked by what she had seen and stated to PVHD staff:

> This "is the worst system I have ever seen at a hospital client. I have never seen a system so bad."

7.     I was also told by ALTERA that the improper build of the software was done in a way that prevented PVHD from knowing or discovering many issues. Unbeknownst to PVHD, these billing issues had existed for some time and caused it tens of millions of dollars in losses for patient services provided.  ALTERA also shared that most of PVHD's losses could never be recouped because the time within which PVHD had to bill for those services had expired.

8.     My July and August 2023 meetings and communications with ALTERA put it on notice that it was in material breach of the contract with PVHD, which triggered the 60-day contractual period for ALTERA to cure those defects. At that same time, we began to withhold the payments being charged by ALTERA of more than $180,000/month based on ALTERA's admission it had breached the contract to PVHD and it had also charged and overcharged for migration-related services without providing the upgraded SunComm system. The hope was to withhold payment until all of the promised fixes or repairs were made to the software such that it was operating properly[2] and actual Managed IT Services in accordance with the Contract were being provided to PVHD. **That never happened**.  This was consistent with the fee dispute provision in the Contract that allows payment to be suspended by PVHD in the event of a good faith dispute and until such time as the dispute is resolved. The general contract statements in the points and authorities accurately reflect what the contract required.

---

[2] In fact, because of the many problems with the electronic health record and financial management system, ALTERA directed PVHD to allow it the opportunity to repair the issues with the original System before PVHD decided whether to upgrade or change the Systems.  ALTERA also presented a multi-step plan to remedy problems with the existing System and PVHD agreed to this approach.  However, the fixes were never made and the System remains largely unchanged.

2

DECLARATION OF WILLIAM VAN NOLL IN SUPPORT OF *EX PARTE* APPLICATION FOR TEMPORARY INJUNCTIVE RELIEF AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUCTION

9.      In late August 2023, I began to have weekly remote conferences, calls, and communications with ALTERA regarding the on-going problems with the electronic health record and financial management system and the steps ALTERA claimed to be taking to fix those issues. One of the first steps taken was for ALTERA to replace James O'Brien as the dedicated ALTERA employee assigned to provide Managed IT Services to PVHD. ALTERA admitted that Mr. O'Brien was an IT generalist who was grossly unqualified to assist PVHD with billing and revenue cycle issues, and who had extremely poor communication skills. ALTERA then assigned Kelly Johnson to be O'Brien's replacement. However, a few weeks later ALTERA advised me that Ms. Johnson was on an indefinite leave of absence and that the Managed IT Services role was being transferred to a team in India, who proved to be nonresponsive, uncooperative and/or completely unhelpful.

10.     Previously, when assigned to PVHD's account, Kelly Johnson had promised to do a thorough analysis of the billing system and report her findings to me since the software, as built, would not allow PVHD this level of visibility or discovery into claims and outstanding receivables. Days later, she provided a document titled "PVH AR 'True Up' Project" (Palo Verde Healthcare Accounts Receivable True Up Project) which included just a few of the steps she had promised to take and evidenced years of system errors. The purpose of the 'True Up' Project was to identify collection opportunities PVHD previously had no visibility to in order to get cash in the door immediately, and subsequently fix the underlying issues with the software. In ALTERA's words, the 'True Up' Project intended to make PVHD's Accounts Receivable balances "now clean, actionable, and reportable."

11.     On August 30, 2023, I had another conference with Kelly Johnson and her boss, Thomas McCabe, to discuss her analysis of the problems with the billing platform at PVHD. In this meeting, McCabe and Johnson explained the issues caused by ALTERA, admitting it was the fault of ALTERA, and provided a comprehensive spreadsheet evidencing those problems on a claim-by-claim basis. This meeting revealed that, for approximately 10,000 medical bills sent out by PVHD in just 2022 (and more than 21,000 others billed in the year before then), after being adjudicated, detailed information about the claim was sent back to PVHD by the payer (i.e., a remittance, such as payment or denial information), but this information was hidden from PVHD because ALTERA built

3

1   the system in a way that could not electronically recognize certain remittances. ALTERA explained

2   it caused this problem by failing to carry over critical billing information such as CARC/RARC

3   codes from PVHD's clearinghouse SSI when remittance came back from payers.

4        12.    It was also revealed during the August 30, 2024 meeting that ALTERA failed to

5   correctly build Financial Classes, which is the foundation of any billing and financial management

6   software. An improper Financial Class setup prevents work queues from populating correctly, causes

7   billing claims to go unfinished or unworked, makes it extremely difficult to know which balances

8   need to be sent to patients for statement, and is at the heart of why, as previously admitted by

9   ALTERA, PVHD's accounts receivable was "not clean, not actionable, and not reportable." Kelly

10   Johnson specifically said during the same call that the decision by ALTERA to build the Financial

11   Classes was improper, not best practice, and made it extremely difficult for PVHD to perform proper

12   billing functions. When PVHD staff explained they are unable to change Financial Classes for an

13   individual bill entry through the program, Johnson responded, "Well we need to get your security

14   updated then." In other words, in addition to its failure to set up the Financial Classes properly,

15   ALTERA had not been providing software updates or Managed IT services necessary for PVHD to

16   help itself. ***The Financial Classes problem was never resolved by Altera***.

17        13.    I also inquired during the August 30, 2023 meeting about zero pay bills, given that

18   there were over 21,000 visits discovered through ALTERA's deep dive and presented to PVHD

19   where no primary payment was ever received for the services received by those patients. For the zero

20   pay bills dating back more than one year ago, of which there were 11,329 identified in ALTERA's

21   research and previously unknown by PVHD, I asked McCabe and Johnson whether those patient

22   encounters were now "dead money," to which they responded:

23        Kelly Johnson: "Yeah, pretty much"

24        Tom McCabe: "Yeah it would be a waste of time, right Kelly? That's what we're saying?"

25        Kelly Johnson: "Yup."

26        14.    The August 30, 2023 meeting revealed tens of millions of dollars in lost revenue to

27   PVHD based on ALTERA's own deep dive into the defective electronic health record and financial

28   management system. The software was so poorly built that PVHD was not able to see these losses

4

1  before but rather required ALTERA's team to pull data from its back-end systems and to then

2  present PVHD with the full scope of financial harm resulting from its nonperforming and poorly

3  built software. Disclosing this data to PVHD for the first time in August 2023 was beyond troubling,

4  as thousands of unpaid claims were now untimely, uncollectible, and now worthless.

5      15.    Another critical defect in ALTERA's faulty billing platform that we discovered in

6  September 2023 showed that the system was improperly and unlawfully moving claims meant for

7  insurance providers to the patients themselves. This meant PVHD patients were being incorrectly

8  billed for claims that should have been paid by their insurance.  On September 26, 2023, I brought

9  this issue to ALTERA's attention and provided 174 examples totaling over $630,000 in charges

10  incorrectly marked for patient payment rather than insurance providers due to ALTERA's software

11  glitches.

12      16.    It was not until more than six weeks later, on November 9, 2023, that an ALTERA

13  employee in India, provided an "analysis" regarding the cause.  The employee concluded the issue

14  was caused by PVHD, not by ALTERA, because insurance, according to ALTERA's analysis, had

15  been deemed inactive. His assessment said nothing about the software itself, despite the six-week

16  delay in responding to such a critical issue. I also responded the same day explaining that his

17  assessment was incorrect and provided screenshots showing that insurance was indeed **active** but the

18  system was still labelling these claims as owed by the patients.  I then asked Thomas McCabe for a

19  better strategy to resolve issues because the ALTERA employees overseas were nonresponsive, gave

20  inaccurate information, and were not helpful.  McCabe responded that he would "regroup," but

21  nothing was ever done to actually fix the problem.

22      17.    We also discovered claims that were shown in the System as having already been

23  billed, when there was no corresponding outbound claim that went through PVHD's clearinghouse

24  system. The clearinghouse serves as the source of record for any payer-provider exchange, meaning

25  it is absolutely imperative that ALTERA's platforms and the clearinghouse are synchronized and

26  interfaced with regard to the status of medical bills sent out, payments received, remittances

27  received, etc.

28

DECLARATION OF WILLIAM VAN NOLL IN SUPPORT OF *EX PARTE* APPLICATION FOR TEMPORARY
INJUNCTIVE RELIEF AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION

18. On September 26, 2023, I brought this to ALTERA's attention and provided 41 examples totaling $140,000 in charges where ALTERA's systems were not interfacing correctly with our clearinghouse. In these examples, I explained that Medi-Cal was the intended payer and suggested that ALTERA assess both the inbound and outbound communications between the clearinghouse and ALTERA for Medi-Cal claims and then move on to additional payers. Unfortunately, this interface issue was also never fully fixed due to ALTERA's improper build of Financial Classes in the System and the incompetence of the support that was provided by ALTERA. This issue would have required ALTERA to make fixes on a plan-by-plan basis, within each payer, yet ALTERA's support team assigned to PVHD at the time could not even properly fix the one payer example that I actually presented.

19. In addition, the State of California regulatory agency Department of Health Care Access and Information ("HCAI") requires reporting from all hospitals on a quarterly basis, both patient-level data and financial data. Historically, PVHD has had to rely on ALTERA's Managed IT services to extract the data from the EHR and financial management systems to provide to HCAI because these systems are so poorly built that the data cannot be extracted by PVHD itself. Beginning in August 2023, ALTERA has been asked by PVHD to provide these data extracts but has repeatedly failed to provide them in the proper format to meet the criteria required by HCAI despite numerous attempts by ALTERA to fix errors identified when the submission went through HCAI's validation checks. As a result, we have been forced to continually request corrected HCAI files from ALTERA employees, who would resend files lacking proper fixes which get epeatedly rejected by HCAI.

20. Over the past four months, ALTERA did not provide **any** of the information necessary to comply with HCAI reporting mandates as their Managed IT Services customarily did. As a result, PVHD is being fined approximately $400 per day, which will continue to increase with time.

21. ALTERA has also prevented PVHD from reporting the correct data required to participate in the Quality Incentive Pool (QIP) program, an incentive program for directed payments to California hospitals via the Department of Healthcare Services (DHCS). PVHD is unable to

6

DECLARATION OF WILLIAM VAN NOLL IN SUPPORT OF *EX PARTE* APPLICATION FOR TEMPORARY
INJUNCTIVE RELIEF AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUCTION

extract the necessary data to report its Q4 2024 performance metrics, thereby putting the hospital at risk of being disqualified from the QIP program.  On March 18, 2024, during a conference call between DHCS and PVHD, DHCS was made aware of ALTERA's software deficiencies and its role in PVHD's inability to meet reporting and patient monitoring benchmarks.  DHCS conveyed that PVHD is at risk of again losing at least $1.3 million of incentive payments if it cannot provide the proper data by June 2024.  In a subsequent letter addressed to PVHD dated March 19, 2024, DHCS noted its concerns about the problems caused by ALTERA and expressed hopefulness that ALTERA would work with PVHD so that PVHD could receive the $1.3 million in incentive payments.  This funding is critical for a small and rural hospital such as PVHD with a significant need for all supplemental funding it is eligible to receive.

22.     The other contractual breaches, substandard performance, and failures by ALTERA are countless.  These are just some examples:

**On September 28, 2023**: Kelly Johnson emailed stating she attached an insurance mapping table to aid in addressing the defective Financial Classes setup and asked for feedback. There were no documents attached to the email. I responded stating there was no attachment, but Johnson never responded with any attachments and the issue was never resolved.

**On October 6, 2023**: I informed Altera that charges for radiology procedures would not properly drop to a claim. Altera never fixed this problem and Kelly Johnson never added the issue to her project plan presented to PVHD.

**On October 6, 2023**: Kelly Johnson emailed stating she had cleaned up the trial balance amounts (i.e., the numbers reflected in the financial management system in comparison to the numbers in PVHD's accounting system). I responded asking which changes were made so that I could reconcile it against PVHD's books and ensure accuracy. Johnson never responded nor provided that information.

**On October 9, 2023**: PVHD informed Altera that patients with recurring visits were not appearing in the queue/worklist for PVHD to later bill. An Altera member from the GMS Team responded that they were working on it, but the issue remains.

**On October 14, 2023**: Kelly Johnson provided a Gantt chart showing the fixes Altera intended to work on, but the chart lacked the fundamental problems with the software platform such as Financial Classes and the clearinghouse interface for proper posting which PVHD had been repeatedly communicating to Altera for at least the entire three months prior. The Gantt chart was incomplete, and was the last time PVHD was able to see a timeline showing how Altera was going about tracking the system fixes and issues we presented.

**On October 23, 2023**: Kelly Johnson went on indefinite leave and her work was purportedly transitioned to the GMS Team in India. As explained above, support from that GMS Team was extremely slow, low quality and rarely, if ever, resulted in any solutions.

**On November 7, 2023**: PVHD informed Altera that its third-party coders discovered ICD-9 codes in the system that needed to be removed because ICD-9 codes have not been used since 2015 and that there were duplicate descriptions for multiple codes, all of which leads to incorrect coding. This error was never fixed.

23.     On numerous occasions, ALTERA failed to center its focus on the main setup and interface issues of the software. The calls and communications we had week after week, month after month, resulted in no meaningful progress or improvement made to the System, which continued to fail as it had for some time. ALTERA's months of failures were in direct breach of its contractual obligations to cure all problems with its software within 60 days of notice.  I repeatedly sent emails and made calls to Thomas McCabe, Kelly Johnson, Karthika Hari, members of ALTERA's India Team, and other ALTERA employees attempting to refocus ALTERA to the biggest issues impacting PVHD's ability to bill and collect for the patient care it was rendering: Financial Classes, Clearinghouse Interface, and Incomplete Queues.  ALTERA was unresponsive to my requests.

24.     On November 7, 2023, months after ALTERA began its work to purportedly resolve the software issues it caused at PVHD, I emailed Thomas McCabe and Karthika Hari again explaining my concerns with ALTERA's comprehension of the actual problems PVHD was facing and the seriousness of those problems.  I explained that, as CFO, I was unable to perform even standard billing given the lack of progress in fixing the defective system. No meaningful response was provided, nor changes made.

25.     On November 21, 2023, I emailed to inquire about meeting with ALTERA and reiterated the need to discuss the core problems with its software. In response, I received an email from ALTERA's finance department advising me that a "support" hold would be placed on PVHD's account if it did not pay $405,000 to ALTERA by December 4, 2023.

26.     On November 28, 2023, I met remotely with Thomas McCabe and the GMS Team and again stressed that the team had been focusing only on marginal fixes, but that the most pressing issues I've been alerting ALTERA to (Financial Classes, Clearinghouse Interface, and Incomplete Queues) remained unaddressed. They promised to research those three topics and report back on December 5, 2023. However, on December 4, 2023, McCabe informed me that his finance department had imposed a "Support Hold" on PVHD, stopping any assistance to PVHD in Managed Services (both Clinical and Revenue Cycle) and cancelling any future meetings.  The only work

8

McCabe was authorized to perform by ALTERA was on "patient safety issues."  McCabe apologized and stated he was "prepared to start work immediately once this issue is resolved between our financial teams."

27.     On December 5, 2023, I responded to ALTERA finance department, inquiring whether the email was sent in error, given the extensive history of the problems with the electronic health record and financial management system and ALTERA's failure to cure those problems in breach of its contractual obligations, resulting in massive financial losses to PVHD, with no end in sight. No response was received.

28.     On January 14, 2024, PVHD was completely locked out and denied all access to its entire electronic health record and financial management system, including access to critical patient information, data, medical histories, demographics and billing information.  This brought operations at the hospital to an almost immediate halt and created significant patient safety issues and hardships for patients, our employees and our providers. When PVHD's IT director contacted ALTERA about this, he was told ALTERA locked out PVHD due to a "Finance Hold." By taking this extraordinary step, ALTERA prevented patients from receiving medical and emergency medical care, with full knowledge that the next closest hospital was at least a 90- minute drive and 50+ miles away from PVHD. In other words, ALTERA deliberately put patient lives at risk in hopes of extracting further money from PVHD. When this was brought to the attention of ALTERA's legal department on January 15, 2024, they denied that ALTERA had shut down access to the System.  However, PVHD was shortly thereafter given access to the electronic health record and financial management system when the significant patient safety issues were raised, with the support person at ALTERA advising PVHD's IT director that access was restored by the highest level of corporate management.

29.     Since then, we have involved PVHD's outside counsel, who has been communicating on our behalf with ALTERA's in-house lawyers, who, in turn, threatened to end the contract with PVHD and withdraw all access to the EHR and financial management systems on April 1, 2024, unless PVHD pays ALTERA $1,337,849 before that date.  This threat by ALTERA was provided by letter on January 31, 2024.  We responded to ALTERA noting the significant patient safety issues inherent in such a reckless decision, and asked for further clarification on this threat.

30.     On March 5, 2024, ALTERA clarified that if payment is not received by April 1, 2024, "the Agreement will cease, and ALTERA will return your data in a standard format." On March 11, 2024, PVHD requested the file specifications for the data file to be sent, and for the data file to be provided to PVHD in "a decrypted and human-readable format as soon as possible, as it will take PVHD at least 90 days of continued access to the electronic health record and financial management system to ensure the completeness and accuracy of the data provided by Altera, including ingesting PVHD's back-up data copy into a readable database, verifying scanned images and saved reports are properly indexed, and countless other forms of verification to protect patient safety." As of the date of this declaration, ALTERA has not responded with this critical information, and PVHD has no knowledge of what data file will be sent April 1, 2024 nor has PVHD been given the time to build a database to ingest our data file since we have not received the file specifications from ALTERA as we had asked.

31.     Further, PVHD does not have the funds to pay ALTERA even if ALTERA had not breached the contract and denied PVHD services due under the contract due to the tens of millions of dollars lost because of the problems caused by ALTERA with its electronic health record and financial management system. PVHD is a small rural hospital that cannot withstand losses anywhere close to that amount and is relying now on loans to meet its current financial obligations. The impact on PVHD of the defective software cannot be overstated, nor can ALTERA's role in causing those problems and the fact that they remain unresolved.  This does not even take into account the fines PVHD is facing for not complying with mandatory reporting and the losses from the QIP program, all of which were caused by ALTERA's defective electronic health record and financial management system.

32.     If PVHD is denied all access to the System, as ALTERA has threatened to do on April 1, 2024, it may be forced to close its doors and most certainly will be unable to provide the same level of care and treatment to its patients or to bill for services provided to its patients to support ongoing operations. This is a significant patient safety issue that could be particularly devastating to our patients as the next closest hospital is as much as 90 minutes away and entirely inaccessible to many residents in our community.  ALTERA's threat is extremely dangerous and has

DECLARATION OF WILLIAM VAN NOLL IN SUPPORT OF *EX PARTE* APPLICATION FOR TEMPORARY INJUNCTIVE RELIEF AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION

1   not given PVHD adequate time or the necessary information to prepare for the impending disaster

2   caused by withdrawing PVHD's access nor the opportunity to validate the data to be received and

3   convert it to a usable form.

4         33.    If ALTERA is not enjoined and PVHD is denied access to the electronic health record

5   and financial management system that houses every pertinent piece of information about its patients

6   and other critically important data and billing information, PVHD will suffer immediate and

7   irreparable harm and injury in that its operations will be paralyzed and likely suspended, its patients

8   will be deprived from receiving necessary healthcare and it is questionable whether its operations can

9   continue.

10         I declare under penalty of perjury under the laws of the State of California that the

11   foregoing is true and correct. Executed this 26th day of March 2024 at Blythe, California.

12

13                   William Van Noll

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF WILLIAM VAN NOLL IN SUPPORT OF *EX PARTE* APPLICATION FOR TEMPORARY
INJUNCTIVE RELIEF AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUCTION

1  Maria C. Roberts, SBN 137907
   mroberts@greeneroberts.com
2  Noel J. Meza, SBN 331169
   nmeza@greeneroberts.com
3  Dominick J. Sawaya, SBN 345943
   dsawaya@greeneroberts.com
4  GREENE & ROBERTS
   402 West Broadway, Suite 1025
5  San Diego, CA 92101
   Telephone:    (619) 398-3400
6  Facsimile:    (619) 330-4907

7  Attorneys for Plaintiff
   Palo Verde Healthcare District

8

9                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                    COUNTY OF RIVERSIDE – BLYTHE DIVISION

11  PALO VERDE HEALTHCARE DISTRICT, a          Case No. CVPS 2401780
    California public entity,
12                                             Judge:
               Plaintiff,                      Department:
13
          v.                                   **DECLARATION OF MARIA C. ROBERTS
14                                             IN SUPPORT OF PLAINTIFF'S *EX PARTE*
    ALTERA DIGITAL HEALTH INC., a Delaware     APPLICATION FOR TEMPORARY
15  corporation; and DOES 1 through 10,        INJUNCTIVE RELIEF AND ORDER TO
                                               SHOW CAUSE REGARDING
16             Defendants.                      PRELIMINARY INJUNCTION**

17                                             **SUPPORTING DOCUMENTS:**
                                               *EX PARTE* APPLICATION; MEMORANDUM
18                                             OF POINTS AND AUTHORITIES;
                                               DECLARATIONS OF WILLIAM VAN NOLL
19                                             AND SANDRA ANAYA; (PROPOSED)
                                               TEMPORARY RESTRAINING ORDER;
20                                             (PROPOSED) PRELIMINARY INJUNCTION
                                               [Code Civ. Proc. §§ 525 *et seq.*; Cal. Rules of
21                                             Court, rules 3.1150 and 3.1200 *et seq.*]

22                                             Hearing Date:   March __, 2024
                                               Time:           ____ a.m.
23                                             Department:

24

25

26

27

28

        DECLARATION OF MARIA C. ROBERTS IN SUPPORT OF *EX PARTE* APPLICATION FOR TEMPORARY
        INJUNCTIVE RELIEF AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUCTION

**F I L E D**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

MAR 26 2024

___Y. Saldana___

Maria C. Roberts, SBN 137907
mroberts@greeneroberts.com
Noel J. Meza, SBN 331169
nmeza@greeneroberts.com
Dominick J. Sawaya, SBN 345943
dsawaya@greeneroberts.com
GREENE & ROBERTS
402 West Broadway, Suite 1025
San Diego, CA 92101
Telephone:    (619) 398-3400
Facsimile:    (619) 330-4907

Attorneys for Plaintiff
Palo Verde Healthcare District

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF RIVERSIDE – BLYTHE DIVISION

| | |
|---|---|
| PALO VERDE HEALTHCARE DISTRICT, a California public entity,<br><br>Plaintiff,<br><br>v.<br><br>ALTERA DIGITAL HEALTH INC., a Delaware corporation; and DOES 1 through 10,<br><br>Defendants. | Case No.<br><br>Judge:<br>Department:<br><br>**DECLARATION OF MARIA C. ROBERTS IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION FOR TEMPORARY INJUNCTIVE RELIEF AND ORDER TO SHOW CAUSE REGARDING PRELIMINARY INJUNCTION**<br><br>**SUPPORTING DOCUMENTS:**<br>*EX PARTE* APPLICATION; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF WILLIAM VAN NOLL AND SANDRA ANAYA; (PROPOSED) TEMPORARY RESTRAINING ORDER; (PROPOSED) PRELIMINARY INJUNCTION [Code Civ. Proc. §§ 525 *et seq.*; Cal. Rules of Court, rules 3.1150 and 3.1200 *et seq.*]<br><br>Hearing Date:    March __, 2024<br>Time:                ____ a.m.<br>Department: |

DECLARATION OF MARIA C. ROBERTS IN SUPPORT OF *EX PARTE* APPLICATION FOR TEMPORARY INJUNCTIVE RELIEF AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUCTION

I, Maria C. Roberts, declare as follows:

1.     I am an attorney licensed to practice law before all courts in the State of California.  I am an attorney with the law firm of Greene & Roberts, attorneys of record for Defendant Palo Verde Healthcare District, a public entity.  I have personal knowledge of the facts set forth in this Declaration and can competently testify thereto.

2.     This declaration is submitted in support of the *ex parte* application by Palo Verde Healthcare District, which operates as Palo Verde Hospital ( "PVHD"), for both prohibitive and mandatory temporary injunctive relief and for an order to show cause regarding preliminary injunction.

3.     The Contract at issue in this dispute is not attached to this application, as Defendant Altera Digital Health Inc. ("Altera") insists it is confidential and may not be disclosed.  PVHD disagrees, but because this dispute is unresolved, it does not attach the Contact.

4.     On January 14, 2024, I was advised by my client PVHD that it had been locked out of its electronic health record system managed by a vendor known as Altera and was not able to access any patient information. I was aware of some of the recent history with Altera, the many problems PVHD had with the way the Altera software for the electronic health record and billing system had been built, the significant financial losses it had suffered and that it had been waiting for many months for these problems to be rectified by Altera. Because of the seriousness of this situation, I sent a lengthy email to Altera, reviewed the situation and requested that PVHD's access to the electronic health record and billing system be restored right away. Attached hereto as **Exhibit 1** is a true and correct copy of my January 15, 2024 email sent to Thomas McCabe at Altera.

5.     In response, Mr. McCabe sent an email which indicated that my email was inaccurate and needed to be directed "to legal." There were subsequent communications as well with Altera's legal department who denied PVHD had been locked out of the system or that it had been decommissioned.  In those communications I broached the subject of the parties mediating their differences and disputes. No response was received to that invitation.  Attached hereto as **Exhibit 2** are true and correct copies of those communications dated January 15–17, 2024.

/ / /

6.      After engaging in numerous communications with Altera's in-house lawyer, I was advised by PVHD that its access to the electronic health record system had been restored by Altera.

7.      On January 31, 2024, I was provided with a copy of a letter that Altera sent to PVHD's CEO which demanded payment of more than $1.3 million and threatened that if payment was not received within 60 days, PVHD "would cease to have any access to any Altera system and therefore any data stored on the system." The letter encouraged PVHD to back up the data on the system, even though PVHD lacked the ability to access or to back-up that information as all of that data is hosted on Altera servers to which PVHD has no access. Attached hereto as **Exhibit 3** is a true and correct copy of the letter from Elliott Bryan at Altera to the CEO of PVHD dated January 31, 2024.

8.      On February 13, 2024, I responded to Altera with a 10-page letter that described point-by-point Altera's many contractual breaches and misrepresentations made. In that letter, I also asked that PVHD not be locked out of the system and indicated that if that happened, PVHD would be forced to initiate legal action against Altera.  Attached hereto as **Exhibit 4** is a true and correct copy of my correspondence to Altera, dated February 13, 2024.

9.      Written communications between myself and Altera have continued since then with no resolution of any of the issues.  Attached hereto as **Exhibit 5** are true and correct copies of those communications bearing various dates in January and February 2024.

10.      On March 5, 2024, I received a letter from an in-house attorney for Altera, Louise Pearson, who accused PVHD of not proceeding with an upgrade to the Altera electronic health record system  - which was her justification for all of the problems PVHD had had with the system and the apparent justification for Altera's contract breaches, numerous misrepresentations, PVHD's losses in the hundreds of millions of dollars etc. The Pearson letter ended by stating that Altera would provide PVHD with all of the data on the electronic system in "standard" format.  Attached hereto as **Exhibit 6** is a true and correct copy of the correspondence from Louise Pearson to Altera, dated March 5, 2024.

///

///

11.    I responded to Ms. Pearson by letter dated March 11, 2024, which again set forth in detail the many factual errors in her March 5, 2024 letter and laid out the facts as supported by the objective evidence and communications between PVHD and Altera.  The letter asked that PVHD not be locked out of the system or that it be given to at least June 30, 2024 so that PVHD had time after it received all of its data from Altera (which still has not happened), to review the data and ensure it had all of its data. The letter also asked that the data be provided in human, readable format.  I ended the letter by again inviting Altera to endeavor to resolve its disputes with PVHD with the help of a neutral mediator in Riverside County, which would be preferable to protracted and expensive litigation.  Attached hereto as **Exhibit 7** is a true and correct copy of my correspondence to Louise Pearson dated March 11, 2024.

12.    A day or two after I sent my March 11, 2024 letter to Altera, I received a phone message from an outside attorney named Eric Kennedy who said he represented Altera and wished to speak with me about the dispute with PVHD.  We then exchanged phone messages and he sent an email to me on March 13, 2024 suggesting that leadership at PVHD and Altera speak about PVHD's concerns.  Attached hereto as **Exhibit 8** is a true and correct copy of the email from Eric Kennedy to me dated March 13, 2024.

13.    I responded to Eric Kennedy on March 15, 2024 and stressed that leadership for our clients had been communicating for many months and that Altera was keenly aware of PVHD's concerns.  I stressed the need to hear back from Altera on our request that it delay any lock out of the system and to PVHD's request for its data from the electronic system.  I ended by reiterating my prior invitation for Altera to consider having a third party mediate the pending issues between PVHD and Altera, to avoid further harm to PVHD and the community it serves.  Attached hereto as **Exhibit 9** is a true and correct copy of my email to Eric Kennedy dated March 15, 2024.

14.    Mr. Kennedy did not respond to that email for several days so I followed up  He eventually responded, advised my emails were caught in his spam filter and that he would respond to me later that day, March 21, 2024.  I responded and reminded him that time was of the essence and that we needed to hear back from Altera on the issues I previously raised.  Attached hereto as **Exhibit 10** is a true and correct copy of the email from Eric Kennedy to me dated March 21, 2024.

15. When I did not hear back from Eric Kennedy as he had promised as of March 22, 2024, I sent another follow-up email to him, again stressing that time was of the essence and that we need to know Altera's position. Attached hereto as **Exhibit 11** is a true and correct copy of the email I sent to Eric Kennedy on March 22, 2024.

16. When I continued to not receive any substantive response from Altera or its attorney, Eric Kennedy, I emailed him again on March 25, 2024. I was again pleading for a response from his client on the issues of the threatened lock out and of PVHD from the electronic health record system and stressed that if no response was received, PVHD would be forced to initiate legal action against Altera. Attached hereto as **Exhibit 12** is a true and correct copy of the email from Eric Kennedy to me dated March 13, 2024.

17. When Eric Kennedy emailed me back late on March 25, 2024, his response did not address the issue of the threatened lock out or PVHD's request for its data from Altera. I responded one last time and did not hear back from him again. Attached hereto as **Exhibit 13** is a true and correct copy of the email from Eric Kennedy to me dated March 25, 2024, and my response to him dated March 26, 2024.

18. As of the date this case was initiated and this *ex parte* application was filed, Altera has neither withdrawn its threat to terminate all services to PVHD effective April 1, 2024, has not responded to PVHD's request for its data from the electronic health record and financial management system, and has not responded to the invitation to mediate. The Contract between Altera and PVHD is not attached because Altera insists it is confidential. PVHD disagrees, but because this dispute is unresolved, it does not attach the Contract to this Application.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 26th day of March 2024, at San Diego, California.

Maria C. Roberts

4

# Exhibit 1

From:       Maria Roberts
To:         thomas.mccabe@alterahealth.com
Cc:         Julie.Greer@alterahealth.com; William Van Noll CPA MBA (William.VanNoll@paloverdehospital.org); Nicolas Echevestre
Subject:    RE: PV: Support Hold
Date:       Monday, January 15, 2024 12:23:54 PM
Attachments: image001.png

Dear Mr. McCabe:

We are counsel for Palo Verde Healthcare District and write to you in your role as Vice President of Altera.

As you know, the District has been communicating with you and numerous other people at Altera regularly (nearly weekly) since at least August 30, 2023, about the many problems with the Altera EHR system that has been in place at Palo Verde Hospital over the past several years. The many problems with that EHR system were identified in detail for Altera in a lengthy recorded call that took place on August 30, 2023 with you and Kelly Johnson during which you admitted to the existence of the problems caused by Altera and the tens of millions of dollars in losses suffered by the District because of those problems. As of that call, Altera not only knew of the many problems with its EHR system, but it admitted the problems and committed to fixing the problems.

In addition, Altera is obligated by contract to provide the District with a full time knowledgeable, dedicated Managed Services lead to address problems with the Altera system. The individual assigned to lead Managed Services for the District's account, James O'Brien, was completely unqualified to provide the support services and expertise that Altera is contractually required to provide to the District. Mr. O'Brien was then immediately removed from that role (years after being put in the role) and replaced with Kelly Johnson, who promptly went out on a medical or stress leave. Thus, no meaningful Managed Services support services have ever truly been provided to the District, despite Altera's contractual obligation to do so, costing the District tens of millions of dollars.

Over the last five months, weekly calls and communications occurred between Altera/you/your team and Will Van Noll/his team. The purpose of these calls was to track the progress by Altera in fixing the innumerable problems with the EHR system that impacted nearly every aspect of the District's hospital operations, including its ability to even bill for services provided. The calls and communications occurred week after week, month after month, with no meaningful progress or improvement made to the Altera EHR system that continued to fail as it had for a long time. Altera's failure to remedy the problems with its EHR system over the past five months was in direct breach of its contractual obligations to cure all problems with its EHR system within 60 days of notice or face termination of the agreement.

While this was transpiring and the District was continuing to struggle daily to operate despite a nonfunctioning EHR system, Altera was simultaneously demanding the District continue to pay Altera what it contended was due under the contract. This was, despite the fact, that Altera had been paid more than $10 million for a system that never functioned properly or as represented, and prepaid $2 million for a never implemented Altera system that did not materialize. So, as Altera was continuing to drive the District toward financial ruin through its inadequate and dysfunctional EHR system, it had the audacity to demand payment for contractual services it had long failed to provide.

This situation escalated on November 21, 2023, when your finance department emailed Mr. Van Noll advising that a support hold on the District's account would occur if the District did not pay $405,000 to Altera. On December 4, 2023, you sent the below email to the "Team," advising that your "finance department" had "placed PV on support hold, until payment is either confirmed sent or received." You also stated that Altera "need[s] to stop work in the Managed Services Clinical and Rev Cycle areas" and that the only work Altera was "authorized to perform is patient safety issues." You then apologized to Mr. Van Noll and advised him that Altera was "prepared to start work immediately once this issue is resolved between our financial teams."

Mr. Van Noll responded to your email on December 5, 2023, making it clear to you and your finance department that the email must have been sent in error, given the history of the problems with the EHR system and Altera's utter failure to cure those problems in breach of its contractual obligations. He also made clear that putting any kind of hold on the EHR system was detrimental to the District and to its patients. No one at Altera (including you and the finance department) took any real steps thereafter to remedy the ongoing problems with the system. Rather, Altera just continued to push for payment.

This past weekend when District employees attempted to log into the EHR system, they discovered they could not gain access. The District's IT department got involved and learned from Altera that it had completely locked the District out of its EHR system and did so as a "Finance Hold." In other words, as you and every decisionmaker at Altera knows, you shut down the ability of the District's hospital to function, placed every single patient at risk, put employees and providers at risk, as you have attempted to squeeze money out of the District that it does not have and does not owe to Altera. This is nothing short of extortion and an attempt by Altera to continue its pattern of defrauding a governmental agency with no regard for the wellbeing of the thousands of patients who seek medical care through the District.

It defies comprehension and human decency that Altera would engage in such egregious actions that put thousands of innocent lives at risk. Be assured, this will not go without a response. **Please be advised that if Altera continues to prevent the District and its employees from gaining access to the EHR system, the District will take immediate legal action against Altera for its breaches of contract, its bad faith conduct and its continued efforts to defraud a government agency, while putting patients in harm's way. The District will not only seek the relief needed to halt this misconduct by Altera, but it will also affirmatively pursue Altera for its fraud, breach of contract and related losses and for all amounts paid to Altera to date.**

Your immediate attention to this letter is requested. We also look forward to your considered response.

**Maria C. Roberts | Attorney**



402 West Broadway | Suite 1025

San Diego, CA 92101

P: 619.398.3400

mroberts@greeneroberts.com

**CONFIDENTIALITY NOTICE:** This email, and any attachments thereto, is intended for use only by the addressee(s) named herein and may contain confidential information, legally privileged information and attorney-client work product. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you have received this email in error, please notify the sender by email, telephone or fax, and permanently delete the original and any printout thereof. Thank you.

---

**From:** McCabe, Thomas <thomas.mccabe@alterahealth.com>
**Sent:** Monday, December 4, 2023 3:37 PM
**To:** William Van Noll <william.vannoll@paloverdehospital.org>

**Cc:** Katchya Currier <kat.currier@paloverdehospital.org>; Avena, Mia <mia.avena@alterahealth.com>
**Subject:** PV: Support Hold

Hi Team,

I have been notified Altera finance has placed PV on support hold, until payment is either confirmed sent or received. Based on this situation, I need to stop work in the Managed Services Clinical and Rev Cycle areas---I have cancelled tomorrows two calls. The only work that we are authorized to perform is patient safety issues.

I am sorry that we are in this situation, but I am prepared to start work immediately once this issue is resolved between our financial teams. If you have any questions, please contact either Karthica or me.

Thanks, Tom

**Thomas McCabe**
Area Vice President, Managed Services West
**m +1.719.331.3054**
thomas.mccabe@alterahealth.com

Ascending to a new era of healthcare



**Harris Customer Training Conference**
Gaylord Palms Resort | Orlando, FL
Pre-Con: December 4 | HCTC: December 5 – 7
**Learn More**

Exhibit 2

| | |
|---|---|
| From: | Maria Roberts |
| To: | Steinkamp, Kristin |
| Cc: | Pearson, Louise; Santos, Carter; Nicolas Echevestre |
| Subject: | RE: Palo Verde Support Hold |
| Date: | Tuesday, January 16, 2024 2:20:03 PM |
| Attachments: | image001.png |
| | image003.png |

Thank you. But that is precisely what the District's IT director was told this weekend and our client cannot, in fact, access the EHR system. The District believes this is on Altera's end, so would appreciate help in getting access restored.

Maria

**From:** Steinkamp, Kristin <kristin.steinkamp@alterahealth.com>
**Sent:** Tuesday, January 16, 2024 2:04 PM
**To:** Maria Roberts <mroberts@greeneroberts.com>
**Cc:** Pearson, Louise <louise.pearson@alterahealth.com>; Santos, Carter <carter.santos@alterahealth.com>; Nicolas Echevestre <NEchevestre@greeneroberts.com>
**Subject:** RE: Palo Verde Support Hold

> EXTERNAL EMAIL - This email was sent by a person from outside your organization. Exercise caution when clicking links, opening attachments or taking further action, before validating its authenticity.

Hi Maria,

Just a follow-up note from our call to confirm that we did not decommission Sunrise as you incorrectly suggested. Regards, Kristin

**From:** Maria Roberts <mroberts@greeneroberts.com>
**Sent:** Tuesday, January 16, 2024 3:37 PM
**To:** Steinkamp, Kristin <kristin.steinkamp@alterahealth.com>
**Cc:** Pearson, Louise <louise.pearson@alterahealth.com>; Santos, Carter <carter.santos@alterahealth.com>; Nicolas Echevestre <NEchevestre@greeneroberts.com>
**Subject:** RE: Palo Verde Support Hold

**Warning: This email originated from outside of the corporate email system.  External Sender Address:** mroberts@greeneroberts.com

Thank you for your response.

While I appreciate your interest in investigating the situation, (something that should have been done months ago), as you know, my client is in the midst of an absolute crisis created by your company and we are single-minded in the goal of either having your "finance" (i.e., money) hold on the District's access to the EHR system lifted or filing a lawsuit this week.

On the Managed Services side, I am certain Tom McCabe and/or Kelly Johnson can confirm the situation as they described it on August 30, 2023:

- "it's even uglier than what we hoped for";
- it's cost the District tens of millions of dollars;
- we should just focus on the unbilled claims that are less than one year old, as the thousands of others are too old to bill;
- this was largely our ("Altera's") fault, but some fault is senselessly attributed on the call to the District's former CFO for doing the unthinkable: "holding her cards too close to the chest."

At an on-site meeting on August 15, 2023, Morgan Kinnett described the EHR system as: "the worst system I have ever seen at a hospital." She shared that she had never seen a system that bad and that James O'Brien had "absolutely no expertise in revenue cycle or billing."

Unfortunately, this is just the tip of the iceberg as far as Altera's extraordinary failures, breaches of contract, misrepresentations, and greed-driven decision to lock the District out of its EHR system, thereby compromising the lives of every patient, denying patients their state and federal right to their own medical records and attempting to drive the final nail in the coffin of the District that Altera had been abusing for years.

Time is of the essence. Either restore access and we can mediate our differences; or, face the consequences of many ill-advised decisions and appalling conduct.

I am hoping against hope that reason and common decency prevail on your end.

Maria Roberts

**From:** Steinkamp, Kristin <kristin.steinkamp@alterahealth.com>
**Sent:** Tuesday, January 16, 2024 12:31 PM
**To:** Maria Roberts <mroberts@greeneroberts.com>
**Cc:** Pearson, Louise <louise.pearson@alterahealth.com>; Santos, Carter <carter.santos@alterahealth.com>
**Subject:** FW: Palo Verde Support Hold
**Importance:** High

> EXTERNAL EMAIL - This email was sent by a person from outside your organization. Exercise caution when clicking links, opening attachments or taking further action, before validating its authenticity.

Hello Maria,

I am corporate counsel with Altera Digital Health and received your below emails, which I will handle going forward. Please do not reach out to anyone else at Altera regarding this matter. I am reviewing your emails and the allegations contained therein and will have a response soon. In the meantime, please send us a copy of the recording mentioned in your emails.

Thank you, Kristin Steinkamp

**Kristin Steinkamp** (she/her)
Corporate Counsel
kristin.steinkamp@alterahealth.com

Ascending to a new era of healthcare ◢

**From:** Maria Roberts <mroberts@greeneroberts.com>
**Sent:** Tuesday, January 16, 2024 1:14 PM
**To:** McCabe, Thomas <thomas.mccabe@alterahealth.com>
**Cc:** Greer, Julie <julie.greer@alterahealth.com>; Adams, Jay <jay.adams@alterahealth.com>; Jenkins, Heather <heather.jenkins@alterahealth.com>; William Van Noll CPA MBA (William.VanNoll@paloverdehospital.org) <William.VanNoll@paloverdehospital.org>; Nicolas Echevestre <NEchevestre@greeneroberts.com>
**Subject:** RE: Time Sensitive Email PV: Support Hold

**Warning:** This email originated from outside of the corporate email system. **External Sender Address:** mroberts@greeneroberts.com

Mr. McCabe and Altera team:

My email of yesterday is not in any way inaccurate. In fact, the email is objectively supported by a recorded Teams call of 8/30/23, your own shared documents/spreadsheets, countless emails sent to you since that time and the EHR system itself. The harm Altera is causing to the District, its patients and staff, as well as the public in Blythe generally is actual and it is beyond measure.

Patients cannot receive the care needed (which in most instances is emergency care) and the hospital cannot fulfill its mission of providing for the healthcare needs of the community. This is made worse by the fact that each of you know that the District operates in a very rural community with the next closest hospital being a 90 minute drive away. You and Altera will be held responsible for every patient who suffers harm because of your inhumane decisions and gamesmanship. We will also be alerting local members of the United States Congress and California State Assembly of your misconduct and asking for their support and intervention for your decision to deliberately harm the community of Blythe in the name of greed.

If access to the EHR system is not reinstated for the District immediately and certainly before the close of business today, a lawsuit will be filed against Altera and those responsible for this decision and all legal remedies available will be pursued.

Your immediate and considered attention to this is again requested, as the safety of hundreds of patients is at stake.

Maria Roberts

**From:** McCabe, Thomas <thomas.mccabe@alterahealth.com>

**Sent:** Monday, January 15, 2024 3:07 PM
**To:** Maria Roberts <mroberts@greeneroberts.com>
**Cc:** Greer, Julie <julie.greer@alterahealth.com>; William Van Noll CPA MBA (William.VanNoll@paloverdehospital.org) <William.VanNoll@paloverdehospital.org>; Nicolas Echevestre <NEchevestre@greeneroberts.com>; Adams, Jay <jay.adams@alterahealth.com>; Jenkins, Heather <heather.jenkins@alterahealth.com>
**Subject:** Re: PV: Support Hold

---

EXTERNAL EMAIL - This email was sent by a person from outside your organization. Exercise caution when clicking links, opening attachments or taking further action, before validating its authenticity.

---

Dear Ms. Roberts,

The below is factually incorrect, this conversation needs to be directed to legal.

Thanks, Tom

**Thomas McCabe**
**Area Vice President, Managed Services West**
**m +1.719.331.3054**
thomas.mccabe@alterahealth.com

_Ascending to a new era of healthcare_

> On Jan 15, 2024, at 1:24 PM, Maria Roberts <mroberts@greeneroberts.com> wrote:
>
> Warning: This email originated from outside of the corporate email system.  **External Sender Address:** mroberts@greeneroberts.com
>
> Dear Mr. McCabe:
>
> We are counsel for Palo Verde Healthcare District and write to you in your role as Vice President of Altera.
>
> As you know, the District has been communicating with you and numerous other people at Altera regularly (nearly weekly) since at least August 30, 2023, about the many problems with the Altera EHR system that has been in place at Palo Verde Hospital over the past several years.  The many problems with that EHR system were identified in detail for Altera in a lengthy recorded call that took place on August 30, 2023 with you and Kelly Johnson during which you admitted to the existence of the problems caused by Altera and the tens of millions of dollars in losses suffered by the District because of those problems.  As of that call, Altera not only knew of the many problems with its EHR system, but it admitted the problems and committed to fixing the problems.
>
> In addition, Altera is obligated by contract to provide the District with a full time knowledgeable, dedicated Managed Services lead to address problems with the Altera system.  The individual assigned to lead Managed Services for the District's account, James O'Brien, was completely unqualified to provide the support services and expertise that Altera is contractually required to provide to the District.  Mr. O'Brien was then immediately removed from that role (years after being put in the role) and replaced with Kelly Johnson, who promptly went out on a medical or stress leave.  Thus, no meaningful Managed Services support services have ever truly been provided to the District, despite Altera's contractual obligation to do so, costing the District tens of millions of dollars.
>
> Over the last five months, weekly calls and communications occurred between Altera/you/your team and Will Van Noll/his team.  The purpose of these calls was to track the progress by Altera in fixing the innumerable problems with the EHR system that impacted nearly every aspect of the District's hospital operations, including

its ability to even bill for services provided.  The calls and communications occurred week after week, month after month, with no meaningful progress or improvement made to the Altera EHR system that continued to fail as it had for a long time.  Altera's failure to remedy the problems with its EHR system over the past five months was in direct breach of its contractual obligations to cure all problems with its EHR system within 60 days of notice or face termination of the agreement.

While this was transpiring and the District was continuing to struggle daily to operate despite a nonfunctioning EHR system, Altera was simultaneously demanding the District continue to pay Altera what it contended was due under the contract.  This was, despite the fact, that Altera had been paid more than $10 million for a system that never functioned properly or as represented, and prepaid $2 million for a never implemented Altera system that did not materialize.  So, as Altera was continuing to drive the District toward financial ruin through its inadequate and dysfunctional EHR system, it had the audacity to demand payment for contractual services it had long failed to provide.

This situation escalated on November 21, 2023, when your finance department emailed Mr. Van Noll advising that a support hold on the District's account would occur if the District did not pay $405,000 to Altera.  On December 4, 2023, you sent the below email to the "Team," advising that your "finance department" had "placed PV on support hold, until payment is either confirmed sent or received."  You also that Altera "need[s] to stop work in the Managed Services Clinical and Rev Cycle areas" and that the only work Altera was "authorized to perform is patient safety issues."  You then apologized to Mr. Van Noll and advised him that Altera was "prepared to start work immediately once this issue is resolved between our financial teams."

Mr. Van Noll responded to your email on December 5, 2023, making it clear to you and your finance department that the email must have been sent in error, given the history of the problems with the EHR system and Altera's utter failure to cure those problems in breach of its contractual obligations.  He also made clear that putting any kind of hold on the EHR system was detrimental to the District and to its patients.  No one at Altera (including you and the finance department) took any real steps thereafter to remedy the ongoing problems with the system.  Rather, Altera just continued to push for payment.

This past weekend when District employees attempted to log into the EHR system, they discovered they could not gain access.  The District's IT department got involved and learned from Altera that it had completely locked the District out of its EHR system and did so as a "Finance Hold."  In other words, as you and every decisionmaker at Altera knows, you shut down the ability of the District's hospital to function, placed every single patient at risk, put employees and providers at risk, as you have attempted to squeeze money out of the District that it does not have and does not owe to Altera.  This is nothing short of extortion and an attempt by Altera to continue its pattern of defrauding a governmental agency with no regard for the wellbeing of the thousands of patients who seek medical care through the District.

It defies comprehension and human decency that Altera would engage in such egregious actions that put thousands of innocent lives at risk.  Be assured, this will not go without a response.  Please be advised that if Altera continues to prevent the District and its employees from gaining access to the EHR system, the District will take immediate legal action against Altera for its breaches of contract, its bad faith conduct and its continued efforts to defraud a government agency, while putting patients in harm's way.  The District will not only seek the relief needed to halt this misconduct by Altera, but it will also affirmatively pursue Altera for its fraud, breach of contract and related losses and for all amounts paid to Altera to date.

Your immediate attention to this letter is requested.  We also look forward to your considered response.

Maria C. Roberts | Attorney



402 West Broadway | Suite 1025

San Diego, CA 92101

P: 619.398.3400

mroberts@greencroberts.com

**CONFIDENTIALITY NOTICE:** This email, and any attachments thereto, is intended for use only by the addressee(s) named herein and may contain confidential information, legally privileged information and attorney-client work product. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you have received this email in error, please notify the sender by email, telephone or fax, and permanently delete the original and any printout thereof. Thank you.

**From:** McCabe, Thomas <thomas.mccabe@alterahealth.com>
**Sent:** Monday, December 4, 2023 3:37 PM
**To:** William Van Noll <william.vannoll@paloverdehospital.org>
**Cc:** Katchya Currier <kat.currier@paloverdehospital.org>; Avena, Mia <mia.avena@alterahealth.com>
**Subject:** PV: Support Hold

Hi Team,

I have been notified Altera finance has placed PV on support hold, until payment is either confirmed sent or received.  Based on this situation, I need to stop work in the Managed Services Clinical and Rev Cycle areas---I have cancelled tomorrows two calls. The only work that we are authorized to perform is patient safety issues.

I am sorry that we are in this situation, but I am prepared to start work immediately once this issue is resolved between our financial teams.  If you have any questions, please contact either Karthica or me.

Thanks,  Tom

**Thomas McCabe**
Area Vice President, Managed Services West
m +1.719.331.3054
thomas.mccabe@alterahealth.com

Ascending to a new era of healthcare



**Harris Customer Training Conference**
Gaylord Palms Resort | Orlando, FL
Pre-Con: December 4 | HCTC: December 5 – 7
**Learn More**

Exhibit 3

January 31, 2024

Sandra Anaya
Chief Executive Officer
Palo Verde Hospital
250 North First St.
Blythe, CA 92225
*Via Certified Mail*

Re:     Altera Digital Health Account Name: Palo Verde Hospital
        Altera Digital Health Account No.: 10082222

Dear Sandra:

I am writing regarding an outstanding balance owed by Palo Verde Hospital to Altera Digital Health Inc. ("Altera"). Altera requested payment on the above-referenced account several times and has been unable to reach resolution. Currently, there is an outstanding balance owed by Palo Verde Hospital in the amount of $1,337,849.07 pursuant to Palo Verde Hospital's Master Agreement dated 03/31/2015 with Allscripts Healthcare LLC, predecessor-in-interest to Altera, and the supplemental agreements, Client Order Forms, addendums, and amendments thereto (the "Agreement").

Altera has requested payment on the above-referenced account since August 2023. Since that time, Altera continues to reach out and request meetings to address concerns and the overdue balance on the account. On November 21, 2023, Altera issued a letter to inform you of pending support suspension due to unpaid invoices to Palo Verde Hospital, leading to the support suspension event on December 4, 2023. Altera's continued attempts to coordinate a meeting to move towards resolution have failed to date.

The Agreement requires that Palo Verde Hospital pay all fees and other amounts when due, and states that Altera may terminate the Agreement if Palo Verde Hospital fails to cure such non-payment within sixty (60) days of notice of breach from Altera per Section 14.1.

Additionally, your Board of Directors meeting records dated August 24, 2023 on your public website include a confidential Altera document on pages 94-100. Per sections 9.1 and 9.2 of the Agreement, Altera's confidential information cannot be shared with third parties, and such sharing is a breach of the Agreement.

Therefore, please consider this letter **Altera's formal notice of (i) Palo Verde Hospital's material breach of the Agreement and (ii) Altera's intent to terminate the Agreement if such non-payment is not cured in full within sixty (60) days of the date of this letter.**

Please be aware that if Altera terminates the Agreement, Palo Verde Hospital will remain responsible for the remaining fees for the committed term of the Agreement. Altera does not waive, and instead explicitly reaffirms, its right to seek these amounts as direct damages resulting from Palo Verde Hospital's contractual breach.

© 2023 Altera Digital Health Inc. and/or its subsidiaries. All rights reserved.



Please also be aware that, upon termination of the Agreement, Palo Verde Hospital will cease to have any access to any Altera systems and therefore to any data stored therein. **If you do not plan to cure the breach referenced above, Altera strongly encourages you to make any arrangements necessary to backup, store, and continue using your data prior to the expiration of the cure period referenced above (at which time you will no longer have access through Altera).**

We look forward to working with you to resolve this matter. Altera reserves all of its rights under the Agreement and otherwise.

Sincerely,

*Elliott Bryant*

Elliott Bryant, Executive Vice President
**Altera Digital Health Inc.**

CC:    Maria Roberts, *mroberts@greeneroberts.com*
       Trina Sartin, *trina@desertairambulance.com*

© 2023 Altera Digital Health Inc. and/or its subsidiaries. All rights reserved.



`

# Exhibit 4



February 13, 2024

Mr. Elliott Bryant
Executive Vice President
Altera Digital health Inc.

     Re:   *Palo Verde Healthcare District*
             Altera Account No. 10082222

Dear Mr. Bryant

     Your January 31, 2024 letter grossly mischaracterizes and ignores the dire situation Altera Digital Health ("Altera") has created for Palo Verde Healthcare District ("PVHD"). You simply fail to recognize that Altera's software has not worked properly, resulting in multiple millions of dollars in lost revenue as admitted by your colleagues in writing and verbally over the past several months. Your letter also ignores the fact that PVHD has paid nearly $1,100,000 for a migration to a new system that is not in use. PVHD has communicated about these issues to Altera on a nearly weekly basis through calls and emails since at least July of 2023, yet Altera has failed to fix its faulty EHR software configuration, which continues to cause multiple millions of dollars in losses to PVHD. Nonetheless, you have demanded that PVHD make regular payments to Altera despite being in clear breach of your own contract terms even after having already received over $10 million for an inoperable system. You now threaten to block PVHD's access to its own EHR system, unless your extortionist demands for payment are met. Your conduct is objectively reprehensible and actionable.

     Blythe, the area PVHD provides medical services to, is an underserved and vulnerable population with limited access to medical resources. If PVHD's access to electronic patient records if blocked by Altera, like it did in early January 2024, this will (as you are fully aware) have a devastating impact PVHD's ability to care for its patients and will place countless innocent lives at risk. Be assured that if Altera blocks PVHD's access again, as you now brazenly threaten, PVHD will pursue every legal channel to prevent this misconduct and to hold Altera and each decision-maker at that company responsible for the outfall of this action, including harm to PVHD patients, additional losses to PVHD, any regulatory action taken against PVHD, as well as to pursue claims against Altera for its breach of contract and related losses, for all amounts paid to Altera to date, and for damages caused by its fraud on a government entity.

**The Master Service Agreement**

     As you know, on March 31, 2015, PVHD and Altera signed the Master Agreement ("Contract") and Delivery Order for the use of Altera's EHR software. Soon after, PVHD began monthly payments of approximately $67,400 to Altera for the software and for Managed IT Services. As part of the Managed IT Services, Altera was contractually obligated to provide access to a 24-hour help desk phone line and a dedicated Altera employee, James O'Brien, to support PVHD when needing reports, fixes, changes, and other items. Altera designated O'Brien as PVHD's sole technical support person, at a cost of approximately $30,000 month for Managed IT Services paid by PVHD.

Mr. Elliott Bryant
February 13, 2024
Page 2

Tom McCabe, Kelly Johnson, and Morgan Kinnett each later admitted that O'Brien was a generalist, was grossly unqualified to assist PVHD with billing and revenue cycle issues, and had extremely poor communication skills. Thus, **8 years of after PVHD had been paying for services it was not receiving, Altera admitted its dereliction,** removed O'Brien from PVHD's account and replaced him with Kelly Johnson. However, that also did not solve the problem, as Johnson's role was short-lived (before she began a mysterious leave of absence) and without her (or the GMS Team at Altera substituted in for Ms. Johnson when she left) providing any meaningful fixes or solutions to the defective software program. Then, on December 12, 2023, Altera took the position that because it had not been paid by PVHD for its admitted breaches of contract and incompetence, it placed PVHD on a Support Hold which stopped even the appearance of any further attempts by Altera at fixing their defective system.

Without being provided legitimate, productive, or lasting support to PVHD, it is no surprise that PVHD has lost tens of millions of dollars and continues to lose revenue as a result of Altera's software and incompetence.

**SunComm Migration**

On November 22, 2021, PVHD and Altera signed the SunComm Delivery Order. The intention of implementing SunComm was to migrate the existing software into a new database and resolve the continuous problems caused by the manner in which Altera configured its software. PVHD thereafter began monthly payments of approximately $180,000 which included $50,000 towards the $1,228,414.99 in SunComm implementation fees and approximately $130,000 per month for the SunComm software and Managed IT Services.

The SunComm migration is still not completed over two years after the delivery order was signed, meaning PVHD has paid over $1,000,000 in prepayments to Altera for a system it has never been able to use, and Altera still continues to brazenly charge PVHD for this SunComm system at inflated rates  By charging SunComm fees, which are approximately $43,000 more than SCM rates, since November 2021 despite PVHD suffering from and continuing to use the defective SCM system, Altera has overcharged PVHD by approximately $1,220,000 in addition to the $1,000,000 prepayment SunComm it has collected.

In total, PVHD has paid to Altera a total of $10,002,839.52 for its software and services that either were never delivered or were deficient and in many respects not operable for the purposes provided, and the abuse continues with no regard for PVHD or the financial peril caused by Altera's breaches.

**Altera's Defective Software Platform**

As was discussed with your colleagues in August 2023, the Altera software provided has two core billing functions that are defective and have plagued PVHD:

1) the ability to send out bills correctly, and
2) the ability to receive data sent back to PVHD by payers after receiving a bill.

In fact, after Altera finally examined its system at PVHD and communicated with PVHD employees in late August 2023 and in multiple communications thereafter, based on Altera's own investigation and conclusions, it admitted that the EHR system installed was a failure and the cause of perhaps as much as $100 million in past charges that can never be collected or recouped.

Mr. Elliott Bryant
February 13, 2024
Page 3

These meetings/communications placed Altera on notice that it was in material breach of the Contract and had 60 days to cure those defects.

In the six months since, there have been weekly calls and numerous detailed emails between PVHD and Altera to track progress in fixing the broken software that has been preventing PVHD from being able to bill properly over the last 8 years as a direct result of Altera's substandard performance under the Contract. The progress resulting from these calls and emails was negligible, no critical improvements have ever been made, and the software continues to fail and haunt PVHD setting it on a trajectory of financial ruin.

**Morgan Kinnett Described the Configuration of Altera Software at PVHD as the Worst System She Has Ever Seen**

PVHD's interim CFO, William Van Noll, also requested that an Altera engineer or programmer visit PVHD to see firsthand the defective system. Altera denied this request, stating they "cannot just send an army of programmers out on site." Instead, on August 15, 2023, Altera sent Morgan Kinnett, a sales and account representative, to PVHD. After viewing the billing system and seeing firsthand the magnitude of issues with the software and the problems it had caused and continued to cause, Kinnett was visibly shocked and made the following statements to members of PVHD staff:

It "is the worst system I have ever seen at a hospital client."

"I have never seen a system so bad."

"I have never seen anything like this."

Kinnett spoke candidly and also acknowledged that millions in PVHD revenue was likely lost due to the system's failures. Kinnett then discussed Managed IT Services, stating she wanted to rescope all the hours PVHD had in the contract. It was during this meeting that Kinnett admitted that James O'Brien was a generalist and had absolutely no expertise in revenue cycle or billing despite PVHD paying approximately $30,000 per month for expert support for many years.

**Thomas McCabe and Kelly Johnson On-Site Visit to PVHD**

After Morgan Kinnett witnessed how flawed the Altera billing system at PVHD was, Thomas McCabe (Area Vice President, Managed Services) and Kelly Johnson (Managed Services Program Director) visited PVHD in person on August 24, 2023. During this visit, McCabe and Johnson viewed the system before discussing strategies with William Van Noll for bringing revenue into PVHD while simultaneously fixing billing system errors.

Kelly Johnson promised to do a thorough analysis of the billing systems and report her findings the following week. The two also discussed 6 steps to resolve the billing system's defects. Days later, however, Johnson provided PVHD with a document titled "PVH AR 'True Up' Project" (Palo Verde Healthcare Accounts Receivable True Up Project) which included only three of the six steps discussed on August 24, 2023. Given the many problems resulting from Altera's involvement with PVHD's billing platform, the document correctly indicated that years of system errors resulted in an unreportable and unworkable accounts receivable and a system that is not clean, not actionable, and not reportable. The document included statements such as:

Mr. Elliott Bryant
February 13, 2024
Page 4

"We want this to happen so that the client has a Clean Reportable AR"

"This is considered complete and in Operational Mode when this has been worked and Operational Leadership feels that the AR is now clean, actionable, and reportable."

**August 30, 2023 Meeting**

On August 30, 2023, William Van Noll met again with Thomas McCabe and Kelly Johnson to discuss the detailed analysis Kelly Johnson performed regarding the continuous problems with Altera's billing platform at PVHD. During this meeting, McCabe and Johnson explained the issues caused by Altera, admitted it was the fault of Altera, and provided a comprehensive spreadsheet evidencing those issues on a claim-by-claim basis. McCabe started the meeting by saying the following statement verbatim:

"I'll warn you, it is a little uglier than what we hoped for. . . . It is what it is, Will, 50% is our fault, 50% belongs to you guys. It's just the way Christa did business. She held some cards close to the chest. And I think now we're going to find out that Dominique and everybody else weren't that involved and now Kelly [Johnson] is going to explain where we are and how we move forward."

This meeting revealed that, for approximately 10,000 medical claims sent out by PVHD in the prior year and over 21,000 in total, after adjudication, detailed information about the claim was sent back by the payor (i.e., a remittance), like payment or denial information. However, the remittance was hidden from PVHD because Altera set up the configuration in a manner that would not electronically recognize the remittances. This was confirmed by your own employees as being caused by Altera's failure to carry over critical billing information like CARC/RARC codes from PVHD's clearinghouse SSI when remittance came back from payers.

It was also revealed in that meeting that Altera failed to correctly configure the Financial Classes which is the foundation of any billing software. An improper Financial Class setup prevents work queues from populating correctly, causes claims to go unfinished or unworked, makes it extremely difficult to know which balances needed to be sent to patients for statement, and is at the heart of why, as previously identified by Altera, PVHD's A/R was not clean, not actionable, and not reportable. Johnson said during the call that the way Altera configured the Financial Classes was improper, was not best practice, and made it extremely difficult to effectively perform proper billing functions. When PVHD staff explained they are unable to change Financial Classes for an individual bill entry through the program, Johnson responded, "Well we need to get your security updated then." Altera failed to configure the Financial Classes properly and had not been providing software updates or Managed IT services necessary for PVHD to help itself. The Financial Classes problem was never resolved by Altera.

William Van Noll also inquired during the August 30, 2023 meeting about zero balance bills, given that there were over 400 patients whose balance incorrectly went to zero balance despite no revenue being collected for the care received by those patients. For the zero balance bills dating back more than one year ago, William specifically asked McCabe and Johnson whether those zero balance bills were now "dead money," to which they responded as follows:

Kelly Johnson: "Yeah, pretty much"
Tom McCabe: "Yeah it would be a waste of time, right Kelly? That's what we're saying?"
Kelly Johnson: "Yup."

Mr. Elliott Bryant
February 13, 2024
Page 5

The August 30, 2023 meeting revealed tens of millions of dollars in lost revenue to PVHD based on Altera's own deep dive because of its defective EHR system. The software was configured in such a poor manner that PVHD was not even able to see these figures prior—it required Altera's own team to pull data from its back end systems and present in a spreadsheet the full scope, magnitude, and financial harm from Altera's defective system. Disclosing this data to PVHD for the first time in August 2023, approximately eight years after the SCM contract began, was particularly troubling because thousands of unpaid claims were now untimely, worthless, and uncollectible.

**GMS Team Inability to Address Defective System Issues**

Another critical defect in Altera's faulty billing platform involved moving claims incorrectly to Patient Responsibility, or "Self-Pay." In September 2023, PVHD discovered that billing claims to which insurance was attached were incorrectly being dropped and moved to Self-Pay (i.e., patients were incorrectly billed for claims that that should have been sent to an insurance provider). On September 26, 2023, PVHD brought this issue to Altera's attention and provided 174 examples totaling over $630,000 in charges incorrectly billed to patients rather than insurance providers.

It was not until more than six weeks later, on November 9, 2023, that Altera's GMS team member, Chhatradhari Mahto, provided an "analysis" regarding the cause. Mahto concluded the issue was caused by user error and was entirely PVHD's fault because someone inactivated insurance within the system. Mahto's assessment said nothing about the system itself nor the customary multi-day lag time practiced by Altera's clients that allows for proper insurance verification and demographic updating prior to claims being coded and then sent out. William Van Noll responded the same day explaining Mahto's assessment was completely incorrect and provided screenshots showing that insurance was indeed activated. Mr. Van Noll also then asked Thomas McCabe and Kelly Johnson for a better strategy to resolve issues because the Altera employees in India were completely unproductive and incompetent, to which McCabe stated they will regroup, but as is common for Altera, nothing meaningful to actually fix the problem was ever performed.

On other occasions, the support from the GMS Team was also completely useless. For instance, on October 6, 2023, Mr. Van Noll discovered that Observation Visits were not hitting the work queue resulting in an inability to bill. Mr. Van Noll then received a response from a support GMS Team member which was of no substance or usefulness forcing PVHD to re-attach the original email they had sent to Kelly Johnson to report the issue. These are just a few examples of the quality of support provided by Altera's GMS Team.

**Claims Incorrectly Shown as Billed Without Going Through Clearinghouse**

Also during September 2023, PVHD discovered claims were being shown as having already been billed when there was no corresponding outbound claim that went through SSI. As you know, PVHD uses SSI as their clearinghouse which is the source of record for any payer-provider exchange, meaning it is absolutely imperative that Altera's platforms and SSI are synchronized with regard to the status of medical bills sent out, payments received, remittances received, etc.

On September 26, 2023, PVHD brought this to Altera's attention and provided 41 examples totaling $140,000 in charges. PVHD explained that Medi-Cal was the intended payer for each example and suggested that Altera assess both the inbound and outbound communications between SSI and Altera for Medi-Cal claims. Given how Financial Classes were improperly

Mr. Elliott Bryant
February 13, 2024
Page 6

configured in the system, and how incompetent the support was prior to being withheld by Altera, this issue would never have been fixed as it would require Altera (which is proven to be profit-focused above all else) to fix on a plan-by-plan basis within each payer, carrying large support costs and effort, and the support team assigned to PVHD at the time couldn't even properly fix the one payer example that was actually presented.

**Altera Failed to Provide Correct Health Care Access & Information (HCAI) Reporting File**

The State of California regulatory agency HCAI requires reporting from its hospitals on a quarterly basis, both patient-level data and financial data. PVHD relies on Altera's Managed IT services team to extract the data from its EHR system to then provide to HCAI since the data cannot be extracted by PVHD users. Altera repeatedly failed to provide PVHD with a correct file that met the criteria to be accepted by HCAI.

William Van Noll was forced to continually request corrected HCAI files from Kelly Johnson who would send the file, Mr. Van Noll would submit it and the file would be rejected on every occasion, at a cost to PVHD of $100 per day, per report for delinquent reporting. Altera was made fully aware that its incompetence was resulting in penalties being assessed against PVHD by the State of California. On October 14, 2023, HCAI emailed Mr. Van Noll informing him PVHD had exceeded the 60-day delinquent window and would no longer be able to report for quarter 2 of 2023. Altera then opted to punish PVHD further by placing a support hold on it on December 4, 2023, which has blocked PVHD's ability to submit a proper HCAI file as the penalties and fines from the State of California for delinquent reporting continue to accrue to this day.

**Altera's Other Breaches, Substandard Performance, and Failures**

The additional contractual breaches, substandard performance, and failures by Altera are countless:

September 28, 2023: Kelly Johnson sent an email stating she attached an insurance mapping table to aid in fixing the defective Financial Classes and asked for feedback. However, there were no documents attached to the email. William Van Noll responded there was no attachment, but Johnson never responded with any attachments and the issue was never resolved.

October 6, 2023: PVHD informed Altera that charges for radiology imaging would not properly drop to the billing claim. Altera never fixed this problem and Kelly Johnson never added the issue to the Gantt chart later presented to PVHD on October 14, 2023, which was the first and last time PVHD was able to see a Gantt chart showing how Altera was going about tracking system fixes.

October 6, 2023: Kelly Johnson sent an email stating she had cleaned up the trial balance amounts (i.e., the numbers reflected in Allscripts in comparison to the numbers in PVHD's accounting system). William Van Noll responded asking which changes were made so that he could reconcile it against PVHD's books and ensure accuracy. Johnson never responded or provided that information.

October 9, 2023: PVHD informed Altera that patients with recurring visits were not appearing in the queue/worklist for PVHD to later bill. An Altera member from the GMS Team responded that they were working on it, but the issue remains.
October 14, 2023: Kelly Johnson provided a Gantt chart showing the fixes Altera intended to work on, but the chart lacked the most important problems with the software platform

Mr. Elliott Bryant
February 13, 2024
Page 7

such as Financial Classes and the Payer Configuration for proper posting which PVHD had been repeatedly communicating to Altera for at least the entire three months prior.

October 23, 2023: Kelly Johnson went on medical leave and her work is purportedly transitioned to the GMS Team in India. As explained above, support from Altera's GMS Team has been consistently low quality and rarely, if ever, resulted in any solutions.

November 7, 2023: PVHD informed Altera that its third-party coders discovered ICD-9 codes in the system which needed to be removed because ICD-9 codes have not been used since 2015 and that there were duplicate descriptions for multiple codes, all of which leads to incorrect coding. This error was never fixed.

**Altera Ignored Core Software Problems, Choosing Instead to Focus on Financial Gain**

On numerous occasions, Altera failed to center its focus on the main configuration issues of the software. The calls and communications occurred week after week, month after month, with no meaningful progress or improvement made to the EHR system that continued to fail as it had for a long time. Altera's failure over the past six months was in direct breach of its contractual obligations to cure all problems with its EHR system within 60 days of notice or face termination of the agreement.

Repeatedly, William Van Noll sent emails and made calls to Thomas McCabe, Kelly Johnson, Karthika Hari, members of Altera's GMS Team, and other Altera employees attempting to refocus Altera to the three biggest issues: Financial Classes, Payer Configuration, and Incomplete Queues. Altera was unresponsive to Mr. Van Noll's attempts, which was made particularly apparent when Kelly Johnson presented to PVHD in October 2023 a Gantt chart that did not include any of the major issues.

On November 7, 2023, months after Altera began its work to purportedly resolve its software issues at PVHD, Mr. Van Noll again emailed Thomas McCabe and Karthika Hari again explaining his concerns with Altera's comprehension of the actual problems PVHD was attempting to fix and the seriousness of those problems, and that he, as CFO, under Altera's software, was unable to perform even standard billing given the lack of progress in fixing the defective system. No meaningful response was provided or changes made by Altera. On November 21, 2023, Mr. Van Noll inquired about having a weekly meeting and reiterated the need to discuss the core issues with Altera's software. That same day, Altera's finance department emailed Mr. Van Noll advising him a Support Hold would be placed on PVHD's account if it did not pay $405,000 to Altera by December 4, 2023.

On November 28, 2023, Mr. Van Noll met with McCabe and Altera's GMS Team and again stressed that the team had been focusing only on little fixes, and that the three most pressing topics - Financial Classes, Payer Configuration, and Incomplete Queues - remained unaddressed. They responded to Mr. Van Noll promising to research those three topics and would report back to PVHD at the next meeting on December 5, 2023. However, then, on December 4, 2023, Thomas McCabe informed PVHD that Altera's finance department had imposed a support hold including stopping any assistance to PVHD in Managed Services Clinical and Revenue Cycle and cancelling any future meetings. McCabe apologized and stated he was "prepared to start work immediately once this issue is resolved between our financial teams."

Mr. Elliott Bryant
February 13, 2024
Page 8

On December 5, 2023, Mr. Van Noll responded to McCabe inquiring whether McCabe's email was sent in error given the extensive history of the problems with the EHR system and Altera's utter failure to cure those problems in breach of its contractual obligations causing massive financial losses with no end in sight.

Lastly, the weekend before January 15, 2024, PVHD was mysteriously locked out of its EHR system. When PVHD's IT department contacted Altera they were told they were locked out due to a "Finance Hold" by Altera. In doing this, Altera prevented patients from receiving medical and emergency medical care, with full knowledge that the next closest hospital was at least a 90-minute drive from PVHD. In other words, Altera deliberately put patient lives at risk in hopes of extracting further money from PVHD. When this was brought to the attention of Altera's leadership and legal department, we were assured that Altera had not and would not deny PVHD access to its own EHR system, only to learn later by the support person at Altera who reinstated PVHD's access, that it was deliberate done at the direction of Altera finance department and those at the "highest level" at Altera instructed that access be immediately restored for PVHD.

## August 24, 2023 Board Meeting Records

Your January 31, 2024 letter incorrectly accuses PVHD of breaching the Contract when publishing six pages of Altera Powerpoint slides on a board meeting agenda document outlining potential options for moving forward with Altera (i.e., upgrade or migration). In 2004, Proposition 59 was passed as an amendment to the California Constitution creating broad rights of access "to information concerning the conduct of the people's business, and, therefore, the meetings of public bodies and the writings of public officials and agencies shall be open to public scrutiny." (Cal. Const. art. I, § 3(b).) As such, the public has a constitutional right of access to information regarding the business of public entities such as PVHD, which carries a heavy burden to overcome. (*Michaelis, Montanari & Johnson v. Superior Court* (2006) 38 Cal.4th 1065, 1071.) In order to overcome article 1, section 3, of the California Constitution the proponent of confidentiality must show there is a "clear overbalance" on the side of confidentiality when weighing the competing interests at issue. (*City of San Jose v. Superior Court* (1999) 74 Cal.App.4th 1008, 1018.) Altera cannot demonstrate an overbalance, especially in light of its attempts to defraud PVHD. Rather, the public, especially in Blythe, has a direct interest in how PVHD plans to move forward with Altera in light of the multiple millions in losses caused by Altera which has indirectly wasted and diluted the use of public taxpayer funds of which PVHD is funded. There is no question that the interests of the public concerning medical care in a rural and underrepresented community strongly outweighs Altera's interest in keeping six generic Powerpoint slides confidential.

Furthermore, the PowerPoint slides do not contain confidential or proprietary information. The California Uniform Trade Secrets Act ("CUTSA") defines a trade secret as "a formula, pattern, compilation, program, device, method, technique, or process." (Cal. Civ. Code § 3426.1(d).) The PowerPoint slides are nothing more than a proposal by Altera providing PVHD with two options related to its utter failure to abide by its contract obligations: upgrade or migrate to another Altera system. CUTSA also contemplates the misappropriation of confidential or proprietary information causing actual losses or unjust enrichment which is also not the case here as Altera cannot and does not point to any losses and PVHD has gained nothing. (Cal. Civ. Code § 3426.1(b), 3426.3.) Altera cannot identify any damages resulting from six irrelevant PowerPoint slides, buried within a board of director's agenda packet, published on a rural healthcare district's website. (Cellular Accessories for Less, Inc. v. Trinitas LLC, No. CV 12-06736 DDP SHX, 2014 WL 4627090 (C.D. Cal., Sept. 16, 2014).) Accordingly, the PowerPoint slides by definition are not proprietary and PVHD did not breach section 9 of the Contract.

Mr. Elliott Bryant
February 13, 2024
Page 9

**Conclusion**

The foregoing makes abundantly and undeniably clear that Altera has repeatedly breached its contractual obligations and provided services to PVHD falling far below industry standards, all of which is baffling in light of the enormous payments PVHD has made to Altera for the last 8 years, month after month, and including the $1.2 million prepayment in SunComm implementation fees for a program PVHD has never been able to use. PVHD has paid far too much and yet received far too little from Altera.

Altera began breaching the Contract from the very start when it provided an incompetent technical support person to perform Managed IT services for PVHD, James O'Brien, who had remained in that position for the last 8 years and who several of your staff members openly admitted was entirely unqualified to provide support. In addition to providing no legitimate support, Altera also caused PVHD to lose millions upon millions in medical claims due to the incorrect and defective configuration of the EHR software which it never resolved despite PVHD repeatedly attempting in good faith to find solutions to the core billing functions that have been inoperable for years.

The fact that an Altera employee specifically stated that the manner in which Altera had configured the EHR system at PVHD was "the worst system" they have ever seen at a hospital is telling enough and is corroborated even further by the admissions of fault by Thomas McCabe and Kelly Johnson on August 30, 2023 and when McCabe described the software configuration as "uglier than what [he] hoped for" and directly stated that Altera was at fault. It is incomprehensible that Altera seeks nothing else but payment when on August 30, 2023 it was revealed, among other atrocities, that 21,000 remittances were not actionable by PVHD as a direct result of Altera's system deficiencies, incompetence and breaches of its contractual obligations, and most of which have now become complete and total losses to PVHD or, as Thomas McCabe described it, would be "a waste of time" to attempt recovering.

The impact and issues associated with the defective EHR system are overwhelming as PVHD has brought problem after problem to Altera's attention, all of which was the cause of tens of millions in losses and uncollectible medical visits. Not to mention, PVHD has been prevented from completing its mandatory reporting to the State of California due to Altera's incompetence and repeated failure to provide accurate and meaningful service. Since at least July of 2023, PVHD has persisted in its efforts work with Altera and find solutions, but Altera continued to avoid the main issues preventing PVHD from getting money in the door. Instead, Altera failed to cure its contractual breaches, continued to focus on nonessential problems, and continues its efforts to defraud PVHD and threaten to put thousands of innocent patients' lives at risk who seek medical and emergency care at PVHD.

If Altera prevents PVHD from accessing the EHR system there will be a devastating impact on patient care risking the lives of innocent and unsuspecting patients. Furthermore, if access is prevented, then PVHD will take immediate legal action against Altera for its bad faith conduct, breaches of contract, and continued efforts to defraud a government agency. PVHD will not only seek relief to stop and halt Altera's bad faith conduct, but it will affirmatively pursue Altera for breach of contract and any related losses, for all amounts paid to Altera to date, and for its fraud.

Mr. Elliott Bryant
February 13, 2024
Page 10

  To the extent it is indeed the intent of Altera to deny PVHD access to its own patient records (which California law requires be available to every patient as a statutory right) and the entire EHR system, then please confirm that, so our client can take the steps necessary to address Altera's past and continuing gross misconduct.

  Your immediate attention to this letter is requested.

         Very truly yours,

         GREENE & ROBERTS

         *Maria C. Roberts*

         Maria C. Roberts

Exhibit 5

| | |
|---|---|
| **From:** | Maria Roberts |
| **To:** | Pearson, Louise; Steinkamp, Kristin |
| **Cc:** | Bryant, Elliott |
| **Subject:** | RE: Palo Verde Hospital Letter |
| **Date:** | Wednesday, February 14, 2024 11:26:51 AM |
| **Attachments:** | image002.png |

Ms. Pearson:

Unfortunately, it is not my role to assuage your confusion. Perhaps you should consider reading the documents. emails. etc. exchanged between your coworkers and my client if you are interested in pursuit of the truth and what has actually occurred in the past year plus. Your response and professed confusion is simply confirmation that you have not given any meaningful consideration to the extensive information set forth in my letter. that you are not interested in the remarkable history of your company's bad faith conduct and are responding with a question and professed confusion on an issue you misapprehend.

Nonetheless, here is a short response to your confused and somewhat puzzling question:
> The SunComm migration had been delayed two or three times and was still far away from being implemented (particularly on the billing/revenue cycle side) by the time the CFO changed in July 2023.
> Then. in seeking out clarity as to where things stood, PVHD immediately engaged with Karthika Hari (Altera) and Julie Greer (Altera) to figure out how to proceed.
> It was during these conversations that your colleagues, THEMSELVES. presented PVHD with two options to consider (1) continue with the existing system SCM with Altera making all corrections necessary for it to operate properly; or. (2) migrate to SunComm, which was far from being implemented. In fact. this was presented in writing to PVHD by Altera and evidences the need for you and other decision-makers to do some homework before responding in a way that undermines your lack of information and apparent indifference to the history at play.

PVHD also never told anyone at Altera to turn off SunComm, as SunComm was never even implemented. In fact, PVHD does not have and has never had a CIO. Rather, PVHD had a fresh set of eyes evaluate the current and existing program and decided to try to correct that system before getting further entrenched with a company that had not upheld any part of its contractual obligations. That was a decision expressly supported by Altera. Altera never once raised any issue about not moving to the implementation of SunComm in order to allow PVHD time to evaluate the existing program and the promised fixes Altera was to make before deciding whether to move to an entirely new system.

Maria Roberts

**From:** Pearson, Louise <louise.pearson@alterahealth.com>
**Sent:** Tuesday, February 13, 2024 3:46 PM
**To:** Maria Roberts <mroberts@greeneroberts.com>; Steinkamp, Kristin <kristin.steinkamp@alterahealth.com>
**Cc:** Bryant, Elliott <elliott.bryant@alterahealth.com>
**Subject:** RE: Palo Verde Hospital Letter

> EXTERNAL EMAIL - This email was sent by a person from outside your organization. Exercise caution when clicking links, opening attachments or taking further action, before validating its authenticity.

Ms. Roberts:

I'm sorry but I am very confused. Your CIO requested that we not turn on the SunComm system after we fully implemented it  (this is evidenced in the minutes of the PV Board) thus, we did not turn it on. We are not refusing to provide you with your data it is accessible to you now and if the contract is terminated we will provide you with a complete copy of the data.

**From:** Maria Roberts <mroberts@greeneroberts.com>
**Sent:** Tuesday, February 13, 2024 4:09 PM
**To:** Pearson, Louise <louise.pearson@alterahealth.com>; Steinkamp, Kristin <kristin.steinkamp@alterahealth.com>
**Cc:** Bryant, Elliott <elliott.bryant@alterahealth.com>
**Subject:** RE: Palo Verde Hospital Letter

**Warning:** This email originated from outside of the corporate email system.  **External Sender Address:** mroberts@greeneroberts.com

No. I am not kidding.

I guess it is not surprising that you would take issue with PVHD being reluctant to go from the disaster PVHD was originally sold to yet another system being pushed by your company.  I encourage you to think it through, as your response is further evidence of your company's egregious conduct.

**From:** Pearson, Louise <louise.pearson@alterahealth.com>
**Sent:** Tuesday, February 13, 2024 2:01 PM
**To:** Maria Roberts <mroberts@greeneroberts.com>; Steinkamp, Kristin <kristin.steinkamp@alterahealth.com>
**Cc:** Bryant, Elliott <elliott.bryant@alterahealth.com>
**Subject:** RE: Palo Verde Hospital Letter

> EXTERNAL EMAIL - This email was sent by a person from outside your organization. Exercise caution when clicking links, opening attachments or taking further action, before validating its authenticity.

She's got to be kidding -- they told us not to turn on SunComm

**From:** Maria Roberts <mroberts@greeneroberts.com>
**Sent:** Tuesday, February 13, 2024 3:46 PM
**To:** Steinkamp, Kristin <kristin.steinkamp@alterahealth.com>
**Cc:** Bryant, Elliott <elliott.bryant@alterahealth.com>; Pearson, Louise <louise.pearson@alterahealth.com>

**Subject:** RE: Palo Verde Hospital Letter

**Warning:** This email originated from outside of the corporate email system: **External Sender Address:** mroberts@greeneroberts.com

Please see attached response to Bryant's letter of January 31, 2024.

We trust it will be given the time and attention warranted under the circumstances.

**Maria C. Roberts | Attorney**



402 West Broadway | Suite 1025
San Diego, CA 92101
P: 619.398.3400
mroberts@greeneroberts.com

**CONFIDENTIALITY NOTICE:** This email, and any attachments thereto, is intended for use only by the addressee(s) named herein and may contain confidential information, legally privileged information and attorney-client work product. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you have received this email in error, please notify the sender by email, telephone or fax, and permanently delete the original and any printout thereof. Thank you.

**From:** Steinkamp, Kristin <kristin.steinkamp@alterahealth.com>
**Sent:** Wednesday, January 31, 2024 11:01 AM
**To:** Maria Roberts <mroberts@greeneroberts.com>
**Cc:** Bryant, Elliott <elliott.bryant@alterahealth.com>; Pearson, Louise
<louise.pearson@alterahealth.com>; trina@desertairambulance.com
**Subject:** Palo Verde Hospital Letter

> EXTERNAL EMAIL - This email was sent by a person from outside your organization. Exercise caution when clicking links, opening attachments or taking further action, before validating its authenticity.

Hello Maria,

Please see attached letter sent today to Palo Verde Hospital.

Regards, Kristin

**Kristin Steinkamp (she/her)**
Corporate Counsel
kristin.steinkamp@alterahealth.com

Exhibit 6

March 5, 2024

Maria C. Roberts
Greene & Roberts LLP
402 West Broadway, Suite 1025
San Diego, CA 92101

>    ***RE:   Master Client Agreement, between Altera Digital Health Inc., as successor in
>    interest to Allscripts Healthcare LLC ("Altera") and Palo Verde Hospital ("Palo
>    Verde"), dated March 31, 2015 (the "MCA"), the Delivery Order ("Delivery Order")for
>    Sunrise Community Care Software and Services ("SunComm")dated October 22, 2021
>    (the "Delivery Order"), and all other supplemental agreements, client orders,
>    addendums and amendments thereto  (the "Agreement"); Letter from Elliott Bryant to
>    Sandra Anaya dated January 31, 2024 (the "Altera Letter"); and the Letter from Maria
>    Roberts to Elliot Bryant dated February 13, 2024 (the Palo Verde Letter")***

Dear Ms. Roberts:

This letter is in response to the Palo Verde Letter and Palo Verde's ongoing breaches of the
Agreement.   The Palo Verde Letter contains significant inaccuracies and untruths, and Altera
denies the claims being made in this letter.

After choosing to stop the implementation of SunComm, Palo Verde has continued to use an
outdated version of the Altera software. That is version 17.3 of Sunrise, which is approximately
eight years old. Version 17.3 has been in extended support for over three years. This is because
older versions of software, like this one, are very difficult to maintain, do not contain the most up
to date features and most importantly, may not have adequate current security controls or meet
all regulatory requirements. Palo Verde's refusal to upgrade its software to SunComm is the
cause of Palo Verde's issues.

Section 5 of the Product Specific Terms Exhibit to the MCA states:
:

>    *Old Releases. If Client is using any Old Release, Allscripts may, upon at least six (6)
>    months advance notice, increase on a go forward basis the then-effective, recurring
>    Support Services fees ("Current Rate") by up to fifty percent (50%) and thereafter, upon
>    at least sixty (60) days advance notice, by up to a further thirty-three percent (33%)
>    (amounting to a potential aggregate 100% increase of the Current Rate). An "Old
>    Release" means (a) any release of any Allscripts Solution other than the then-current
>    release and the immediately two (2) preceding releases, or (b) any Third Party Solution
>    release designated by the applicable third party vendor or Allscripts to be non-current.
>    Upon at least ninety (90) days advance notice, Allscripts may designate any Old Release
>    to also be a "Sunset Release" (whether or not Allscripts has previously increased the
>    associated Current Rate). At any time, upon notice, Allscripts may terminate (with or*

*without cause) Support Services for any Sunset Release (and the pro rata portion of Client's remaining Support Services fees corresponding to that Sunset Release for the then-unexpired portion of the corresponding Support Term) Client shall be obligated to pay Support Services fees for the Support Term irrespective of what Software release(s) are then-being used.*

Altera discussed all of the above concerns, throughout 2021, with Ms. Christa Rhode, Palo Verde's then CFO. Altera noted to Ms. Rhode the possible sunset of version 17.3 and the current extended support status of 17.3, which required increased fees. During that time, Altera recommended that Palo Verde upgrade to the then current version 22.1 of the Sunrise software. Ms. Rhode, however, was aware that Palo Verde was not able to manage the system and system's workflows, which is primarily the client's responsibility, given the limited directly employed staff at Palo Verde. So instead of upgrading to Sunrise version 22.1, Palo Verde made the decision to move to the SunComm solution, which included a technical uplift to 22.1 as well as associated implementation and additional support services.

The Delivery Order outlined the responsibilities of the parties and the payment obligations. Section IV of Appendix 2A to the Delivery Order outlines some of the Palo Verde responsibilities, including the following:

> ### IV.  Governance and Project Staffing
>
> *The purpose of governance is to bring stakeholders together to understand, drive and make decisions on key areas of opportunity and risk, and implement change in a controlled, efficient and effective manner.*
>
> *The Client shall provide a governance structure at the commencement of the project which supports the following requirements:*
>
> - *A Project Executive Sponsor who holds the overall project responsibility and decision-making responsibilities for the client.*
> - *An Executive Steering Committee that is the overall decision-making body, and holds scope, schedule, workflow, and budget control. The committee consists of the following members: Clinical Decision-Maker, Revenue Cycle Decision-Maker, Regulatory Decision-Maker, Education Decision-Maker, Communications Decision-Maker, Policy & Procedures Decision-Maker, and IT Decision Maker.*
> - *A Policy & Procedure Committee for reviewing the existing policies and procedures to reference, review, and modify/document to adhere to the provided standard workflows.*
> - *An Adoption Team that is responsible for adoption plans, education validation, communication plans, set vision/strategy, and organizational change management.*
> - *A Training Team responsible for participation and development in the conduction and creation of the training plans, materials, end user training course, and ongoing education plans.*

- *A Clinical Team to collect and provide accurate and up-to-date data for localized build, and to acknowledge prescriptive workflow and content in their areas of expertise.*
- *A Revenue Cycle Team to collect and provide accurate and up-to-date data for localized build, and to acknowledge prescriptive workflow content in their areas of expertise,*
- *A Technology/IT Team to establish VPN connectivity, ensure Network/Wifi requirements are met, and to procure, configure, and deploy onsite hardware and end user devices including training where required).*

*The Client will staff the project with a sufficient number of properly skilled resources to carry out the effort defined in the project plan(s). The Client shall also assign a client Project Manager.*

From the beginning of the project, Palo Verde failed to provide staffing to meet many of these requirements which are necessary for effective implementation. To date, Palo Verde continues to fail to provide that staffing.

Ms. Rhode, the CFO, acted in a project manager capacity. The project was very close to completion (approximately 90%) when Ms. Rhode decided to leave Palo Verde and the project was put on hold by Palo Verde as reflected in the Board of Director's minutes.

Mr. William Van Noll, who eventually took over for Ms. Rhode as CFO, chose not to bring the project to completion. Altera explained to Mr. Van Noll numerous times that Palo Verde was on a very old version of the Sunrise software and that there were new features and functionality available in the current Sunrise version 22.1 or in SunComm that would meet Palo Verde's needs. Notwithstanding these discussions, Palo Verde chose not to move forward with either finishing the SunComm implementation or upgrading to version 22.1. Instead, Mr. Van Noll continued to demand that Altera somehow "fix" Sunrise version 17.3 to run as if it was Sunrise 22.1. That is simply not possible.

Additionally, since a decision was made not to complete SunComm implementation, under the terms of the MCA, Palo Verde should have implemented Sunrise 22.1. Palo Verde breached Section 7.7 of the MCA by not doing the upgrade to version 22.1 within a reasonable period of time. Section 7.7 of the MCA states that "Client shall complete implementation of available… releases and enhancements provided by Altera within a reasonable period of time."

Altera has been patient with Palo Verde and provided significant services for which it has not charged Palo Verde. As noted, Altera continues to charge Palo Verde the SunComm amounts, even though SunComm is not yet live (due to Palo Verde's decision to stop the project). These fees, however, which were contractually agreed upon, include the ability to access and use Sunrise during the implementation, and are actually less than Altera has a right to charge Palo Verde for using an old version of the software. Under Section IV of Appendix 2A to the Delivery Order, Altera has the right to *increase on a go forward basis the then-effective, recurring Support Services fees ("Current Rate") by up to fifty percent (50%) and thereafter, …. up to a further thirty-three percent (33%) (amounting to a potential aggregate 100% increase of the Current Rate.*

Moreover, Palo Verde ceased to pay Altera, whether it be for SunComm or for the support and managed services fees for version 17.3, as of July of 2023. Nonetheless, Altera continued to provide services to Palo Verde through December 2023, even though Palo Verde was not paying Altera and even though Altera had to pay its third party vendors for the hosting of and content contained in the Palo Verde system. Altera suspended support in December of 2023, pursuant to Section 7.7 of the MCA, which states that "during any period of suspension for nonpayment, none of Altera's representations, warranties, or other obligations under the Agreement shall apply although fees for such Services shall continue to accrue."  Despite not paying since July and Palo Verde's continued use of the full functionality of the system while on support hold, Altera has provided support to resolve issues that could impact patient safety.

Palo Verde continues to use the Sunrise system to record patient data, to store and send patient data, to issue provider orders, to write prescriptions for its patients, to provide discharge instructions, to bill patients and payors and more without paying anything to Altera. Palo Verde's ongoing use without payment cannot continue and is the reason Palo Verde is on support hold.

To address a couple of specific issues raised in your letter -- the version of Sunrise Financial Manager ("SFM") software in use at Palo Verde is also an eight year old version. In addition, Palo Verde, primarily through Ms. Rhode, made all the decisions on how the current system should be configured and the Altera team simply followed her guidance -- the current system design and utilization has followed Palo Verde's configuration specifications.  Palo Verde did not send Altera any notices of breach nor did Ms. Rhode tell Altera that Palo Verde could not collect the monies it was owed.  As per the core Sunrise solution, current functionalities in SFM are available on the current version of SFM, which Palo Verde has chosen not to implement.

In addition, the Palo Verde letter references the Health Care Access & Information (HCAI) reporting. Altera has no responsibility for HCAI reporting under the Delivery Order or the Agreement generally. While our managed service team member assisted with extracting data from the system, that person can only extract the data that Palo Verde requests. If Palo Verde does not request the correct data, that is not Altera's fault. Moreover, Palo Verde has the ability to pull the data it needs from the Sunrise database via reports at any time. Altera does not provide regulatory, legal or IT services to Palo Verde.

Finally, per the Altera Letter, Altera has provided notice that the Agreement will terminate if Palo Verde's material breaches are not cured.  Therefore, as of April 1, 2024, the Agreement will cease, and Altera will return your data in a standard format.

Altera believes a meeting of business executives would be productive, and the agenda would include Palo Verde's commitment to upgrade the software as well as current and future ability to make payments.  I would also like to discuss this matter with you as we set up a meeting of the business teams. I will reach out with suggested times to discuss.  Altera reserves all of its rights under the Agreement and otherwise.


Sincerely,

Louise Pearson
Associate General Counsel


cc:     Elliot Bryant, Executive Vice President, Altera Digital Health Inc.
        Sandra Anaya, Chief Executive Officer, Palo Verde Hospital

# Exhibit 7



March 11, 2024

Louise Pearson,
Associate General Counsel
Altera Digital Health Inc.

     Re:    *Palo Verde Healthcare District*
              Altera Account No. 10082222

Dear Ms. Pearson:

     Thank you for your letter of March 5, 2024.  At the risk of stating the obvious, we respectfully disagree with most, if not all, of the points made in your letter.

     The primary focus of your letter appears to be your insistence that all of the problems addressed in my February 13, 2024 letter and about which PVHD has complained for many months, are the result of PVHD halting a migration to SunComm. That is simply false. Every one of the problems PVHD has encountered is the result of what your own employee described as the "worst system I have ever seen at a hospital client."

     As your own records show and all knowledgeable witnesses will attest, Altera never came close to completing a migration to SunComm and PVHD never directed anyone to halt that process. Your related assertion that PVHD refused to complete the migration and subsequently breached section 7.7 of the agreement by not upgrading within a reasonable period of time, is similarly unfounded.

     To the contrary, PVHD followed the directive given to it in writing **by Altera** in August 2023, to assess the existing EHR system, SunRise 17.3, after that system was brought into working condition by Altera, and **before** PVHD could or should evaluate whether to upgrade that system or migrate to SunComm or any other system.  PVHD's Board of Directors also did not halt a migration, but simply followed Altera's directive to allow the current malfunctioning EHR system to be fixed, before deciding how to proceed.[1]

     By instructing PVHD to evaluate its current system once Altera fixed all of the problems with that system, it was Altera that was responsible for the direction things took at that time, i.e., trying to present SunRise 17.3 in working condition, before making decisions about how to proceed in the future. I would refer you to Altera's presentation for PVHD's Board in August 2023

---

[1] William Van Noll similarly did not make any decisions regarding a potential migration to SunComm and lacked the authority to do so, as he is not a member of the PVHD Board.

**GREENE & ROBERTS LLP**           P: 619.398.3400

402 West Broadway, Suite 1025 • San Diego, CA 92101     F:619.330.4907

Louise Pearson, Associate General Counsel
March 11, 2024
Page 2

and the True Up Project Plan proposed by Kelly Johnson aimed at fixing the problems that plagued the current system and with the goal of creating a "Clean Reportable [Accounts Receivable]." It seems that you have either been misinformed by Altera's technical staff or you chose to ignore Altera's insistence that PVHD allow Altera to fix the current system, before deciding whether to change to a new system. PVHD was simply following Altera's instructions.

It also defies logic that PVHD could responsibly decide whether to choose an upgrade or a migration with Altera before it was able to evaluate how the current system was intended to function if it worked properly. Throughout its entire relationship with Altera, PVHD has never had the opportunity to observe how Altera's software was supposed to perform when functioning and operating properly.

Altera's promises to PVHD to get the current software in working condition were hollow and short-lived. Altera failed to dedicate any meaningful time or resources to resolving the software issues after it agreed to do so in August 2023. Altera's "support" was lip service and provided in the most minimal way possible. In November 2023, PVHD pointed out that Altera was not fixing the problems with the existing system and reminded Altera it was following Altera's direction by waiting for SunRise 17.3 to be presented in working condition before it could decide on a path forward. Astonishingly, Altera's response was to demand millions of dollars from PVHD and threaten to remove all support and all access to the software if payment wasn't made. It is unconscionable that Altera would bully and extort a small rural hospital like PVHD, after it has caused PVHD crippling financial losses by providing an EHR system that simply did not work as discovered by PVHD and further corroborated by Altera's own employees.

Although the agreement with Altera provides the right to charge an additional 50% in Support Service Fees if PVHD uses an Old Release, that right required **6 months prior notice from Altera**, which was never given to PVHD. To be sure, Altera was not advising PVHD that its existing system was too old to work, fix or support, but was actively representing to PVHD that it would fix the existing system, so PVHD could marvel at how that well that system could function when it was working properly.

I also note the absurdity of the assertion that the alleged migration to SunComm was 90% completed, when the PowerPoint Altera presented to PVHD admitted it was at least 3 to 4 months from completion at that time. If Altera needed 3 to 4 months to complete just 10% of a migration to SunComm for a client like PVHD, that means the entire migration would have necessarily taken 3-plus years to complete. The migration has never been anywhere near 90% complete, as evidenced by project plans created and presented by your own employees. Your claim that PVHD failed to provide the staff needed to implement the SunComm migration in accordance with the Delivery Order is unfounded and entirely incongruent with your assertion that the process was 90% complete. How could the migration be a stone's throw from completion, if PVHD allegedly failed to ever provide the staff needed to implement the migration?

While it is true that PVHD has had some basic use of its current EHR system when it is working at all, I would remind you that PVHD has paid your company more than $10 million for what your own employee truthfully described as "the worst system I have ever seen at a hospital client." For you to boast that PVHD has enjoyed any real use or benefit from that system shows either a lack of knowledge or disingenuousness.

Louise Pearson, Associate General Counsel
March 11, 2024
Page 3

In an attempt to punish PVHD for not kowtowing to Altera's demands for millions of dollars, Altera has not only cut off all support, but repeatedly denied PVHD access to the system and threatened to lock PVHD out of the system permanently. Each of these acts of retribution has compromised PVHD's ability to deliver healthcare to its patients and the safety of every patient. Nonetheless, when these events have been reported to Altera, its own employees have designated these reports as not presenting any risk to patient safety and further illustrate Altera's reckless behavior and blatant disregard for reality.

In your letter you threatened to end the contract with PVHD in less than 30 days. I am not sure exactly what you have in mind by the threat to end the contract, but if it is Altera's plan to prevent PVHD from accessing the EHR system (for which it has paid more than $10 million) on April 1, 2024, then we ask that you clarify that in writing today, as that would require immediate legal action by PVHD to prevent being locked out of the EHR system and to help mitigate the indisputable harm that will result to patients from that action.

Your letter also represented that PVHD's data will be returned to it in a "standard format," but did not explain what that means. In response, we ask that Altera immediately provide PVHD with the file specifications of the data files that will be sent to ensure the format is proper and usable. We also ask that Altera provide PVHD with all of its data in decrypted and human-readable format as soon as possible, as it will take PVHD at least 90 days of continued access to the EHR system to ensure the completeness and accuracy of the data provided by Altera, including ingesting PVHD's back-up data copy into a readable database, verifying scanned images and saved reports are properly indexed, and countless other forms of verification to protect patient safety. For that reason, we ask that Altera allow PVHD continued access to the EHR system until at least June 30, 2024.

On behalf of PVHD, we invite Altera to endeavor to resolve the financial claims and legal disputes with PVHD informally, including with the benefit of a neutral mediator in Riverside County, CA. This should be preferable to both parties as a means of avoiding what could be protracted, contentious and costly litigation.

Thank you for your time and attention to this matter.

Very truly yours,

GREENE & ROBERTS

*Maria R. Roberts*

Maria C. Roberts

Exhibit 8

| From: | Kennedy, Eric |
|---|---|
| To: | Maria Roberts |
| Subject: | Altera - Palo Verde Healthcare District |
| Date: | Wednesday, March 13, 2024 4:32:59 PM |

This is the first time you received an email from this sender (ekennedy@buchalter.com). Exercise caution when clicking links, opening attachments or taking further action, before validating its authenticity.

This message was sent securely using Zix®

Hi Maria,

As we keep missing each other's phone calls, I thought an email might be a good next step.

At the end of your March 11 letter, you recommended that the parties try and resolve the issues informally. A good suggestion. But, before we discuss the possibility of mediating, we would like to get the respective management teams together, if possible. More specifically, our Sunrise Business Leader, Elliott Bryant, would be happy to meet with your CFO and CEO to discuss PVHD's concerns. If your side is amenable, please propose some times that work this week and next. Because time is of the essence, it would be very helpful to hear back from you, either way, as soon as possible.

Meanwhile, after reading all of the back and forth between the parties, I found myself wondering, "ok, so what does PVHD want?" If we are able to get the management teams together, I am hopeful we can get a list or summary of PVHD's concerns in advance so that Altera can be prepared to discuss.

Thanks so much.

Buchalter

**Eric Kennedy**
Shareholder
**T** (949) 224-6450
**C** (310) 905-4500
ekennedy@buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, please see http://www.buchalter.com/about/firm-policies/.

Exhibit 9

| | |
|---|---|
| **From:** | Maria Roberts |
| **To:** | Kennedy, Eric |
| **Subject:** | Re: Altera - Palo Verde Healthcare District |
| **Date:** | Friday, March 15, 2024 9:59:59 AM |

Eric – let's set a time to speak early next week.

I really appreciate your involvement and your overture.  But, as set forth in painful detail in repeated communications from our side to yours, Altera knows the issues and concerns and, in response has given PVHD no basis to see a path forward with it.  There can be no quarrel that Altera has contractual obligations, made many promises and given many assurances, but failed to keep its commitments or respond in a meaningful way to the concerns raised by PVHD and/or by me, despite being paid $10 million. It has cut off support and intermittently cut off EHR access and, in the latest letter, appears to be threatening permanent removal of all access by April 1.  Altera has been given every opportunity and its response is simply nothing and it's just getting worse.

We also need to hear back from Altera on the requests made in my March 11, 2024 letter.  That is of utmost importance, and we need to hear back from Altera on those points as soon as possible.

In the end, we believe having a third party help us resolve the pending issues without further harm to PVHD is best.  The only other option, as indicated in my last letter, is immediate and protracted litigation (good for lawyers, bad for clients) and further harm to PVHD and the community it serves.  That should be avoided, in my opinion, if at all possible.

Thanks again for your time.

Maria

Sent from my iPhone

On Mar 13, 2024, at 4:32 PM, Kennedy, Eric <ekennedy@buchalter.com> wrote:

This is the first time you received an email from this sender (ekennedy@buchalter.com). Exercise caution when clicking links, opening attachments or taking further action, before validating its authenticity.

This message was sent securely using Zix®

Hi Maria,

As we keep missing each other's phone calls, I thought an email might be a good next step.

At the end of your March 11 letter, you recommended that the parties try and resolve the issues informally. A good suggestion. But, before we discuss the possibility of mediating, we would like to get the respective management teams together, if possible. More specifically, our Sunrise Business Leader, Elliott Bryant, would be happy to meet with your CFO and CEO to discuss PVHD's concerns. If your side is amenable, please propose some times that work this week and next. Because time is of the essence, it would be very helpful to hear back from you, either way, as soon as possible.

Meanwhile, after reading all of the back and forth between the parties, I found myself wondering, "ok, so what does PVHD want?" If we are able to get the management teams together, I am hopeful we can get a list or summary of PVHD's concerns in advance so that Altera can be prepared to discuss.

Thanks so much.

## Buchalter

**Eric Kennedy**
**Shareholder**
**T** (949) 224-6450
**C** (310) 905-4500
ekennedy@buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, please see http://www.buchalter.com/about/firm-policies/.

This message was secured by Zix®.

Exhibit 10

| From: | Maria Roberts |
|---|---|
| To: | Kennedy, Eric |
| Subject: | Re: Altera - Palo Verde Healthcare District |
| Date: | Thursday, March 21, 2024 12:44:33 PM |

I was wondering why I had not heard from you. However, time is of the essence and we really
need to hear today on the main points I raised in my last letter to Altera. Thanks Eric.
Sent from my iPhone

On Mar 21, 2024, at 9:28 AM, Kennedy, Eric <ekennedy@buchalter.com> wrote:

EXTERNAL EMAIL - This email was sent by a person from outside your organization.
Exercise caution when clicking links, opening attachments or taking further action, before
validating its authenticity.

This message was sent securely using Zix®

Your emails all go to spam. Not sure why. I am just seeing this one now. I will get back
to you before the end of the day.

Buchalter

**Eric Kennedy**
Shareholder
**T** (949) 224-6450
**C** (310) 905-4500
ekennedy@buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio

**From:** Maria Roberts <mroberts@greeneroberts.com>
**Sent:** Wednesday, March 20, 2024 2:49 PM
**To:** Kennedy, Eric <ekennedy@buchalter.com>
**Subject:** Re: Altera - Palo Verde Healthcare District

This message has originated from an **External Email**. Maria Roberts
<mroberts@greeneroberts.com>:

This message was sent securely using ZixCorp.

Eric, I have not received a response from you to my email below and this is concerning to me. If Altera does not intend on extending the time within which my client has access to its electronic health record system, I need to know that immediately. If they are going to refuse to provide all of the data in the format requested And give us adequate time to confirm we have all of the data in the system, I need confirmation of that as well. It looks like we're gonna be forced to go the litigation route, which is unfortunate for all concerned.
Sent from my iPhone

> On Mar 15, 2024, at 9:59 AM, Maria Roberts <mroberts@greeneroberts.com> wrote:

>> Eric – let's set a time to speak early next week.

>> I really appreciate your involvement and your overture.  But, as set forth in painful detail in repeated communications from our side to yours, Altera knows the issues and concerns and, in response has given PVHD no basis to see a path forward with it.  There can be no quarrel that Altera has contractual obligations, made many promises and given many assurances, but failed to keep its commitments or respond in a meaningful way to the concerns raised by PVHD and/or by me, despite being paid $10 million. It has cut off support and intermittently cut off EHR access and, in the latest letter, appears to be threatening permanent removal of all access by April 1.  Altera has been given every opportunity and its response is simply nothing and it's just getting worse.

>> We also need to hear back from Altera on the requests made in my March 11, 2024 letter.  That is of utmost importance, and we need to hear back from Altera on those points as soon as possible.

>> In the end, we believe having a third party help us resolve the pending issues without further harm to PVHD is best. The only other option, as indicated in my last letter, is immediate and protracted litigation (good for lawyers, bad for clients) and further harm to PVHD and the community it serves.  That should be avoided, in my opinion, if at all

possible.

Thanks again for your time.

Maria

Sent from my iPhone

On Mar 13, 2024, at 4:32 PM, Kennedy, Eric <ekennedy@buchalter.com> wrote:

> This is the first time you received an email from this sender (ekennedy@buchalter.com). Exercise caution when clicking links, opening attachments or taking further action, before validating its authenticity.

This message was sent securely using Zix®

Hi Maria,

As we keep missing each other's phone calls, I thought an email might be a good next step.

At the end of your March 11 letter, you recommended that the parties try and resolve the issues informally. A good suggestion. But, before we discuss the possibility of mediating, we would like to get the respective management teams together, if possible. More specifically, our Sunrise Business Leader, Elliott Bryant, would be happy to meet with your CFO and CEO to discuss PVHD's concerns. If your side is amenable, please propose some times that work this week and next. Because time is of the essence, it would be very helpful to hear back from you, either way, as soon as possible.

Meanwhile, after reading all of the back and forth between the parties, I found myself wondering, "ok, so what does PVHD want?" If we are able to get the management teams together, I am hopeful we can get a list or summary of PVHD's concerns in advance so that Altera can be prepared to discuss.

Thanks so much.

## Buchalter

---

**Eric Kennedy**
Shareholder
T (949) 224-6450
C (310) 905-4500
ekennedy@buchalter.com

---

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio

**Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, please see http://www.buchalter.com/about/firm-policies/.**

This message was secured by Zix®.

This message was secured by Zix®.
**Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, please see http://www.buchalter.com/about/firm-policies/.**

This message was secured by Zix®.

Exhibit 11

| | |
|---|---|
| **From:** | Maria Roberts |
| **To:** | Kennedy, Eric |
| **Cc:** | Nicolas Echevestre; Noel Meza; Dominick Sawaya |
| **Subject:** | Re: Altera - Palo Verde Healthcare District |
| **Date:** | Friday, March 22, 2024 12:05:00 PM |

Eric, I did not hear from you late yesterday and have not heard from you today. What is your client's position? Again, time is of the essence.

Thanks.

Maria
Sent from my iPhone

> On Mar 21, 2024, at 12:44 PM, Maria Roberts <mroberts@greeneroberts.com> wrote:
>
> I was wondering why I had not heard from you. However, time is of the essence and we really need to hear today on the main points I raised in my last letter to Altera. Thanks Eric.
> Sent from my iPhone
>
>> On Mar 21, 2024, at 9:28 AM, Kennedy, Eric <ekennedy@buchalter.com> wrote:
>>
>> EXTERNAL EMAIL - This email was sent by a person from outside your organization. Exercise caution when clicking links, opening attachments or taking further action, before validating its authenticity.
>>
>> This message was sent securely using Zix®
>>
>> Your emails all go to spam. Not sure why. I am just seeing this one now. I will get back to you before the end of the day.
>>
>> Buchalter
>> _____
>>
>> **Eric Kennedy**
>> Shareholder
>> T (949) 224-6450
>> C (310) 905-4500
>> ekennedy@buchalter.com
>> _____

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio

**From:** Maria Roberts <mroberts@greeneroberts.com>
**Sent:** Wednesday, March 20, 2024 2:49 PM
**To:** Kennedy, Eric <ekennedy@buchalter.com>
**Subject:** Re: Altera - Palo Verde Healthcare District

This message has originated from an **External Email**. Maria Roberts
<mroberts@greeneroberts.com>:

This message was sent securely using ZixCorp.

Eric, I have not received a response from you to my email below and this
is concerning to me. If Altera does not intend on extending the time
within which my client has access to its electronic health record system, I
need to know that immediately. If they are going to refuse to provide all
of the data in the format requested And give us adequate time to confirm
we have all of the data in the system, I need confirmation of that as well.
It looks like we're gonna be forced to go the litigation route, which is
unfortunate for all concerned.
Sent from my iPhone

> On Mar 15, 2024, at 9:59 AM, Maria Roberts
> <mroberts@greeneroberts.com> wrote:

>> Eric – let's set a time to speak early next week.

>> I really appreciate your involvement and your
>> overture. But, as set forth in painful detail in
>> repeated communications from our side to
>> yours, Altera knows the issues and concerns
>> and, in response has given PVHD no basis to
>> see a path forward with it. There can be no
>> quarrel that Altera has contractual obligations,
>> made many promises and given many
>> assurances, but failed to keep its commitments
>> or respond in a meaningful way to the concerns
>> raised by PVHD and/or by me, despite being

paid $10 million. It has cut off support and intermittently cut off EHR access and, in the latest letter, appears to be threatening permanent removal of all access by April 1. Altera has been given every opportunity and its response is simply nothing and it's just getting worse.

We also need to hear back from Altera on the requests made in my March 11, 2024 letter. That is of utmost importance, and we need to hear back from Altera on those points as soon as possible.

In the end, we believe having a third party help us resolve the pending issues without further harm to PVHD is best.  The only other option, as indicated in my last letter, is immediate and protracted litigation (good for lawyers, bad for clients) and further harm to PVHD and the community it serves.  That should be avoided, in my opinion, if at all possible.

Thanks again for your time.

Maria

Sent from my iPhone

On Mar 13, 2024, at 4:32 PM, Kennedy, Eric <ekennedy@buchalter.com> wrote:

This is the first time you received an email from this sender (ekennedy@buchalter.com). Exercise caution when clicking links, opening attachments or taking further action, before validating its authenticity.

This message was sent securely using Zix®

Hi Maria,

As we keep missing each other's phone calls, I thought an email might be a good next step.

At the end of your March 11 letter, you recommended that the parties try and resolve the issues informally. A good suggestion. But, before we discuss the possibility of mediating, we would like to get the respective management teams together, if possible. More specifically, our Sunrise Business Leader, Elliott Bryant, would be happy to meet with your CFO and CEO to discuss PVHD's concerns. If your side is amenable, please propose some times that work this week and next. Because time is of the essence, it would be very helpful to hear back from you, either way, as soon as possible.

Meanwhile, after reading all of the back and forth between the parties, I found myself wondering, "ok, so what does PVHD want?" If we are able to get the management teams together, I am hopeful we can get a list or summary of PVHD's concerns in advance so that Altera can be prepared to discuss.

Thanks so much.

## Buchalter

**Eric Kennedy**
Shareholder
T (949) 224-6450
C (310) 905-4500
ekennedy@buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine  CA 92612-0514
www.buchalter.com | Bio

**Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For**

additional policies governing this e-mail, please see
http://www.buchalter.com/about/firm-policies/.

This message was secured by Zix®.

This message was secured by Zix®.

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, please see
http://www.buchalter.com/about/firm-policies/.

This message was secured by Zix®.

# Exhibit 12

| | |
|---|---|
| **From:** | Maria Roberts |
| **To:** | Kennedy, Eric |
| **Cc:** | Nicolas Echevestre; Noel Meza; Dominick Sawaya |
| **Subject:** | RE: Altera - Palo Verde Healthcare District |
| **Date:** | Monday, March 25, 2024 10:19:35 AM |

Eric –

We still have not heard from you or Altera in response to our letters dated February 13, 2024 and March 11, 2024, despite your knowledge (and Altera's) of what is at stake and that time is of the essence.

We have been requesting responses from Altera for more than a month on crucial issues. Of particular concern, Altera's threat to potentially cut off PVHD's access to its entire electronic health record system on April 1, 2024 and its refusal to date to provide to PVHD all of the patient and other data in the electronic health record system and to do so in human, readable format.

If Altera is simply refusing to respond to our communications directly or through your office and plans to eliminate all PVHD access to the electronic health record system on April 1, 2024, can you please extend us the courtesy of confirming that today in writing? Likewise, if Altera is refusing to timely and in a proper format provide data contained in the EHR system to PVHD, we would ask that you kindly confirm that in writing today as well.

Unfortunately, because of Altera's conduct and its failure to respond to our letters, our client has no choice but to initiate legal action against Altera this week and it is imperative that we have a clear record for the Court of what was been requested of Altera and its response or failure to respond.

Thank you for your time.

Maria Roberts

**From:** Kennedy, Eric <ekennedy@buchalter.com>
**Sent:** Friday, March 22, 2024 12:12 PM
**To:** Maria Roberts <mroberts@greeneroberts.com>
**Cc:** Nicolas Echevestre <NEchevestre@greeneroberts.com>; Noel Meza <nmeza@greeneroberts.com>; Dominick Sawaya <dsawaya@greeneroberts.com>
**Subject:** RE: Altera - Palo Verde Healthcare District

EXTERNAL EMAIL - This email was sent by a person from outside your organization. Exercise caution when clicking links, opening attachments or taking further action, before validating its authenticity.

This message was sent securely using Zix®

Please see attached email from yesterday. Discussing with client and will get back to you.

# Exhibit 13

| From: | Maria Roberts |
|---|---|
| To: | ekennedy@buchalter.com |
| Subject: | RE: Altera - Palo Verde Healthcare District |
| Date: | Tuesday, March 26, 2024 10:23:23 AM |

Dear Eric:

Thank you for your response/nonresponse on behalf of Altera and for confirming its position remains the same: that it intends to fulfill its threat to lock PVHD out of its electronic health record and finance system on April 1, 2024, unless PVHD pays millions to Altera. Your email also confirms Altera's lack of concern for the grave dangers posed by its threatened action, which will cause PVHD and its patients serious and irreparable harm and which is compounded by Altera's refusal to provide PVHD with its own data, in a human readable format.

We do not understand exactly what you mean by a "discussing a resolution." The only resolution Altera has ever offered is for PVHD to continue to pay millions of dollars to it and engage in continuous fruitless "dialogue" that has to date resulted in no repairs, no solutions, nor any benefit to PVHD.

With Altera's April 1, 2024 deadline looming and every indication from you that Altera will take the threatened action, PVHD has no alternative but to seek court intervention to prevent the irreparable harm that PVHD, it patients and the Blythe community will suffer if Altera carries out its threat to cut off PVHD's access to all of its patient health and billing information, while refusing to provide that data to PVHD.

Maria Roberts

**From:** Kennedy, Eric <ekennedy@buchalter.com>
**Sent:** Tuesday, March 26, 2024 8:49 AM
**To:** Maria Roberts <mroberts@greeneroberts.com>
**Cc:** Nicolas Echevestre <NEchevestre@greeneroberts.com>; Noel Meza <nmeza@greeneroberts.com>; Dominick Sawaya <dsawaya@greeneroberts.com>
**Subject:** RE: Altera - Palo Verde Healthcare District

This message was sent securely using Zix®

Here are the attachments. I know you have them, but sorry for leaving them off.

Buchalter

**Eric Kennedy**
Shareholder
**T** (949) 224-6450
**C** (310) 905-4500
ekennedy@buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio

**From:** Kennedy, Eric <ekennedy@buchalter.com>
**Sent:** Monday, March 25, 2024 5:39 PM
**To:** Maria Roberts <mroberts@greeneroberts.com>
**Cc:** Nicolas Echevestre <NEchevestre@greeneroberts.com>; Noel Meza <nmeza@greeneroberts.com>; Dominick Sawaya <dsawaya@greeneroberts.com>
**Subject:** Re: Altera - Palo Verde Healthcare District

Maria,

Although you reference having a clear record, your email misstates the facts. I will clarify the main points:

- "We still have not heard from you...." That is not correct. You have heard from me multiple times. Those emails are attached. Among other things, I indicated that I was discussing the issues with my client. Considering, as you say "what is at stake," this is not being taken lightly and we will not be rushed into a response by your unilateral deadlines. As the communications make clear, while you and your client seem desperate to sue, we recommended (on multiple occasions) a meeting among the business folks to see if a resolution is possible. PVHD rejected that. PVHD also rejected our request for more specifics regarding the alleged issues; instead, you vaguely referred to previous "communications."

- "We still have not heard from ... Altera in response to our letters dated February 13, 2024 and March 11, 2024." That is not correct. Altera responded to your February 13 letter via multiple emails and a March 5 letter from its Associate General Counsel. Regarding your March 11 letter, as you know, I called you the next day. We exchanged numerous messages and then I emailed you and additional emails followed (attached).

- Altera has refused "to provide to PVHD all of the patient and other data in the electronic health record system." This is not correct. Your client has always had access to this information. And, that access is not impacted by the service hold Altera implemented because PVHD refuses to pay for the software and services provided. Altera firmly rejects the notion that PVHD is allowed to utilize its resources for free.

If your client is not interested in discussing a resolution, Altera will proceed pursuant to the parties' agreement.


Buchalter
————————————————

**Eric Kennedy**
Shareholder

T (949) 224-6450
C (310) 905-4500
ekennedy@buchalter.com

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
www.buchalter.com | Bio

On Mar 25, 2024, at 10:19 AM, Maria Roberts <mroberts@greeneroberts.com> wrote:

> This message has originated from an **External Email**. Maria Roberts <mroberts@greeneroberts.com>:

This message was sent securely using ZixCorp.

Eric –

We still have not heard from you or Altera in response to our letters dated February 13, 2024 and March 11, 2024, despite your knowledge (and Altera's) of what is at stake and that time is of the essence.

We have been requesting responses from Altera for more than a month on crucial issues. Of particular concern, Altera's threat to potentially cut off PVHD's access to its entire electronic health record system on April 1, 2024 and its refusal to date to provide to PVHD all of the patient and other data in the electronic health record system and to do so in human, readable format.

If Altera is simply refusing to respond to our communications directly or through your office and plans to eliminate all PVHD access to the electronic health record system on April 1, 2024, can you please extend us the courtesy of confirming that today in writing? Likewise, if Altera is refusing to timely and in a proper format provide data contained in the EHR system to PVHD, we would ask that you kindly confirm that in writing today as well.

Unfortunately, because of Altera's conduct and its failure to respond to our letters, our client has no choice but to initiate legal action against Altera this week and it is imperative that we have a clear record for the Court of what was been requested of Altera and its response or failure to respond.

Thank you for your time.

Maria Roberts

**From:** Kennedy, Eric <ekennedy@buchalter.com>
**Sent:** Friday, March 22, 2024 12:12 PM

Fee Exempt
(Gov. Code, § 6103)

1   Maria C. Roberts, SBN 137907
    mroberts@greeneroberts.com
2   Noel J. Meza, SBN 331169
    nmeza@greeneroberts.com
3   Dominick J. Sawaya, SBN 345943
    GREENE & ROBERTS
4   402 West Broadway, Suite 1025
    San Diego, CA 92101
5   Telephone:    (619) 398-3400
    Facsimile:    (619) 330-4907
6
    Attorneys for Plaintiff
7   Palo Verde Healthcare District

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

MAR 26 2024

_____ Y. Saldana _____

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                  COUNTY OF RIVERSIDE – BLYTHE DIVISION

10  PALO VERDE HEALTHCARE DISTRICT, a     Case No. CVPS 2401780
    California public entity,
11                                        Judge:       Hon. _____
                                          Department:
12          Plaintiff,

13     v.                                 MEMORANDUM OF POINTS AND
                                          AUTHORITIES IN SUPPORT OF
14  ALTERA DIGITAL HEALTH INC., a Delaware  PLAINTIFF'S *EX PARTE* APPLICATION
    corporation; and DOES 1 through 10, inclusive,  FOR TEMPORARY INJUNCTIVE RELIEF
15                                        AND ORDER TO SHOW CAUSE FOR
            Defendants.                    PRELIMINARY INJUNCTION
16
                                          SUPPORTING DOCUMENTS:
17                                        PLAINTIFF'S *EX PARTE* APPLICATION;
                                          DECLARATIONS OF WILLIAM VAN NOLL
18                                        AND MARIA C. ROBERTS; (PROPOSED)
                                          TEMPORARY RESTRAINING ORDER;
19                                        (PROPOSED) PRELIMINARY INJUNCTION

20                                        [Code Civ. Proc. §§ 525 *et seq.*; Cal. Rules of
                                          Court, rules 3.1150 and 3.1200 *et seq.*]
21
                                          Hearing Date:   March __, 2024
22                                        Time:           ____ a.m.
                                          Department:
23

24

25

26

27

28

POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION FOR TEMPORARY
INJUNCTIVE RELIEF AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION

Fee Exempt
(Gov. Code, § 6103)

1   Maria C. Roberts, SBN 137907
    mroberts@greeneroberts.com
2   Noel J. Meza, SBN 331169
    nmeza@greeneroberts.com
3   Dominick J. Sawaya, SBN 345943
    GREENE & ROBERTS
4   402 West Broadway, Suite 1025
    San Diego, CA 92101
5   Telephone:    (619) 398-3400
    Facsimile:    (619) 330-4907
6
    Attorneys for Plaintiff
7   Palo Verde Healthcare District

8                  SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                  COUNTY OF RIVERSIDE – BLYTHE DIVISION

10

11  PALO VERDE HEALTHCARE DISTRICT, a     | Case No.
    California public entity,
12                                        | Judge:        Hon. _____
            Plaintiff,                    | Department:
13
        v.                               | **MEMORANDUM OF POINTS AND
14                                        | AUTHORITIES IN SUPPORT OF
    ALTERA DIGITAL HEALTH INC., a Delaware| PLAINTIFF'S *EX PARTE* APPLICATION
    corporation; and DOES 1 through 10, inclusive,| FOR TEMPORARY INJUNCTIVE RELIEF
15                                        | AND ORDER TO SHOW CAUSE FOR
            Defendants.                   | PRELIMINARY INJUNCTION**
16
                                          | **SUPPORTING DOCUMENTS:**
17                                        | PLAINTIFF'S *EX PARTE* APPLICATION;
                                          | DECLARATIONS OF WILLIAM VAN NOLL
18                                        | AND MARIA C. ROBERTS; (PROPOSED)
                                          | TEMPORARY RESTRAINING ORDER;
19                                        | (PROPOSED) PRELIMINARY INJUNCTION
20                                        | [Code Civ. Proc. §§ 525 *et seq.*; Cal. Rules of
                                          | Court, rules 3.1150 and 3.1200 *et seq.*]
21
                                          | Hearing Date:    March __, 2024
22                                        | Time:             ____ a.m.
                                          | Department:
23

24

25

26

27

28

POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION FOR TEMPORARY
INJUNCTIVE RELIEF AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION

## I.

## __INTRODUCTION__

This case presents an unusual scenario in which the threatened conduct by a software vendor will completely block Palo Verde Hospital's access to its electronic healthcare record and financial management system ("System") and will prevent it from providing essential healthcare to the community of Blythe.  Defendant Altera Digital Health Inc. ("ALTERA"), which contracted with Palo Verde Healthcare District *dba* Palo Verde Hospital ("PVHD") to provide and support a functional and critically important electronic health record and financial management system, has repeatedly failed to deliver on those promises.  Even worse, after being paid more than $10 million (including overpayments of more than $2.2 million) for a System which it admitted was not properly built, was not operating property, and had causing PVHD many millions of dollars in losses, ALTERA demanded millions of dollars more and threatened to cut off PVHD's access to the System if it did not pay the unfair and exorbitant amounts demanded.

Cutting off PVHD's access to this System would be devastating.  This System contains all patient information, including medical and health records, patient history, pharmacy, laboratory, radiology, emergency room records, and the information required for PVHD to bill for treatment, care, and related services it provides to its entire patient population.  It also contains all the information necessary to provide medical services, make informed medical decisions, and to be able to admit and care for patients in need.  Cutting off access to this System will force patients to have to travel to the next closest hospital which is 90 minutes away to receive emergency and other medical services.  It will also make it impossible for PVHD to bill for or receive payment and reimbursement for services already provided.  Efforts to resolve this dispute informally with ALTERA and its lawyers have not been successful.

Therefore, PVHD has been forced to initiate legal action against ALTERA and to immediately seek Court intervention by this *ex parte* application to prevent the irreparable harm—to patients, the community, and to PVHD—that will result if ALTERA is not enjoined from carrying out its threat.  Accordingly, PVHD hereby applies *ex parte* for a temporary restraining order (TRO) and preliminary injunction:

- To enjoin and prohibit ALTERA—and its agents, assigns, employees, and any individual or entity acting in concert with or under the direction of ALTERA—from removing, restricting, impeding, obstructing, or hindering PVHD's access to and use of the electronic health record and financial management software System in place and in use at Palo Verde Hospital over the past 6 plus years;

- To preclude ALTERA, and its agents, assigns, employees, and any individual or entity acting in concert with or under the direction of ALTERA, from removing, restricting, impeding, obstructing, or hindering PVHD's access to and use of any software, software modules, content, and materials related to the System (collectively, "Software") identified or referenced in the written contract between PVHD and ALTERA dated March 31, 2015 ("Contract"), pending a hearing on a Preliminary Injunction; and

- Compelling ALTERA to provide in human, readable format and within 30 days all patient data collected from PVHD.

ALTERA's actions in providing a defective healthcare record and medical billing system, coupled with subsequent disruptions on PVHD's access to such system, has wreaked havoc on PVHD's operations, compromised patient care, undermined medical decision-making, and jeopardized PVHD's ability to fulfill its obligations to the community it serves.  Given these circumstances, the injunctive relief sought in this application should issue without delay to protect PVHD's ability to provide healthcare to the community of Blythe and to prevent further harm.

## II.

## STATEMENT OF FACTS

### A.    The Palo Verde Healthcare District

PVHD is a public healthcare district that operates Palo Verde Hospital, which provides critical healthcare services to those in need in the rural community of Blythe, California. To serve its patients, PVHD relies on an electronic health record and financial management system (also referred to as "System"), which is a critical tool for facilitating the seamless recording, retrieval, and coordination of medical information, managing medical billing, and, most importantly, providing and ensuring safe and precise patient care.  In particular, the System allows physicians to access vital patient information instantly, including, medical history, current and past diagnoses, allergies, current and past treatment received, medication history, laboratory and diagnostic test results, and patient demographic and related information. This quick access is especially crucial in emergency situations, where every second counts.

POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION FOR TEMPORARY INJUNCTIVE RELIEF AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION

1    In fact, studies show that hospitals without electronic health record systems have patient

2    mortality rates nearly 20% higher than those with such systems.[1]  PVHD's access to its System

3    therefore is not just a matter of convenience or administrative efficiency—it can be a matter of life

4    or death.  Without uninterrupted access to the System, PVHD's ability to deliver prompt and

5    informed treatment is seriously compromised, which can put hundreds of patients in Blythe at risk of

6    mistreatment, misdiagnoses, serious injury, and even death.  As such, the injunction sought against

7    ALTERA to protect PVHD's access to the electronic health and financial management System and

8    all software and programs related to that System is imperative for safeguarding safeguard the health

9    and well-being of the community PVHD serves.  The System is also crucial to be able to track and to

10    bill for services and treatment provided and to the financial well-being of PVHD.  (See generally

11    Anaya and Van Noll Declarations.)  In fact, as a result of the many problems with the defective way

12    that ALTERA built the System, PVHD has suffered many millions of dollars in lost revenue

13    according to ALTERA's own data and admissions.

14   **B.    Contract with ALTERA**

15    On March 31, 2015, PVHD and Defendant ALTERA[2] entered into the written contract[3] for

16    the provision of the electronic health and financial management system, including related software,

17    equipment, and Managed IT Support services. (Van Noll Decl., ¶3.)  Since that date, PVHD has paid

18    over $10,000,000 to ALTERA for the software and support services, which have been fraught with

19    problems and challenges, again causing PVHD to suffer many millions of dollars in billing and

20    financial losses. (Van Noll Decl., ¶¶4, 7.) In relevant part, the Contract terms required the following:

21   - ALTERA would provide PVHD the right and license to access and use the System and related Software.

22   - ALTERA would provide PVHD with professional, technical, and support services for the implementation and operation of the System and related Software.

23

24

25    [1] (See Trout et al., *The Impact of Electronic Health Records and Meaningful Use on Inpatient Quality* (The Journal for Healthcare Quality 2022) https://pubmed.ncbi.nlm.nih.gov/34267170.)

26    [2] The contract was actually entered into with Allscripts Healthcare LLC—an Illinois corporation.  However, on May 6, 2022, N. Harris Computer Corporation acquired Allscripts Healthcare LLC and re-branded Allscripts to operate under its subsidiary Defendant ALTERA DIGITAL HEALTH INC.  (See https://www.alterahealth.com/newsroom/harris-completes-purchase-of-allscripts-hospitals-and-large-physician-practices-business-segment.)

27

28    [3] The Contract is not attached to this application, as ALTERA insists it is confidential and may not be disclosed.  PVHD disagrees, but because this dispute is unresolved, it does not attach the Contact to this application. (Roberts Decl., ¶18.)

POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION FOR TEMPORARY INJUNCTIVE RELIEF AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION

- This included ALTERA providing consulting and training services to PVHD relating to the System and Software.

- As consideration, PVHD would pay ALTERA for the System and Software.

- PVHD had the right to withhold payment to ALTERA if there was a good faith dispute as to any payment until the dispute was resolved. (Van Noll Decl., ¶8.)

**C.**   **Material Breaches by ALTERA**

In **July 2023**, PVHD's new Chief Financial Officer, William Van Noll, began to have concerns about potential problems with the financial management side of the system.  PVHD was in dire financial straits and Mr. Van Noll suspected this may be caused by problems with the System.  Mr. Van Noll then began to ask questions of and demand answers from ALTERA.  (Van Noll Decl., ¶¶ 5–7.) As this investigation unfolded, it revealed serious problems, errors and irregularities in the way the system was built by ALTERA.  (Van Noll Decl., ¶3.) An ALTERA employee traveled to PVHD, analyzed the System and its functionality and described the system as one of the "worst" she had ever seen at any hospital. (*Id.* at ¶6.) ALTERA employees conceded there were many errors in the way the system was built and that the primary problems with the billing side of the System were actually hidden and could not have been discovered by PVHD.  (*Id.* at ¶¶6, 7, 10, 11.) They also admitted that the problems with the System and the manner in which it had been built caused PVHD to suffer enormous economic losses in the hundreds of millions of dollars. (*Id.* at ¶14.)

In **August 2023**, ALTERA directed PVHD to allow it to **fix** the many problems with the existing System so it could see how the System should be functioning and before PVHD made any decisions regarding whether it would upgrade to another system or how best to proceed with its electronic health record and financial management software needs. (Van Noll Decl., ¶8, fn 2.) On **August 29, 2023** ALTERA presented to PVHD a memo of steps ALTERA planned to take to rectify some of the billing issues caused by its Electronic Health Record system, in an effort to help PVHD "get cash in the door." (*Id.*, at ¶10.) ALTERA agreed to fix other problems with the way the System was built.  It also told PVHD that it would assign an entirely different employee to provide "Managed IT Services" to PVHD as required by the Contract because, as it explained, the ALTERA employee who had been assigned to PVHD (Mr. James O'Brien) lacked the knowledge and expertise to support the needs of PVHD.  (*Id.*, at ¶¶9-12.) ALTERA employee, Kelly Johnson, was assigned to take over O'Brien's role.

4

POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION FOR TEMPORARY INJUNCTIVE RELIEF AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION

At this same time, in **August 2023**, as it became clear that ALTERA had breached its contractual obligations to PVHD and cost PVHD many millions of dollars in losses, PVHD made the decision to stop making the $180,000/month payments being charged by ALTERA, until such time as the problems with the System were rectified, the System was functioning as ALTERA represented it should function and PVHD was able to bill properly for services provided. (Van Noll Decl., ¶8.) The Contract with ALTERA actually contains a fee dispute provision that allows payment to be suspended if there is a good faith dispute and until such time as the dispute is resolved. (*Id.*)

In the following months, **September, October and November 2023**, PVHD met/spoke with various members of a team of ALTERA employees who had been assigned to address and rectify the problems with the System. (Van Noll Decl., ¶¶9-18.) These calls/meetings took place on a weekly basis. Then, in **early October 2023**, Kelly Johnson, who had taken over the role of providing Managed It Services to PVHD, was pulled off the team and her role transitioned to a team in India. (*Id.* at ¶9.) And, despite repeated assurance and promises by ALTERA, no meaningful progress was made by ALTERA on any of the promised fixes to the System. As the months passed, PVHD continued to experience the same problems with the System that it had addressed with ALTERA in July and August 2023 and ALTERA became less and less responsive to PVHD. (*Id.* at ¶13-24.) Moreover, the longer the ALTERA system failed to properly function, the greater the economic losses were that PVHD suffered. (*Id.*)

Then, on **November 21, 2023**, against the backdrop of ALTERA's total continued failure to fix the system as required by the Contract, ALTERA wrote to PVHD and demanded a payment of more than $400,000 from PVHD. The ALTERA letter threatened that, if payment was not forthcoming, all support services to PVHD would be cut off. (Van Noll Decl., ¶25.) In other words, as ALTERA continued to cause PVHD to be crushed financially as a result of its disastrous System and failed to do its part to fix the system, it simultaneously demanded a huge payment from PVHD that it knew PVHD could not pay and that it was contractually excused from paying. (*Id.*) When the hundreds of thousands of dollars demanded was not paid by PVHD, ALTERA cut off all support services to it on December 4, 2023. (*Id.* at ¶26.)

POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION FOR TEMPORARY INJUNCTIVE RELIEF AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION

On **January 14, 2024**, ALTERA locked PVHD out from the System altogether.  (Van Noll Decl., ¶28.) This resulted in PVHD not having access to critical patient information, to add patient information to the system or to track services provided for billing purposes.  Because of the seriousness of this situation, PVHD involved its outside counsel, who engaged in multiple communications with ALTERA's in-house lawyers and who took steps to restore PVHD's access after more than 24 hours. (*Id.* at ¶¶28-29; Roberts Decl., ¶¶4-7; Exh. 1-2.) This occurred again on a few additional occasions, leaving PVHD without any access to the System for hours at a time, compromising patient care and putting PVHD and its providers to grave risk. (*Id.*)  Even worse, on **January 31, 2024**, after ALTERA failed to make the promised fixes to the System and after cutting off all support services to PVHD, ALTERA wrote to PVHD demanding payment of more than $1.3 million and threatening that if that payment was not received in 60 days, ALTERA would terminate the contract with PVHD and cut off all access to the System. (Van Noll Decl., ¶29; Roberts Decl., ¶7; Exh. 3.)

**D.    Efforts by PVHD to Resolve the Dispute**

On **February 13, 2024**, counsel for PVHD responded to the ALTERA letter with a 10-page response that addressed the many falsehoods in ALTERA's letter and described point-by-point ALTERA's many contractual breaches and misrepresentations made. (Roberts Decl., ¶¶8; Exh. 4.) Communications between PVHD's counsel and ALTERA have continued since then, including most recently with ALTERA's outside lawyer, but ALTERA has refused to withdraw its threat to end all services to PVHD effective April 1, 2024 absent a $1.3 million payment to it by PVHD.  (Roberts Decl., ¶¶8-17; Exhs. 5-13.)

PVHD has pleaded with ALTERA not to cut off its access to the System until after June 30, 2024; asked ALTERA to provide to it all data in the EHR system in human readable format; and, invited ALTERA to participate in mediation in Riverside County.  (Roberts Decl., ¶¶8, 11, 13, 16; Exhs. 4, 7, 9, 12.) PVHD has also advised ALTERA that if these issues are not resolved, it would be forced to initiate legal action against ALTERA and to seek all relief available to it. (*Id.*)

/ / /

/ / /

1    As of the date this case was initiated and this *ex parte* application was filed, ALTERA has

2  neither withdrawn its threat to terminate all services to PVHD effective April 1, 2024, has not

3  responded to PVHD's request for its data from the EHR system and not responded to the invitation

4  to mediate. (Roberts Decl., ¶18.)

5    Therefore, this *ex parte* application is being filed out of necessity, in good faith, and for good

6  cause, to enjoin ALTERA from denying PVHD access to the System and requiring it to provide all

7  data in the System to PVHD in human readable format as soon as reasonably possible.  If ALTERA

8  is not enjoined and PVHD is denied access to the entire System that houses every pertinent piece of

9  information about its patients and other highly important data, and billing information, PVHD will

10  suffer immediate and irreparable harm injury to PVHD in that its operations will be paralyzed and

11  likely suspended, its patients will be deprived from receiving necessary care and it is questionable

12  whether its operations can continue.  (Anaya Decl., ¶¶ 13, *see also id.*, ¶¶ 4–12; Van Noll Decl.,

13  ¶32.) (*See*, Code Civ. Proc. §526(a).)

14    Pursuant to California Rule of Court 3.1150, PVHD also requests the Court to issue an Order

15  to Show Cause why a Preliminary Injunction should not issue to order ALTERA on the same issues

16  in the same manner set forth above.

17  **III.**

18  **LEGAL STANDARD**

19  **A.**    ***Ex Parte* Applications**

20    Courts have the power to hear and grant orders on ex parte applications.  (See Code Civ.

21  Proc., § 166.)  Upon making an *ex parte* application, California law permits the Court to issue an

22  order granting the requested relief upon an affirmative showing of good cause and irreparable harm

23  in the absence of the relief requested.  (Cal. Rules of Court, rule 3.1202(c).)

24  **B.**    **Temporary Restraining Orders**

25    The court may issue a temporary restraining order (TRO) to prohibit certain acts and to

26  preserve the *status quo* pending a hearing on whether the moving party is entitled to a preliminary

27  injunction.  (See *People v. Uber Techs., Inc.* (2020) 56 Cal.App.5th 266, 283.)  A TRO may be

28  issued *ex parte* with little notice and does not require a full evidentiary hearing giving each party the

7

opportunity to present arguments and evidence. (See *Bustos v Wells Fargo Bank, N.A.* (2019) 39 Cal.App.5th 369, 382.) "The decision to grant [a TRO] rests in the sound discretion of the trial court." (*IT Corp. v. County of Imperial* (1983) 35 Cal.3d 63, 69.) "[T]rial courts should evaluate two interrelated factors when deciding whether or not to issue [a TRO]. The first is the likelihood that the plaintiff will prevail on the merits at trial. The second is the interim harm that the plaintiff is likely to sustain if the [TRO] were denied as compared to the harm that the defendant is likely to suffer if the [TRO] were issued." (*Church of Christ in Hollywood v. Superior Court* (2002) 99 Cal.App.4th 1244, 1251, quoting *IT Corp*.) A TRO remains in effect only until the judge issues or denies a preliminary injunction. (See *Landmark Holding Group, Inc. v Superior Court* (1987) 193 Cal.App.3d 525, 529.)

**C.**    **Preliminary Injunctions**

Under California law, a preliminary injunction may be granted in the following cases:

- "When it appears by the complaint or affidavits that the commission or continuance of some act during the litigation would produce waste, or great or irreparable injury, to a party to the action" (CCP § 526(a)(2).)
- "When it appears, during the litigation, that a party to the action is doing, or threatens, or is about to do, or is procuring or suffering to be done, some act in violation of the rights of another party to the action respecting the subject of the action." (CCP § 526(a)(3).)
- "When pecuniary compensation would not afford adequate relief." (CCP § 526(a)(4).)
- Where it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief. (CCP § 526(a)(5).)

A preliminary injunction may also be granted in Unfair Competition Law ("UCL") cases. (Bus. & Prof. Code, § 17203.) Importantly, a court's discretion to issue a preliminary injunction in an UCL case is "extraordinarily broad." (*People v. JTH Tax, Inc.* (2013) 212 Cal.App.4th 1219, 1257–1261 ["because ... unfair business practices can take many forms, the Legislature has given the courts the power to fashion remedies to prevent their 'use or employment' in whatever context they may occur"]; *Zhang v. Superior Court* (2013) 57 Cal.4th 364, 371; *Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 180.)

In deciding whether to grant a preliminary injunction, the court evaluates the following two "interrelated" factors: (1) who will suffer greater injury: are plaintiffs likely to suffer greater from denial of the injunction than defendants are likely to suffer if it is granted, and the probable outcome

1   at trial: is there a reasonable probability that plaintiffs will prevail on the merits of at least one of

2   their claims. (*Butt v. State of California* (1992) 4 Cal.4th 668, 677–678; *Robbins v. Sup. Ct.* (1985)

3   38 Cal.3d 199, 206; *Shoemaker v. County of Los Angeles* (1995) 37 Cal.App.4th 618, 633.) "The

4   trial court's determination must be guided by a 'mix' of the potential-merit and interim-harm factors;

5   the greater the Plaintiff's showing on one, the less must be shown on the other to support an

6   injunction." (*Butt, supra*, 4 Cal.4th at p. 678.) "If the denial of an injunction would result in great

7   harm to the plaintiff, and the defendants would suffer little harm if it were granted, **then it is an**

8   **abuse of discretion to fail to grant the preliminary injunction**." (*Robbins*, 38 Cal.3d at p. 205.) In

9   addition, a preliminary injunction <u>**should**</u> be granted if it preserves the *status quo* until a final

10  decision on the merits of the case. (See, *Continental Baking Co. v. Katz* (1968) 68 Cal.2d 512, 528.)

11                                    **IV.**

12                           <u>**LEGAL ARGUMENT**</u>

13  A.      <u>**PVHD Requires Immediate, Emergency Injunctive Relief to Avoid Irreparable Harm**</u>

14          1.      **PVHD Will Suffer Irreparable Harm Absent Injunctive Relief**

15          Under California law, irreparable harm is defined as harm that cannot be adequately

16  compensated by monetary damages or remedied through remedies at law.  (See CCP § 526(a).)  The

17  irreparable harm standard is met when there is a substantial likelihood that the plaintiff will suffer

18  harm that cannot be quantified or remedied through monetary compensation alone. (*Id*.)  Plaintiffs

19  need not wait until they have suffered actual harm before applying for an injunction; they may seek

20  injunctive relief against threatened infringement of their rights. (*Maria P. v. Riles* (1987) 43 Cal.3d

21  1281, 1292.)  "A court also has the power to issue a preliminary injunction that mandates an

22  affirmative act that changes the *status quo*" in "extreme cases where the right thereto is clearly

23  established" by irreparable harm. (*See, Integrated Dynamic Sols., Inc. v. Vita Vet Labs, Inc.* (2016) 6

24  Cal.App.5th 1178, 1184.)

25          In *Integrated*, a company hired a computer software consultant to create custom-built

26  software.  The consultant failed to complete and deliver the software to the company.  The court

27  properly issued preliminary injunction, ordering the consultant to deliver to the company data,

28  source code, and technical specifications, "[b]ecause this is one of those 'extreme cases'" warranting

issuance of mandatory injunction that alters *status quo*, and plaintiff clearly established that plaintiff was likely to prevail on merits of plaintiff's claim). The court reasoned that holding important data "hostage" in order to force the company to comply with their contract was an "extreme case" that "mandates an affirmative act that changes the *status quo*." (*Id.* at p. 1184.) The court also found that company was likely to prevail on its breach of contract claim and the loss of access to the data was harming and preventing its operations. (See *id.* at pp. 1184–1185.) Without the injunction the complaining party would be left "unable to make sure of the software" that it has paid for, causing significant harm to its operations while the consultant would suffer no harm. (*Id.* at p. 1185; *see also Pillsbury Madison & Sutro v. Schectman* (1997) 55 Cal.App.4th 1279, 1283 [affirming trial court's issuance of mandatory injunction requiring defendant to return documents to plaintiff].)

As set forth above, ALTERA's actions pose an immediate threat to PVHD's ability to provide essential healthcare services due to interference with access to vital electronic health records and related patient data. The removal, restriction, or hindrance of PVHD's access to the System and related software, as detailed in the Contract, would result in irreparable harm. PVHD's ability to provide care for patients in need, to make informed medical decisions and its entire business operations rely on this System, which contains all of the information necessary for timely and accurate healthcare delivery and related billing. Any disruption to access compromises patient care, undermines medical decision-making, and jeopardizes PVHD's ability to fulfill its obligations to the community it serves. (Anaya Decl., ¶¶ 4–13; Van Noll Decl., ¶ 32-33.)

**2.      There is No Adequate Remedy at Law for the Harm That Has Resulted and Will Result from ALTERA's Conduct**

"[A]n injunction is properly granted where it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief." (*Anderson v. Souza* (1952) 38 Cal.2d 825, 834.) Here, monetary damages cannot adequately compensate for the disruption of essential healthcare services to innocent and unsuspecting patients in need of critical and necessary medical care and loss of access to vital patient data. The intangible nature of the harm inflicted, coupled with the inability to quantify the true value of timely and effective care, renders legal remedies at law insufficient. Once the damage is done and a patient is injured, this cannot be remedied solely by the

10

POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION FOR TEMPORARY INJUNCTIVE RELIEF AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION

1  payment of money. (Anaya Decl., ¶ 13; Van Noll Decl., ¶ 32-33.) The absence of an adequate
2  remedy at law compels injunctive relief.

3        **3.      No Prejudice Will Result to ALTERA if this Application is Granted**

4        Here, PVHD is simply asking the Court to maintain the status quo and preclude ALTERA
5  from locking PVHD out of the System. ALTERA stopped providing any Managed IT Services to
6  PVHD months ago and stopped even the pretense of trying to remedy the innumerable and grave
7  problems with its System. (Van Noll Decl., ¶13-24.) PVHD is not seeking an order requiring
8  ALTERA to resume those services, which were futile in any event. Rather, what PVHD seeks is to
9  enjoin ALTERA from locking it out of the System, which should cost nothing and require little of
10 ALTERA. PVHD also asks ALTERA to return to it all of its electronically stored data, which also
11 should cost and require little of ALTERA. According to public sources, ALTERA has annual
12 revenue of about $684.9 million and employs thousands of employees throughout the world.[4] Thus,
13 it has extraordinary financial and other resources available to it, in the event some nominal cost or
14 resource is needed to comply with the relief sought by this application.

15 **B.    PVHD is Likely to Prevail on the Merits of its Claims**

16       With regard to the two factors for a preliminary injunction to issue, the California Supreme
17 Court has repeatedly held that "the greater the Plaintiff's showing on one, the less must be shown on
18 the other to support an injunction." (*Butt v. State of California*, *supra*, 4 Cal.4th at pp. 678.) Thus,
19 "the more likely it is that plaintiffs will ultimately prevail, the less severe must be the harm that they
20 allege will occur if the injunction does not issue." (*King v. Meese* (1987) 43 Cal.3d 1217, 1227.)
21 Under these well-established Supreme Court authorities, PVHD need not make a "great" showing
22 that it would prevail on the merits because the irreparable and significant harm to PVHD alone is
23 enough to compel injunctive relief. But even if it wasn't, as explained below, PVHD is likely to
24 prevail on the merits of its claims.

25

26

27

28
---
[4] (See https://www.zoominfo.com/c/altera-digital-health-inc/16156654; https://www.apollo.io/companies/Altera-Digital-Health/627535eb6db4520113174691.)

POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION FOR TEMPORARY INJUNCTIVE RELIEF AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION

### 1.   PVHD is Likely to Prevail on its Breach of Contract Claim

To establish a breach of contract claim, the plaintiff must establish: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." (*Coles v. Glaser* (2016) 2 Cal.App.5th 384, 391; CACI No 303.)  Here, PVHD satisfies all these elements.

As to the *first* element, there is no dispute that the Contract is valid, enforceable, and binding. It was signed by both parties in March 2015. (Van Noll Decl., ¶ 3.)  It was later amended in November 2021, when ALTERA persuaded PVHD to move to an upgraded system for which PVHD paid more than $2.2 million and for which it never had use.  (*Id.* at ¶ 8, fn. 2.) By its terms, the Contract required ALTERA to provide PVHD with access and use of the Software and professional, technical support. (*Id.* at ¶ 3, Exhs. _.)

As to the *third* element, ALTERA breached the Contract by repeatedly failing and refusing to deliver and provide the Software and technical support beginning in at least July 2023 and continuing until the present.  (Van Noll Decl., ¶¶ 13-24.) PVHD repeatedly requested ALTERA comply with its contractual obligations and fix the many problems with the system. (*Id.*)  ALTERA refused. (*Id.*) This refusal is a clear violation of ALTERA's obligations under its Contract is causing ongoing damage to PVHD, as explained below.  And most recently, ALTERA repudiated the Contract by expressly indicating that it would terminate all access and use of its software effective April 1, 2024. Thus, the first and third elements are met.

As to the *second* element, PVHD always complied fully with its contractual obligations under the Contract, including timely paying ALTERA all amounts owed.  In fact, PVHD paid over $10,000,000 since the Contract was executed.  (Van Noll Decl., ¶4.) It was not until July and August 2023, when PVHD discovered that ALTERA had repeatedly failed to provide PVHD with the EHR system and ALTERA refused and failed to cure such breaches despite PVHD's repeated requests— that PVHD justifiably stopped paying ALTERA. (*Id.* at ¶8.)

The Contract itself has a fee dispute provision that allowed PVHD to withhold payment if a good faith dispute existed and until it was resolved, which is exactly what PVHD has done while this dispute has existed and not been resolved.  (Van Noll Decl., ¶8.)

Further, under California law, PVHD had no obligation and was "excused" from having to pay ALTERA because ALTERA repeatedly and materially breached the terms of the Contract.

> When a party's failure to perform a contractual obligation constitutes a material breach of the contract, the other party may be discharged from its duty to perform under the contract. … Whether a partial breach of a contract is material depends on "the importance or seriousness thereof and the probability of the injured party getting substantial performance." "A material breach of one aspect of a contract generally constitutes a material breach of the whole contract."

(*Brown v. Grimes* (2011) 192 Cal.App.4th 265, 277–278.)  Because the Contract is a bilateral contract that requires both parties to provide consideration, the promises of each party are "mutually dependent and concurrent." (*Rubin v. Fuchs* (1969) 1 Cal.3d 50, 53; *Katemis v. Westerlind* (1953) 120 Cal.App.2d 537, 546 ["courts will construe promises as dependent unless a contrary intention clearly appears. All promises in a bilateral contract will be regarded as mutually dependent whenever it is possible so to interpret them"]; see also Civ. Code, §1437; Restatement (Second) of Contracts §267 (2023).)  Where obligations are concurrently conditional and mutually dependent, as here, PVHD "is excused from its obligation to perform" because ALTERA has materially breached the Contract. (*Colaco v. Cavotec SA* (2018) 25 Cal.App.5th 1172, 1183; *Brown v. Grimes*, *supra*, 192 Cal.App.4th 265, 279 [affirming trial court finding that parties' promises were not independent and holding that trial court did not err in finding that the breach of one party's promise excused the other party from further performance under the agreement].)

Thus, the second element of a breach of contract claim is met.

As to the final element, PVHD has been and will continue to be significantly harmed as a result of ALTERA's breaches, especially if it is not enjoined as requested herein.  (Van Voll Decl., ¶32.) This is also explained in more detail below.  As such, PVHD satisfies all the elements and is likely to prevail on this claim so as to justify the issuance of the injunctive relief sought by this application.

**2.     PVHD is Likely to Prevail on its UCL Claim**

Under the UCL, a plaintiff is expressly authorized to sue to obtain injunctive relief to restore interest in "money or property, real or personal" that was lost by the plaintiff and was acquired by means of "unlawful, unfair, or fraudulent" business act or practice by the defendant. (Bus. & Prof. Code, §§ 17200, 17203, 17535; *Zhang v. Superior Court* (2013) 57 Cal.4th 364, 371.)  Importantly,

13

1   "the plaintiff need not show that a UCL defendant intended to injure anyone through its unfair or

2   unlawful conduct.  The UCL imposes strict liability when property or monetary losses are

3   occasioned by conduct that constitutes an unfair business practice." (*Cortez v. Purolator Air*

4   *Filtration Products Co.* (2000) 23 Cal.4th 163, 181.)

5         Here, ALTERA's actions of (i) building a defective electronic healthcare record and financial

6   management system for PVHD, (ii) refusing to fix the many problems in that System, (iii) causing

7   PVHD to suffer many millions of dollars; (iv) failing to provide proper Managed IT Services, (v)

8   cutting off all support services, (vi) overcharging PVHD more than $2 million; (vii) disrupting

9   PVHD's access to the System and its essential data, (viii) demanding millions of dollars under the

10  threat of permanently locking PVHD out of the System; and (ix) refusing to provide PVHD with its

11  data that is in the System, has wreaked havoc on PVHD's operations, compromised patient care,

12  undermined medical decision-making, and jeopardized PVHD's ability to fulfill its obligations to the

13  Blythe community that it serves. (Anaya Decl., ¶¶ 4–13; Van Noll Decl.)  As a result of ALTERA's

14  misconduct, misrepresentations and material contract breaches, PVHD has suffered irreparable harm

15  and other losses that cannot be quantified or fully rectified by money damages.

16        ALTERA's egregious conduct violates the UCL, as it illegally and unfairly deprives PVHD

17  of its rightful, legal, contractual, and intellectual property rights to its patients' healthcare data, to

18  operate its hospital, to use its financial billing system, and to provide healthcare to the community in

19  Blythe.  This conduct demonstrates a blatant disregard of the UCL's requirements for fair and legal

20  business practices and consumer protection.  (See *McKell v. Washington Mutual, Inc.* (2006) 142

21  Cal.App.4th 1457, 1473 ["A business practice is unfair within the meaning of the UCL if it violates

22  established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury

23  to consumers which outweighs its benefits."].)

24        Based on ALTERA's egregious conduct, PVHD is highly likely to prevail on its UCL claim.

25  Again, ALTERA's actions constitute illegal and unfair business practices in blatant violation of the

26  UCL.  Given these circumstances, the injunctive relief sought in this application should issue

27  without delay to protect PVHD's ability to provide healthcare to the community of Blythe and to

28  prevent further harm.

**V.**

**<u>CONCLUSION</u>**

Based on the foregoing, PVHD's *ex parte* application should be granted in its entirety.

Dated: March 8, 2023                                    GREENE & ROBERTS LLP


By: _____
       Maria C. Roberts
       Noel J. Meza
       Attorneys for Plaintiff
       Palo Verde Healthcare District

Superior Court of California, County of Riverside
Register of Actions
www.riverside.courts.ca.gov

CVPS2401780: PALO VERDE HEALTHCARE DISTRICT vs ALTERA DIGITAL HEALTH INC

Civil

Unlimited Civil Business Tort/Unfair Business Practice

Palm Springs Courthouse Department PS1

Status: Active

| Complaints | File Date | Disposition |
|---|---|---|
| Complaint for Business Tort/Unfair Business Practice (Over $35,000) of PALO VERDE HEALTHCARE DISTRICT Plaintiff(s) | 03/26/2024 | |
| | Defendant(s) | |
| PALO VERDE HEALTHCARE DISTRICT ATT: Greene & Roberts | ALTERA DIGITAL HEALTH INC | |

| Date | Action |
|---|---|
| 03/26/2024 | COMPLAINT FOR: 1. BREACH OF CONTRACT Filed By: PALO VERDE HEALTHCARE DISTRICT |
| 03/26/2024 | Civil Case Cover Sheet Filed By: PALO VERDE HEALTHCARE DISTRICT |
| 03/26/2024 | Certificate of Counsel. Filed By: PALO VERDE HEALTHCARE DISTRICT |
| 03/26/2024 | Summons Issued and Filed Filed By: PALO VERDE HEALTHCARE DISTRICT |
| 03/26/2024 | Case assigned to Department: Department PS1 |
| 03/26/2024 | PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY INJUCTIVE RELIEF AND AN ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION TEMPORARY INJUCTIVE RELIEF AND AN ORDER TO SHOW CAUSE FOR PRELIMINARY INJUCTION on Complaint for Business Tort/Unfair Business Practice (Over $35,000) of PALO VERDE HEALTHCARE DISTRICT Filed By: PALO VERDE HEALTHCARE DISTRICT |
| 03/26/2024 | Memorandum of Points & Authorities in Support of Plaintiffs Ex Parte Application for Temporary Injutive Relief and Order to Show Cause for Preliminary Injunction Filed By: PALO VERDE HEALTHCARE DISTRICT |
| 03/26/2024 | Declaration of William Van Noll in Support of Plaintiff's Ex Parte Application for Temporary Injunctive Relief and Order to Show Cause for Preliminary Injunction Filed By: PALO VERDE HEALTHCARE DISTRICT |
| 03/26/2024 | Declaration of Sandra Anaya in Support of Plaintiff's Ex Parte Application for Temporary Injunctive Relief and Order to Show Cause |

Superior Court of California, County of Riverside
Register of Actions
www.riverside.courts.ca.gov

CVPS2401780: PALO VERDE HEALTHCARE DISTRICT vs ALTERA DIGITAL HEALTH INC

Civil
Unlimited Civil Business Tort/Unfair Business Practice
Palm Springs Courthouse Department PS1
Status: Active

| Date | Action |
|------|--------|
| | for Preliminary Injunction<br>Filed By: PALO VERDE HEALTHCARE DISTRICT |
| 03/26/2024 | Declaration of Maria C Roberts in Support of Plaintiff's Ex Parte Application for Temporary Injunctive Relief and Order to Show Cause for Preliminary Injunction<br>Filed By: PALO VERDE HEALTHCARE DISTRICT |
| 03/26/2024 | Proposed Order on Ex Parte Application and Temporary Restraining Order |
| 03/26/2024 | PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY INJUNCTIVE RELIEF AND AN ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION TEMPORARY INJUCTIVE RELIEF AND AN ORDER TO SHOW CAUSE FOR PRELIMINARY INJUCTION on Complaint for Business Tort/Unfair Business Practice (Over $35,000) of PALO VERDE HEALTHCARE DISTRICT<br>Filed By: PALO VERDE HEALTHCARE DISTRICT |
| 03/26/2024 | Payment: $450.00,  PALO VERDE HEALTHCARE DISTRICT, for PALO VERDE HEALTHCARE DISTRICT, Receipt: 20240326-00549 |
| 03/26/2024 | Notice of Department Assignment |
| 03/26/2024 | Notice of Case Management Conference |
| 03/26/2024 | Payment: $60.00,  PALO VERDE HEALTHCARE DISTRICT, for PALO VERDE HEALTHCARE DISTRICT, Receipt: 20240326-00556 |
| 03/28/2024 | Notice of Remote Appearance for Hearing on Ex Parte Application for Temporary Injunctive Relief and OSC for Preliminary Injunction - 03/29/2024 on Complaint for Business Tort/Unfair Business Practice (Over $35,000) of PALO VERDE HEALTHCARE DISTRICT<br>Filed By: PALO VERDE HEALTHCARE DISTRICT |
| 03/28/2024 | Proof of Service on Complaint for Business Tort/Unfair Business Practice (Over $35,000) of PALO VERDE HEALTHCARE DISTRICT<br>Service Type: Personal Service<br>Date Served: 03/27/2024<br>Fee for Service: $231.63<br>Additional Document Served: Certificate of Counsel<br>Additional Document Served: Civil Case Cover Sheet<br>Additional Document Served: Notice of Case Management Conference<br>Additional Document Served: Notice of Department Assignment<br>Additional Document Served: OTHER: Summons, Complaint, Ex Parte |

Superior Court of California, County of Riverside
Register of Actions
www.riverside.courts.ca.gov

CVPS2401780: PALO VERDE HEALTHCARE DISTRICT vs ALTERA DIGITAL HEALTH INC
Civil
Unlimited Civil Business Tort/Unfair Business Practice
Palm Springs Courthouse Department PS1
Status: Active

| Date | Action |
|---|---|
| | Application, Memorandum of Points and Authorities, Declarations of Maria C. Roberts, William Van Noll and Sandra Anaya, Proposed Order on Ex Parte Application<br>Filed By: PALO VERDE HEALTHCARE DISTRICT<br>Against / As To: ALTERA DIGITAL HEALTH INC |
| 03/28/2024 | Order Appointing Court Approved Reporter as Official Reporter Pro Tempore on Complaint for Business Tort/Unfair Business Practice (Over $35,000) of PALO VERDE HEALTHCARE DISTRICT<br>Filed By: PALO VERDE HEALTHCARE DISTRICT |
| 03/28/2024 | Proof of Service re: Plaintiff's Ex Parte Application for Temporary Injunctive Relief and an OSC for Preliminary Injunction and All Supporting Documents; Summons and Complaint and New Case Documents on Complaint for Business Tort/Unfair Business Practice (Over $35,000) of PALO VERDE HEALTHCARE DISTRICT<br>Filed By: PALO VERDE HEALTHCARE DISTRICT |
| 03/28/2024 | Payment: $1.85,  PALO VERDE HEALTHCARE DISTRICT, for PALO VERDE HEALTHCARE DISTRICT, Receipt: EFM20240328-00503 |
| 03/28/2024 | Payment: $1.85,  PALO VERDE HEALTHCARE DISTRICT, for PALO VERDE HEALTHCARE DISTRICT, Receipt: EFM20240328-00991 |
| 03/28/2024 | Payment: $1.85,  PALO VERDE HEALTHCARE DISTRICT, for PALO VERDE HEALTHCARE DISTRICT, Receipt: EFM20240328-01044 |
| 03/28/2024 | Payment: $1.85,  PALO VERDE HEALTHCARE DISTRICT, for PALO VERDE HEALTHCARE DISTRICT, Receipt: EFM20240328-01067 |
| 03/29/2024 | PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY INJUCTIVE RELIEF AND AN ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION at 8:30 AM in Department PS1 |
| 09/23/2024 | Case Management Conference at 8:30 AM in Department PS1 |