1   Maria C. Roberts, SBN 137907
mroberts@greeneroberts.com
2   Noel J. Meza, SBN 331169
nmeza@greeneroberts.com
3   GREENE & ROBERTS
402 West Broadway, Suite 1025
4   San Diego, CA 92101
Telephone:  (619) 398-3400
5   Facsimile:   (619) 330-4907

6
Attorneys for Plaintiff
7   Palo Verde Healthcare District

8              UNITED STATES DISTRICT COURT

9      CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

10  PALO VERDE HEALTHCARE            Case No. 5:24-cv-00666-FLA (DTBx)
    DISTRICT, a California public entity,
11                                    Dist. Judge:   Hon. Fernando Aenlle-Rocha
                                      Mag. Judge:    Hon. David P. Bristow
12            Plaintiff,             Action Date:   March 26, 2024
                                      Trial Date:    Not Set
13        v.

14  ALTERA DIGITAL HEALTH INC., a    **SUPPLEMENTAL BRIEF OF**
    Delaware corporation; and DOES 1  **PLAINTIFF PALO VERDE**
15  through 10, inclusive,           **HEALTHCARE DISTRICT IN**
                                      **SUPPORT OF ITS APPLICATION**
16            Defendants.            **FOR PRELIMINARY INJUNCTION**

17                                    **ACCOMPANYING DOCUMENTS:**
                                      REQUEST FOR JUDICIAL NOTICE;
18                                    DECLARATIONS OF MARIA C.
                                      ROBERTS, WILLIAM VAN NOLL;
19                                    SANDRA ANAYA, CHRISTA ROHDE
                                      AND JEFF BELL;   (PROPOSED)
20                                    ORDER

21                                    Hearing Date:  April 11, 2024
                                      Time:          9:00 a.m.
22                                    Department:     6B

23

24

25

26

27

28

# **TABLE OF CONTENTS**

I.   INTRODUCTION.................................................................................1

II.  STATEMENT OF FACTS....................................................................5

    A.   Palo Verde Healthcare District ..................................................5

    B.   Contract with ALTERA .............................................................6

    C.   Material Breaches by ALTERA ..................................................7

III. LEGAL STANDARD ........................................................................12

IV. LEGAL ARGUMENT ........................................................................13

    A.   A Preliminary Injunction That Prohibits and Enjoins ALTERA
        from Cutting Off PVHD's Access to the System Will Avoid
        Irreparable Harm.......................................................................13

        1.  PVHD Will Suffer Irreparable Harm Absent Injunctive Relief .............13

        2.  There is No Adequate Remedy at Law for the Harm That Has
           Resulted and Will Result from ALTERA's Conduct .............................14

        3.  PVHD is Likely to Succeed on the Merits of its Contract Claim............14

        4.  The Balance of Hardships Weighs Sharply in PVHD's Favor...............17

        5.  A Preliminary Injunction Would Be in the Public Interest.....................18

    B.   A Preliminary Injunction Requiring Altera to Return PVHD's
        Health Information to It Within 30 Days is Needed to Avoid
        Irreparable Harm.......................................................................20

    C.   No Bond Should Be Required of PVHD.....................................22

V.  CONCLUSION ..................................................................................24

# TABLE OF AUTHORITIES

**Cases**

*All. for the Wild Rockies v. Cottrell*
  632 F.3d 1127 (9th Cir. 2011) ............................................................ 12, 13

*Am. Trucking Ass'n, Inc. v. City of Los Angeles*
  559 F.3d 1046 (9th Cir. 2009) ................................................................. 12

*Amoco Prod. Co. v. Vill. of Gambell*
  480 U.S. 531 (1987) .......................................................................... 13, 14

*Barahona-Gomez v. Reno*
  167 F.3d 1228 (9th Cir. 1999) ................................................................. 24

*Brown v. Grimes*
  192 Cal. App. 4th 265 (2011) ............................................................ 16, 17

*California Indep. Sys. Operator Corp. v. Reliant Energy Servs., Inc.*
  181 F. Supp. 2d 1111 (E.D. Cal. 2001) .................................................... 23

*Christian Med. & Dental Ass'n v. Bonta*
  625 F. Supp. 3d 1018 (C.D. Cal. 2022) .................................................... 21

*City of South Pasadena v. Slater*
  56 F.Supp.2d 1106 (C.D. Cal. 1999) ....................................................... 22

*Colaco v. Cavotec SA*
  25 Cal. App. 5th 1172 (2018) ................................................................. 17

*Coles v. Glaser*
  2 Cal. App. 5th 384 (2016) ..................................................................... 15

*Connecticut General Life Ins. Co. v. New Images of Beverly Hills*
  321 F.3d 878 (9th Cir. 2003) .................................................................. 23

*Diaz v. Brewer*
  656 F.3d 1008 (9th Cir. 2011) ................................................................ 22

*Disney Enters., Inc. v. Vidangel, Inc.*
  869 F.3d 848 (9th Cir. 2017) .................................................................. 13

*Doe v. Kelly*
  878 F.3d 710 (9th Cir. 2017)............................................................................. 12, 14

*Doran v. Salem Inn, Inc.*
  422 U.S. 922 (1975) ............................................................................................ 14

*Erisat-Eritrean Satellite Television v. Henok Tekle Gebrekidan, et al.*
  No. CV241121DMGAJRX, 2024 WL 1202245 (C.D. Cal. Mar. 5, 2024) ............. 23

*Henry Schein v. Cook*
  191 F. Supp. 3d 1072 (N.D. Cal. 2016) ........................................................ 19, 22

*Integrated Dynamic Sols., Inc. v. Vita Vet Labs, Inc.*
  6 Cal. App. 5th 1178 (2016)........................................................................... 20, 21

*Jackson v. Davis*
  No. 1:16-cv-00148-DAD-DLB-PC, 2016 WL 3640488 (E.D. Cal. July 7, 2016),
  report and recommendation adopted, No. 1:16-cv-00148-DAD-MJS, 2016 WL
  4733294 (E.D. Cal. Sept. 12, 2016) ..................................................................... 19

*Jorgensen v. Cassiday*
  320 F.3d 906 (9th Cir. 2003)......................................................................... 22, 23

*Katemis v. Westerlind*
  120 Cal. App. 2d 537 (1953)................................................................................ 16

*League of Wilderness Defenders/Blue Mountains Biodiversity Project*
    *v. Connaughton*
  752 F.3d 755 (9th Cir. 2014)......................................................................... 18, 21

*Marshall v. Amuso*
  571 F. Supp. 3d 412 (E.D. P.A. 2021) ................................................................. 23

*Pharm. Soc. of State of New York, Inc. v. New York State Dept. of Social Services*
  50 F.3d 1168 (2nd Cir. 1995)............................................................................... 23

*Pillsbury Madison & Sutro v. Schectman*
  55 Cal. App. 4th 1279 (1997)............................................................................... 21

*Roman Cath. Diocese of Brooklyn v. Cuomo*
  592 U.S. 14 (2020) ....................................................................................... 19, 22

*Rubin v. Fuchs*
  1 Cal. 3d 50 (1969)............................................................................................. 16

*Sampson v. Murray*
  415 U.S. 61 (1974) ....................................................................................... 13, 14

*Save Our Sonoran, Inc. v. Flowers*
  408 F.3d 1113 (9th Cir. 2005)........................................................................... 22

*Schweiker v. Hogan*
  457 U.S. 569 (1982) ..................................................................................... 19, 22

*Shell Offshore, Inc. v. Greenpeace, Inc.*
  709 F.3d 1281 (9th Cir. 2013)........................................................................... 14

*Sierra Club v. Martin*
  933 F. Supp. 1559 (N.D. Ga. 1996) .............................................................. 13, 14

*Sierra On-Line, Inc. v. Phoenix Software, Inc.*
  739 F.2d 1415 (9th Cir. 1984)........................................................................... 12

*Simula, Inc. v. Autoliv, Inc.*
  175 F.3d 716 (9th Cir. 1999)........................................................................ 13, 14

*Stormans, Inc. v. Selecky*
  586 F.3d 1109 (9th Cir. 2009).................................................................... 19, 22

*Stuhlbarg Intl. Sales v. John D. Brush Co.*
  240 F.3d 832 (9th. Cir. 2001).......................................................................... 13

*SuccessFactors, Inc. v. Softscape, Inc.*
  544 F. Supp. 2d 975 (N.D. Cal. 2008) ............................................................. 15

*Teen Rescue v. Xavier Becerra*
  No. 219CV00457JAMEFB, 2019 WL 1572934 (E.D. Cal. Apr. 11, 2019)............. 19

*United States v. First Nat'l City Bank*
  379 U.S. 378 (1965) ................................................................................... 19, 21

*United States v. Marine Shale Processors*
  81 F.3d 1329 (5th Cir. 1996)............................................................................ 19

*Warner Bros. Ent. Inc. v. Tusa*
   No. 221CV05456VAPASX, 2021 WL 4815947 (C.D. Cal. Aug. 16, 2021) ........... 24

*Winter v. Nat. Res. Def. Council*
   555 U.S. 7 (2008) ....................................................................... 12, 13, 17

*Zeetogroup, LLC v. Fiorentino*
   No. 19-CV-458 JLS (NLS), 2019 WL 2090007 (S.D. Cal. May 13, 2019) ............ 24


**Statutes**

42 U.S.C. § 300jj–11(c)(5)(D)........................................................... 1, 19, 22

42 U.S.C. §300jj-52(b) .................................................................. 1, 16, 20

42. U.S.C. §300jj-52 ......................................................................... 1, 20

45 C.F.R. § 164.524 ....................................................................... 19, 22

45 C.F.R. § 170.401 ...................................................... 1, 15, 19, 20, 22

45 C.F.R. §171.103 (2024) ................................................................... 1

Cal. Civ. Code §1437....................................................................... 16

Cal. Health & Saf. Code § 123100 ................................................... 19, 22

Cal. Health & Saf. Code §123100(a)................................................. 19, 22

Fed. R. Civ. Proc. 65(b)(2) ......................................................... 13, 14


**Other Authorities**

CACI No 303 .............................................................................. 15


**Treatises**

Restatement (Second) of Contracts § 267 ............................................. 16

Trout et al., *The Impact of Electronic Health Records and Meaningful Use on
Inpatient Quality* (The Journal for Healthcare Quality 2022) ..................... 5

# I.

## __INTRODUCTION__

Federal law strictly prohibits any health IT developer (such as ALTERA) from taking any action that amounts to "information blocking." *See* 42 U.S.C. § 300jj–11(c)(5)(D); 45 C.F.R. § 170.401. "Information blocking" is defined as any practice by a health IT developer that interferes with, prevents, restricts or materially discourages access to electronic health information. 42. U.S.C. §300jj-52. "Information blocking" __practices__ include:

(1) restricting or limiting access to electronic health information needed for patient treatment/billing or to transition from one technology system to another;

(2) substantially increasing the complexity or burden of accessing, exchanging or using electronic health information;

(3) implementing any health IT that restricts the access, exchange, or use of electronic health information with respect to exporting complete information sets or in transitioning between health IT systems or leads to public fraud, waste, or abuse.

(*Id*.)  Not only is "information blocking" by health IT developers unlawful, but it is also so serious and dangerous that, if proven, it can result in penalties of up to $1 million per violation, as assessed by the Office of Inspector General for the Department of Health & Human Services.  *See* 42 U.S.C. §300jj-52(b).

Notwithstanding the clear law prohibiting "information blocking," this case presents clear and uncontroverted evidence of "information blocking" by Defendant ALTERA DIGITAL HEALTH INC. ("ALTERA").  ALTERA is a "Health IT developer of certified health IT" as defined under 45 C.F.R. § 171.102 and is expressly precluded under federal law from "information blocking." 45 C.F.R. §171.103 (2024); *see also* 42 U.S. Code §300jj–11(c)(5)(D).

Plaintiff, Palo Verde Healthcare District, is a California public healthcare district in the rural community of Blythe, California, that operates a small public hospital commonly known as Palo Verde Hospital ("PVHD"). PVHD exists to serve

the healthcare needs and promote the wellbeing of the public in and around the City of Blythe, including the more than 4,000 state prisoners incarcerated in the two local prisons. The healthcare services provided by PVHD are particularly necessary, as the next closest hospital to it is a 90-minute drive away.

In 2015, ALTERA contracted with PVHD to provide an electronic health record and financial management software system (the "System"), which stores all information PVHD has related to its patients, services, and treatment provided to patients, patient charges, billing, and revenue cycle, etc.

Unfortunately, as PVHD has discovered in 2023, ALTERA failed to deliver on its contractual promises and concealed critical defects in the System that it built for PVHD and which it admits caused PVHD millions of dollars in losses. ALTERA also engaged in a pattern of unlawfully restricting, limiting, discouraging, frustrating and denying PVHD access to its own health information (including critical billing information) on the System, in violation of federal laws and regulations prohibiting "information blocking." Most recently, its "information blocking" involved cutting off all IT support services in December 2023; intermittently cutting off PVHD's entire access to the System; threatening to permanently cut-off PVHD's access to the System; and refusing to return PVHD's health information on the System to it which impeding its ability to transition to another health IT system.

After being paid by PVHD more than $10 million (including overpayments of more than $2.2 million) for a System that was not properly built and which ALTERA refused to fix, ALTERA demanded millions more from PVHD and threatened to permanently cut off PVHD's access to the System if payment was not made. ALTERA also refused to return to PVHD its own health information stored on the System, even though ALTERA is required by contract and the law to provide that health information to PVHD and ALTERA's own lawyer agreed to provide it.

Cutting off PVHD's access to this System has been and will continue to be devastating to it and the public it serves. The System contains all of PVHD's patient

information, medical and health records, patient history, pharmacy, laboratory, radiology, emergency room records, and all of the information required for PVHD to bill for treatment, care, and related services it provides to its entire patient population.

It also contains all the information necessary to provide medical services, make informed medical decisions, and to be able to admit and care for patients in need. Cutting off access to this System will force patients to travel 90 minutes away for emergency and other medical services and make it impossible for PVHD to bill for or receive payment and reimbursement for services already provided.  This is compounded by ALTERA's outright refusal to return PVHD's health data to it.

For months, efforts were made to resolve this dispute informally.  Counsel for PVHD has communicated with ALTERA's in-house lawyers, Executive Vice President, Area Vice-President, and its outside counsel in hopes of reaching an informal resolution and preventing the harm caused by ALTERA. This was to no avail, as ALTERA refused to withdraw its threats to cut off PVHD's access to the System, refused to return PVHD's health information to it and has continued to impede its access to the data on the System.

Therefore, PVHD was forced to initiate legal action against ALTERA for its contract breaches and other misconduct. It has also sought immediate Court intervention to prevent the irreparable harm that would be caused if ALTERA is not enjoined from carrying out its threats to cut access to the System and by refusing to return to PVHD its own health information.[1]

/ / /

---

[1] Notably, ***PVHD's problems with ALTERA are not in isolation***. PVHD is just one of several hospitals and healthcare providers that have been preyed upon by ALTERA, sold software systems plagued with problems, and then terrorized and exploited by ALTERA when payments to it cease. ALTERA has engaged in the same tactics in at least California, Texas, Iowa, Delaware, and Puerto Rico.  ALTERA's conduct has forced some small hospitals into bankruptcy, after which ALTERA continued to wage wars on those hospitals, threatening to cut off their access and support if additional money is not paid to ALTERA.  *See* PVHD's Request for Judicial Notice ("RJN"), Exhs. 17-20.

On March 29, 2024, this Court properly issued a temporary injunction against ALTERA to help prevent some of the irreparable harm to PVHD and the members of the public it serves.  The TRO was based on a finding that PVHD's evidence showed likely success on its claims and that ALTERA would suffer no irreparable harm and, therefore, not compromising the lives or well-being of the public.  (Dkt. 11.)  The Court ordered ALTERA to show cause on the requested preliminary injunction and invited supplemental briefing by PVHD and a response by ALTERA. (*Id.*)

For all the reasons set forth herein, a preliminary injunction should issue that:

- for a period of at least five months, enjoins and prohibits ALTERA (and its agents, assigns, employees, and any individual or entity acting in concert with or under the direction of ALTERA) from removing, restricting, impeding, obstructing, or hindering PVHD's access to and use of the electronic health record and financial management software System in place and in use at Palo Verde Hospital over the past 6 plus years;

- for a period of at least five months, enjoins and prohibits ALTERA (and its agents, assigns, employees, and any individual or entity acting in concert with or under the direction of ALTERA) from removing, restricting, impeding, obstructing, or hindering PVHD's access to and use of any software, software modules, content, and materials related to the System (collectively, "Software") identified or referenced in the written contract between PVHD and ALTERA dated March 31, 2015 ("Contract"); and

- compels ALTERA to provide in human, readable or other standard format and within 30 days all health information on the System, including all health information input by PVHD into the System.

ALTERA's conduct has wreaked havoc on PVHD's operations, compromised patient care, undermined medical decision-making, and jeopardized PVHD's ability to fulfill its obligations to the community it serves. Unless enjoined, this conduct and the resulting irreparable harm will continue, with no legal remedy available. Importantly, the longer it takes for ALTERA to return PVHD's health information to it, the longer PVHD will need access to the System and will require an injunction.

/ / /

/ / /

/ / /

## II.

## STATEMENT OF FACTS

### A. Palo Verde Healthcare District

PVHD is a public healthcare district that operates Palo Verde Hospital, which provides critical healthcare services to the rural community of Blythe, California. PVHD relies on its System as a critical tool for facilitating the seamless recording, retrieval, and coordination of medical information, managing medical billing, and, most importantly, providing and ensuring safe and precise patient care. The System allows physicians to access vital patient information instantly, including, medical history, current and past diagnoses, allergies, current and past treatment received, medication history, laboratory and diagnostic test results, and patient demographic and related information. This quick access is especially crucial in emergency situations, where every second counts are patient lives are at-stake. (Van Noll Decl., ¶31; Anaya Decl., ¶4-6, 9; Bell Decl., ¶4.)

Studies show that hospitals without electronic health record systems have patient mortality rates nearly 20% higher than those with such systems.[2] PVHD's access to the System, therefore, is not just a matter of convenience or administrative efficiency, it can be a matter of life or death. Without uninterrupted access to the System, PVHD's ability to deliver prompt and informed care and treatment is seriously compromised, which can put hundreds of patients in Blythe at risk of mistreatment, misdiagnoses, serious injury, and even death. (Van Noll Decl., ¶¶31, 35, 37; Anaya Decl., ¶4-9; Bell Decl., ¶¶4-5.)  The same harm has been and will be caused by ALTERA's refusal to return to PVHD all of the health information stored on the System, which PVHD must have to care for its patients, bill for services, comply with records requests by patients, comply with subpoenas, respond to billing inquires and handle billing disputes. (*Id*.) It defies logic that ALTERA has refused to

---

[2] *See* Trout et al., *The Impact of Electronic Health Records and Meaningful Use on Inpatient Quality* (The Journal for Healthcare Quality 2022) https://pubmed.ncbi.nlm.nih.gov/34267170.

return PVHD's health information as required by the contract and the law.  In doing

that, ALTERA has prevented PVHD from being able to transition to an alternative

stop-gap system and to become less dependent on ALTERA. (Van Noll Decl., ¶36;

Anaya Decl., ¶¶ 8-9; Bell Decl., ¶ 8.)

**B. Contract with ALTERA**

On March 31, 2015, PVHD and Defendant ALTERA[3] entered into a Contract[4]

for the provision of the electronic health and financial management system, including

related software, equipment, and Managed IT Support services. (Van Noll Decl., ¶ 4.)

Since that date, PVHD has paid over $10,000,000 to ALTERA for the software and

support services, which have been fraught with problems and challenges, again

causing PVHD to suffer many millions of dollars in billing and financial losses. (Van

Noll Decl., ¶¶5-35.)  In relevant part, the Contract terms include the following:

- ALTERA would provide PVHD the right and license to access and use the System and related Software in conformity with specifications provided;
- ALTERA would provide PVHD with professional, technical, and support services for the implementation and operation of the System and related Software.
- ALTERA would fix errors of any failure of the System software.
- ALTERA would provide consulting and training services to PVHD relating to the System and Software.
- As consideration, PVHD would pay ALTERA for the System and Software.
- PVHD had the right to withhold payment to ALTERA if there was a good faith dispute as to any payment until the dispute was resolved.
- ALTERA agreed and warranted that it's performance under the Contract would be in accordance with all applicable laws and regulatory requirements.

---

[3] The contract was actually entered into with Allscripts Healthcare LLC—an Illinois corporation.  However, on May 6, 2022, N. Harris Computer Corporation acquired Allscripts Healthcare LLC and re-branded Allscripts to operate under its subsidiary Defendant Altera Digital Health Inc. https://www.alterahealth.com/newsroom/harris-completes-purchase-of-allscripts-hospitals-and-large-physician-practices-business-segment.

[4] The Contract is not attached to this application, as ALTERA insists it is confidential and may not be disclosed.  PVHD disagrees, but because this dispute is unresolved, it does not attach the Contact to this application. (*See,* Roberts Decl., ¶3.)

- The parties have the right to seek equitable and provisional remedies in court, if the disputes were urgent.
- ALTERA would return to PVHD all of its confidential health information on the System if the contract ended.  (Van Noll Decl., ¶10.)

## C. **Material Breaches by ALTERA**

In **July 2023**, PVHD's new Chief Financial Officer, William Van Noll, began to have concerns about potential problems with the financial management side of the system.  PVHD was in dire financial straits and Mr. Van Noll suspected this may be caused by problems with the System.  Mr. Van Noll then began to ask questions of and demand answers from ALTERA. (Van Noll Decl., ¶¶ 6–8.)  As this investigation unfolded, it revealed serious problems, errors and irregularities in the way the system was originally built by ALTERA. (*Id.* at ¶¶11-31.)

Thereafter, an ALTERA employee traveled to PVHD, analyzed the System and its functionality and described the system as one of the "worst" she had ever seen at any hospital. (Van Noll Decl., ¶7.) ALTERA employees later did a "deep dive" into the way the system had been constructed by it.  They later disclosed to PVHD that they found many errors in the way the system was built and that the primary problems with the billing side of the System were actually hidden and could not have been discovered by PVHD.  (*Id*. at ¶¶12-17.) They admitted problems with the System and the way it had been built were not consistent with "best practices" and admitted this caused PVHD many millions of dollars in economic losses. (*Id.* at ¶14.)

In **August 2023**, after discovering and admitting how flawed the System was, ALTERA promised to fix the System.  ALTERA also directed PVHD to allow it to **fix** the System so PVHD could see how well it could function, **before** PVHD made any decisions about whether to upgrade or transition to another system.  (Van Noll Decl., ¶¶8-9.) On **August 29, 2023,** ALTERA presented to a memo of steps to PVHD that it planned to take to rectify some of the billing issues in the System which would help PVHD "get cash in the door." (*Id*., at ¶13 and Exh. A thereto.) ALTERA also agreed to fix other problems with the way the System was built. (*Id*.)

ALTERA then appeared to begin the process of addressing the errors and problems with the System by assigning an entirely different employee to provide "Managed IT Services" to PVHD, as was required by the Contract.  ALTERA explained that the employee who had been assigned to PVHD (Mr. James O'Brien) lacked the knowledge and expertise in revenue cycle to support the needs of PVHD. (Van Noll Decl., ¶¶4, 11.) ALTERA then assigned Kelly Johnson to take over O'Brien's role.  (*Id*. at ¶11.)

At this same time, in **August 2023**, as it became clear that ALTERA had breached its contractual obligations to PVHD and cost PVHD many millions of dollars in losses, PVHD made the decision to stop making the $180,000/month payments being charged by ALTERA, until such time as the problems with the System were rectified, the System was functioning as ALTERA represented it should function and PVHD was able to bill properly for services provided. (Van Noll Decl., ¶10.)  The Contract with ALTERA actually contains a fee dispute provision that allows payment to be suspended if there is a good faith dispute and until such time as the dispute is resolved.  (*Id*. at 10.)

In the following months, **September, October and November 2023**, PVHD met/spoke weekly with various members of a team of ALTERA employees assigned to address and rectify the problems with the System. (Van Noll Decl., ¶¶18-29.) Then, in **early October 2023**, Kelly Johnson, who had taken over the role of providing Managed IT Services to PVHD, was pulled off the team and that role was transitioned to a team in India.  (*Id.* at ¶12.)  And, despite repeated assurance and promises by ALTERA on the promised fixes to the errors in the System, no meaningful progress was made.  As the months passed, PVHD continued to experience the same problems with the System that it had addressed with ALTERA in July and August 2023 and ALTERA became less and less responsive to PVHD.  (*Id.* at ¶13-24.)  The longer the ALTERA system failed to properly function, the greater the economic losses suffered by PVHD.  (*Id*.)

On **November 21, 2023**, against the backdrop of ALTERA's total continued failure to fix the system as required by the Contract, ALTERA demanded a payment of more than $400,000 from PVHD and threatened that if payment was not made within two weeks, all support services to PVHD would be cut off.  (Van Noll Decl., ¶29.)  In other words, as ALTERA continued to cause PVHD to be crushed financially as a result of its disastrous System and its failure to fix the System, it simultaneously demanded a huge payment from PVHD that it knew PVHD could not pay and that it was contractually excused from paying.  (*Id.*) On **December 4, 2023,** ALTERA followed through with its threats and ended all support services to PVHD, because the $400,000 it demanded was not paid.  (*Id*. at ¶30.)

Then, on the weekend of **January 14, 2024**, ALTERA locked PVHD out of the System altogether.  (Van Noll Decl., ¶32.) This resulted in PVHD not having access to critical patient information, to add patient information to the system or track services provided for billing purposes. (*Id*., ¶32; Anaya Decl., ¶13.) Given the seriousness and urgency of this situation, PVHD involved its outside counsel, who engaged in multiple communications with an ALTERA Vice President and its in-house lawyers and who later took steps to restore PVHD's access after more than two days. (Van Noll Decl., ¶¶33-34; Roberts Decl., ¶¶4-7; Exhs. 1-2.) This occurred again on a few other occasions, leaving PVHD without any access to the System for hours at a time, compromising patient care and putting patients, PVHD and its providers at risk. (*Id*., ¶33; Anaya Decl., ¶13.)

On **January 31, 2024**, after ALTERA failed to make any of the promised fixes to the System and after cutting off all support services to PVHD, its Executive Vice President wrote to PVHD, demanded payment of more than $1.3 million and threatened that if that payment was not received in 60 days, ALTERA would terminate the contract with PVHD and cut off all access to the System.  (Van Noll Decl., ¶34; Roberts Decl., ¶7; Exh. 3.) The letter also warned that PVHD should back up all of its health information on the System, which PVHD had no ability to do as all

of the health information is stored on ALTERA's drives to which PVHD has no access.  (*Id*.) Further, as shown by the declaration of Christa Rohde (former controller and CFO of PVHD), PVHD had no role in building the System at PVHD. Rather, it simply provided health information when requested by Allscripts (now ALTERA) and Allscripts controlled every aspect of the design and development of the System. (Rohde Decl., ¶6.)

On **February 13, 2024**, counsel for PVHD responded to the letter from the ALTERA Executive Vice-President with a 10-page response that addressed the many falsehoods in the letter and described point-by-point many of ALTERA's contract breaches and misrepresentations made. (Roberts Decl., ¶¶8; Exh. 4.) Communications between PVHD's counsel and ALTERA continued after that, including most recently with ALTERA's outside lawyer.  (Roberts Decl., ¶¶8–17; Exhs. 5–13.)  PVHD has pleaded with ALTERA not to cut off its access to the System until after June 30, 2024; asked ALTERA to provide to it all health information in the System in human readable format asap; and, invited ALTERA to participate in mediation. (Roberts Decl., ¶¶8, 11, 13, 16; Exhs. 4, 7, 9, 12.)  PVHD has also advised ALTERA that if these issues are not resolved, it would be forced to initiate legal action against ALTERA and to seek all relief available to it. (*Id*.) Nonetheless, ALTERA has refused to withdraw its threats to end all services to PVHD on April 1, 2024 absent payment of more than $1.3 million and has steadfastly refused to return PVHD's health information to it.  (*Id*.)

As of the current date, ALTERA has not withdrawn its threat to terminate all services to PVHD and lock it out of the System; has not responded to PVHD's requests for all health information stored on the System; and has not responded to the invitation to mediate. (Van Noll Decl., ¶36; Roberts Decl., ¶18.) That is what forced this lawsuit, the TRO application and this application for preliminary injunction. (Roberts Decl., ¶18.) ALTERA's silence is deafening considering it has been in possession of PVHD's original application for TRO since March 27, the emergency

application for TRO since March 29, and this Court's order granting the TRO since March 29, in addition to multiple communications from PVHD's counsel dating back to January requesting return of the health information and that ALTERA not lock PVHD out of the System.  (Roberts Decl., ¶18; Exhs. 1, 2, 4, 5, 7, 9-13.)

The only response ALTERA ever provided on the issues of the threatened lock-out and the return of PVHD's health information came in an email from its lawyer sent **March 29, 2024 at 2:50 p.m.** (shortly before the TRO was issued). In that email, the lawyer wrote, in part: "**The software to your client's hospital will not be "turned off" on Monday,**" and then demanded PVHD withdraw its application.[5] (Roberts Decl., ¶18.) The lawyer apparently expected PVHD to withdraw its TRO application based on his statement that the lock-out would not happen **on Monday** (as ALTERA threatened for 2 months), while Tuesday, Wednesday, Thursday, Friday, *etc*. were fair game. The email said nothing about the return of PVHD's health information. And, even after the TRO was issued and the Court invited the parties to stipulate to an extension of the injunction, ALTERA was silent.  (*Id*.)

Since the TRO issued on March 29, 2024, the only communication from ALTERA was 7 days later when its lawyer sent a bizarre email to a PVHD attorney after learning PVHD's lead counsel was out for two days of mediation:

> Please confirm EOD you disagree with pushing the dates out (yours, ours, and the hearing) by a week per Judge Aenlle-Rocha's order at page 6, lines 5 to 8, notwithstanding our client's agreement that the TRO remain in place pending the district court's decision on the PI. We can then let the district court know you disagree and oppose doing so as part of our request to push our April 8 date and the hearing by seven days. We can also indicate that you would not get on the phone to meaningfully meet and confer because of your preference to go back and forth in unilateral emails. (Exh. 14.)

When PVHD's counsel responded that the extension seemingly requested by ALTERA would be opposed, the self-serving communications from ALTERA's lawyer continued.  (Roberts Decl., ¶21; Exhs. 15-16.)

---

[5] If ALTERA did not plan to oppose the injunction sought, it was/is required to advise the court and PVHD. (Standing Order §II.C.) It did not do that.

As shown, the preliminary injunction sought by PVHD is out of necessity, in good faith, and for good cause.  If ALTERA is not enjoined and PVHD is denied access to the System that houses every pertinent piece of information about its patients and other highly important health and billing information, while also being denied return of that health information, PVHD will suffer immediate and irreparable harm. Its operations will be paralyzed and likely suspended, its patients deprived of necessary care and it is questionable whether its operations could continue. (Van Noll Decl., ¶38; Anaya Decl., ¶¶ 4–14.)

### III.

### LEGAL STANDARD

A plaintiff seeking preliminary injunctive relief "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Ass'n, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008)).  Alternatively, an injunction can also be justified if a plaintiff raises "serious questions going to the merits" and the balance of hardships "tips sharply toward the plaintiff ... assuming the other two elements of the Winter test are also met." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011). A "serious question" is one on which the movant "has a fair chance of success on the merits." *Sierra On-Line, Inc. v. Phoenix Software, Inc*., 739 F.2d 1415, 1421 (9th Cir. 1984).

The Ninth Circuit follows a "sliding scale" approach to the four preliminary injunction elements: "a stronger showing of one element may offset a weaker showing of another, as long as plaintiffs 'establish that irreparable harm is likely.'" *Doe v. Kelly*, 878 F.3d 710, 719 (9th Cir. 2017) (quoting *Cottrell*, 632 F.3d at 1131).

As more fully set forth below, a preliminary injunction is warranted here because each of the following elements is satisfied: (1) a likelihood of success on the merits, (2) a likelihood of irreparable injury to PVHD if injunctive relief is not

granted, (3) a balance of hardships favoring the PVHD, and (4) an advancement of the public interest. *Winter*, 555 U.S. at 20; *Stuhlbarg Intl. Sales v. John D. Brush Co.*, 240 F.3d 832, 839, n.7 (9th. Cir. 2001). The district court may also enter the requested preliminary injunction if it finds that PVHD raises "serious questions going to the merits" and that the "balance of hardships … tips sharply towards" it, provided that the second and third *Winter* factors are also satisfied. *Cottrell*, 632 F.3d at 1134–35; *see also, Disney Enters., Inc. v. Vidangel, Inc.*, 869 F.3d 848, 855 (9th Cir. 2017). Both standards are met here.

## IV.

## <u>LEGAL ARGUMENT</u>

**A.**    **<u>A Preliminary Injunction That Prohibits and Enjoins ALTERA from Cutting Off PVHD's Access to the System Will Avoid Irreparable Harm</u>**

**1.**    **<u>PVHD Will Suffer Irreparable Harm Absent Injunctive Relief</u>**

According to the Supreme Court, irreparable harm is defined as harm that cannot be remedied by money damages and is permanent or long-lasting. *See Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 545 (1987); *Sampson v. Murray*, 415 U.S. 61, 90 (1974) (noting that "[t]he key word" in considering whether a plaintiff has shown irreparable injury "is irreparable"); Fed. R. Civ. Proc. 65(b)(2). "The question of irreparable injury does not focus on the significance of the injury, but rather whether the injury, irrespective of its gravity, is irreparable—that is, whether there is any adequate remedy at law for the injury in question." *Sierra Club v. Martin*, 933 F. Supp. 1559, 1571 (N.D. Ga. 1996); *accord Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 725 (9th Cir. 1999) (finding the "magnitude" of the asserted harm is not a factor to be considered in determining whether the harm is irreparable).

As set forth above, ALTERA's actions pose an immediate threat to PVHD's ability to provide essential healthcare services, due to interference with access to vital health information. The denial, restriction, or hindrance of PVHD's access to the System and its own health information, would result in irreparable harm to PVHD and

its patients, cannot be remedied by money damages and is expressly contemplated by the Contract. *See, Amoco Prod. Co.*, 480 U.S. at 545.  PVHD's ability to provide care for patients in need, make informed medical decisions, care for the public in Blythe and operate its business, requires it to have access to its the health information on the System and any disruption to its access could be devastating to it and its patients. (Van Noll Decl., ¶¶38; Anaya Decl., ¶¶ 4–14; Bell Decl., ¶¶4-6.)

### 2.    There is No Adequate Remedy at Law for the Harm That Has Resulted and Will Result from ALTERA's Conduct

An injunction is properly granted where it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief.  *See Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 545 (1987); *Sampson, supra,* 415 U.S. 61, 90; *Sierra Club v. Martin*, 933 F. Supp. at 1571; *accord Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 725 (9th Cir. 1999); Fed. R. Civ. Proc. 65(b)(2).

Here, monetary damages will not adequately compensate for the disruption of essential healthcare services to innocent and unsuspecting patients in need of critical and necessary medical care and loss of access to vital patient health information. *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932, 95 S.Ct. 2561, 2568 (1975) ("substantial loss of business and perhaps even bankruptcy" absent preliminary injunctive relief shows "irreparable injury"); *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (remedy at law inadequate if serious risk of harm to human life).

Here, the intangible nature of the harm inflicted, coupled with the inability to quantify the true value of timely and effective care, renders legal remedies at law insufficient. Once the damage is done and a patient is injured or dies, this cannot be remedied by the payment of money.  The absence of an adequate remedy at law compels injunctive relief.

### 3.    PVHD is Likely to Succeed on the Merits of its Contract Claim

Because the possibility of irreparable harm is so great, the burden on PVHD to prove likelihood of success is correspondingly lower. *See Doe v. Kelly*, 878 F.3d at

719; *SuccessFactors, Inc. v. Softscape, Inc.*, 544 F. Supp. 2d 975, 979 (N.D. Cal. 2008) ("the required degree of irreparable harm increases as the probability of success decreases …, and vice versa") (internal citation omitted). Under this well-established principle, PVHD need not make a "great" showing that it would prevail on the merits because the irreparable and significant harm to PVHD alone is enough to compel injunctive relief. But even if it was not, PVHD is likely to prevail on its claim.

To establish a breach of contract claim, the plaintiff must establish: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff. *See, Coles v. Glaser*, 2 Cal. App. 5th 384, 391 (2016); CACI No 303.

Here, PVHD satisfies all these elements. As to the ***first*** element, there is no dispute that the Contract is valid, enforceable, and binding. It was signed by both parties in March 2015.  (Van Noll Decl., ¶4.) An addendum was later added in November 2021, when ALTERA persuaded PVHD to move to an upgraded system for which PVHD paid more than $2.2 million, but it was never implemented. (Rohde Decl., ¶11.) By its terms, the Contract required ALTERA to provide PVHD with access and use of the Software, to fix errors in the System, to comply with all applicable law, to provide professional IT support and to return PVHD's health information to it. (Van Noll Decl., ¶10.)

As to the ***third*** element, breach, ALTERA unquestionably breached the Contract.  It failed and refused to deliver the Software and technical support it promised to provide and to fix errors in the System. (Van Noll Decl., ¶¶10-31.) ALTERA failed to comply with all applicable "law and regulations," disrupted PVHD's access to its electronically stored health information and refused to return PVHD's health information to it.  It also federal law that expressly prohibits any form of "information blocking" by health IT developers like ALTERA and continues to threaten to block PVHD's access to that.  This unlawful conduct could expose ALTERA to penalties of up to $1 million per violation.  *See*, 45 C.F.R. §170.401; 42

U.S.C. §300jj-52; 42 U.S.C. §300jj-52(b).  ALTERA's breaches are admitted, beyond dispute and causing ongoing damage to PVHD. There is also no question that ALTERA repudiated the Contract by advising it would cut off all access and use of its software on April 1, 2024.  (Exhs. 3, 5.) Thus, the first and third elements are met.

As to the ***second*** element, performance, PVHD has complied fully with its contractual obligations, including timely paying ALTERA the amounts owed. PVHD paid over $10,000,000 since the Contract was executed. (Van Noll Decl., ¶5.)  It was not until July or August 2023, when PVHD discovered ALTERA failed to provide PVHD with a proper functioning System and ALTERA refused and failed to cure such its breaches, despite PVHD's repeated requests, that PVHD justifiably stopped paying ALTERA. PVHD's performance is also excused by ALTERA's conduct in restricting, limiting, frustrating and at times denying PVHD access to its health information and has refused to return that information to PVHD.  (*Id*., at ¶¶6-35.)

The Contract also has a fee dispute provision that allows PVHD to withhold payment if a good faith dispute exists and until it is resolved, which is exactly what PVHD has done while this dispute has existed and not been resolved. (Van Noll Decl., ¶10.) Further, under California law, PVHD had no obligation and was "excused" from having to pay ALTERA because of its repeated and material breaches of the Contract.

> When a party's failure to perform a contractual obligation constitutes a material breach of the contract, the other party may be discharged from its duty to perform under the contract. … Whether a partial breach of a contract is material depends on "the importance or seriousness thereof and the probability of the injured party getting substantial performance." "A material breach of one aspect of a contract generally constitutes a material breach of the whole contract.

*Brown v. Grimes*, 192 Cal. App. 4th 265, 277–78 (2011). Because the Contract is a bilateral contract that requires both parties to provide consideration, the promises of each party are "mutually dependent and concurrent."  *Rubin v. Fuchs*, 1 Cal. 3d 50, 53 (1969); *see Katemis v. Westerlind*, 120 Cal. App. 2d 537, 546 (1953) (All promises in a bilateral contract will be regarded as mutually dependent whenever it is possible so to interpret them"); Cal. Civ. Code §1437; Restatement (Second) of Contracts § 267.

To the extent ALTERA argues PVHD has had the use the System since it last paid the monthly charges assessed by ALTERA and that owes money to it, that argument is also unavailing and contrary to the Contract terms related to fee disputes. (Van Noll Decl., ¶10.) The System is minimally functional. With respect to financial services, it is at most about 30% functional. On the exporting of complete health information sets, it is at most about 20% functional. On the clinical side, functionality is erratic, with information and access is often limited and not available to the clinical staff and providers.  (Van Noll Decl., ¶31.) Where obligations are concurrently conditional and mutually dependent, as here, PVHD "is excused from its obligation to perform" because ALTERA materially breached the Contract. *Colaco v. Cavotec SA*, 25 Cal. App. 5th 1172 (2018), 1183; *Brown*, *supra,* 192 Cal. App. 4th 265, 279 (affirming order finding the parties' promises were not independent and holding that trial court did not err in finding that the breach of one party's promise excused the other party from further performance under the agreement).  Thus, the second element for breach of contract is met.

As to the final element, it is beyond dispute that PVHD has been and will continue to be significantly harmed as a result of ALTERA's breaches, especially if it is not enjoined as requested herein. (Von Noll Decl., ¶¶11-32, 38; Anaya Decl., ¶¶4-18.) This is also explained in more detail below.  As such, PVHD has satisfied all the elements and is likely to prevail on this claim to justify the issuance of the injunctive relief sought by this application.

**4.      The Balance of Hardships Weighs Sharply in PVHD's Favor**

The balance of hardships favors granting the relief sought by this application. In deciding whether to issue a preliminary injunction or TRO, the court must consider the impact the injunction may have on each party.  A preliminary injunction should issue where the harm likely to be suffered by the plaintiff outweighs the likely harm to the defendant as a result of the injunction. *Winter*, 555 U.S. at 24. The balance of hardships tips in the moving party's favor where the harm that the moving party

would suffer absent the injunction would be permanent, while the harm to the nonmoving party would be merely temporary.  *League of Wilderness Defenders/Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 765 (9th Cir. 2014).

Here, as the Court has already found, the balance of hardships weighs sharply in favor of PVHD, which will be irreparably harmed if the Court does not grant the order preserving the *status quo*.  PVHD will suffer irreparable harm if it loses access to its electronic health record and financial management System.  In contrast, Altera does not face any risk of injury. Further, according to public sources, Altera has annual revenue of about $684.9 million and employs thousands of employees throughout the world.[6]  Thus, it has extraordinary financial and other resources available to comply with the relief sought in this application and there can be no on-going harm to its business operations by the injunctive relief sought herein.

At most, preserving the *status quo* means just that: ensuring that the System that PVHD has paid $10,000,000 for remains in operation until at least September 1, 2024. No prejudice, harm or injury will result to ALTERA if it is precluded from locking PVHD out of the System. Again, ALTERA stopped providing any Managed IT Services to PVHD months ago and stopped even the pretense of trying to remedy the innumerable and grave problems with its System. (Van Noll Decl., ¶¶30-31.) PVHD is not seeking an order requiring ALTERA to resume those services, which were often futile and constituted "information blocking," but seeks to enjoin ALTERA from locking it out of the System and requiring return of its data, which should cost nothing and require little. Under such circumstances, the balance of hardships favors PVHD.

**5.**      **A Preliminary Injunction Would Be in the Public Interest**

In this case, the public interest weighs in favor of the issuance of a preliminary injunction.  Where the public's interests are particularly at stake, "special attention" should be given to the public interest factor.  *League of Wilderness Defenders/Blue*

---

[6] *See* https://www.zoominfo.com/c/altera-digital-health-inc/16156654; https://www.apollo.io/companies/Altera-Digital-Health/627535eb6db4520113174691.

*Mountains Biodiv. Project v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014). Courts frequently grant or deny relief specifically for the purpose of protecting the public interest. *See United States v. First Nat'l City Bank*, 379 U.S. 378, 383 (1965).[7]

Here, the requested injunction is necessary to safeguard several compelling public interests which cry out for and support an injunction.

- The **public's fundamental right to healthcare** and PVHD's right *and obligation* to provide essential healthcare services to the public, ensuring the safety, health, welfare, and overall well-being of the communities that it serves, including the 4,000+ inmates incarcerated in two California state prisons located in Blythe. *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009) (the "general public has an interest in the health" of state residents"); *Schweiker v. Hogan*, 457 U.S. 569, 572–73 (1982) (state public healthcare providers must "provide medical assistance" to Medicaid patients because they are the "categorically needy"); *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 18 (2020) (per curiam) ("Stemming the spread of [diseases] is unquestionably a compelling interest").[8]

- The **public's right to access healthcare records**, as mandated by both Federal and California law. *See* 45 C.F.R. § 164.524 ("[A]n individual has a right of access to inspect and obtain a copy of protected health information about the individual…."); California Patient Access to Health Records Act, Cal. Health & Saf. Code §§ 123100 ("The Legislature finds and declares that every person … possesses a concomitant **right** of access to complete information respecting his or her condition and care provided."), 123100(a) (every patient of a healthcare provider "shall be entitled to inspect patient records ….").

- It **upholds the law** by requiring **ALTERA to comply with federal statutes and regulations prohibiting** "**information blocking**." *See* 42 U.S.C. § 300jj–11(c)(5)(D); 45 C.F.R. § 170.401; *see also Henry Schein v. Cook*, 191 F. Supp. 3d 1072, 1077 (N.D. Cal. 2016) (the equities weigh in favor of injunction when it would require a party to comply with the law).

- It limits further financial losses to PVHD, a public healthcare district.

---

[7] In fact, in some cases, when the government seeks an injunction, the court may grant relief solely based on its conclusion that there is a risk of danger to the public resulting from the defendant's current or threatened actions. *See, e.g.*, *United States v. Marine Shale Processors*, 81 F.3d 1329, 1359 (5th Cir. 1996).

[8] *See also Teen Rescue v. Xavier Becerra*, No. 219CV00457JAMEFB, 2019 WL 1572934, at *2 (E.D. Cal. Apr. 11, 2019) ("California has a legitimate interest in protecting the health, safety, and welfare of vulnerable children."); *Jackson v. Davis*, No. 1:16-cv-00148-DAD-DLB-PC, 2016 WL 3640488, at *4 (E.D. Cal. July 7, 2016), report and recommendation adopted, No. 1:16-cv-00148-DAD-MJS, 2016 WL 4733294 (E.D. Cal. Sept. 12, 2016) ("it will serve the public interest for prison officials to provide what is medically necessary for an inmate's healthcare").

In sum, the four *Winter* factors have been satisfied by the evidence and the law and favor the injunctive relief sought.

**B.** **A Preliminary Injunction Requiring Altera to Return PVHD's Health Information to It Within 30 Days is Needed to Avoid Irreparable Harm**

PVHD has established sufficient grounds to support a mandatory preliminary injunction compelling ALTERA to return all of PVHD's health information to it under the *Winter* factors. The Contract requires it, the law demands it, and public interests compels it.  *See* 45 C.F.R. §170.401; 42. U.S.C. §300jj-52.

PVHD has presented overwhelming evidence to prove the nature of the irreparable and substantial harm that PVHD and the public will suffer if ALTERA is not ordered to return PVHD and its patients' health information to it.  (Van Noll Decl., ¶¶ 31–32, 37; Anaya Decl., ¶¶4-14; Bell Decl., ¶¶5-7.)  Indeed, the U.S. government recognizes this harm to be so serious, substantial, and severe that health IT developers, such as ALTERA, that refuse to return health information may be penalized $1 million for each violation.  *See* 42 U.S.C. §300jj-52(b).

In *Integrated Dynamic Sols., Inc. v. Vita Vet Labs, Inc.*, 6 Cal. App. 5th 1178 (2016), a company hired a computer software consultant to create customized software.  The consultant failed to deliver the software to the company and the company sought a mandatory injunction requiring the delivery of the software. The court granted an injunction finding: "this is one of those 'extreme cases'" warranting issuance of mandatory injunction that alters the *status quo*, and plaintiff clearly established that plaintiff was likely to prevail on merits of plaintiff's claim. *Id*. at 1184.  The court reasoned that holding important health information "hostage" to force compliance with a contract was an "extreme case" that mandated an affirmative act changing the *status quo*." *Id*.

The court in *Integrated Dynamic Sols*. also found the company was likely to prevail on its breach of contract claim and the loss of access to the data was harming the company's business operations. *Id*. at 1184–85.  Without the injunction the

company would be left "unable to make use of the software" that it has paid for, causing significant harm to its operations, while the consultant would suffer no harm. *Id*. at 1185; *see also Pillsbury Madison & Sutro v. Schectman*, 55 Cal. App. 4th 1279, 1283 (1997) (mandatory injunction requiring return of documents to plaintiff). This factor provides additional support for issuance of an injunction.

Second, PVHD has also demonstrated a reasonable likelihood of success on the merits of its claims, as explained above. (*See* Van Noll Decl.; Anaya Decl.; Rohde Decl., Roberts Decl. and Exhs. 3, 6 thereto; Bell Decl.) ALTERA has admitted it breached the Contract and its  own writings prove it is violating the law and the Contract. (Van Noll Decl., ¶¶11-22; Exhs. 3, 6.)[9] Thus, PVHD has shown a likelihood of success on its contract claim.

Third, the balance of hardships and public interest weigh in favor of the issuance of a preliminary injunction.  As explained above, where the public's interests are particularly at stake, "special attention" should be given to the public interest factor. *League of Wilderness*, 752 F.3d at 766.  Courts frequently grant or deny relief specifically for the purpose of protecting the public interest.  *See First Nat'l City Bank*, 379 U.S. at 383.  Furthermore, "[w]here the government is a party to a case in which a preliminary injunction is sought, the balance of the equities and public interest factors merge." *Christian Med. & Dental Ass'n v. Bonta*, 625 F. Supp. 3d 1018, 1027 (C.D. Cal. 2022) (citation omitted). When the government seeks an injunction, the court may grant relief to prevent harm to the public caused by the defendant's actions. *See, e.g.*, *Marine Shale Processors*, 81 F.3d at 1359.

Here, the requested injunction is necessary to safeguard several compelling public interests as set forth in the preceding section which, again, are:

- The **public's fundamental right to healthcare** and PVHD's right and obligation to provide essential healthcare services to the public, ensuring the safety, health, welfare, and overall well-being of the communities that it serves, including the 4,000+ inmates incarcerated in two California state prisons

---

[9] This Court's March 29, 2024 Temporary Restraining Order also found PVHD's evidence was sufficient to establish ALTERA breached the Contract. *See* Dkt. 11.

located in Blythe.  *See Selecky*, 586 F.3d at 1139; *Schweiker*, 457 U.S. at 572–73; *Roman Cath. Diocese*, 592 U.S. at 18.[10]

- The **public's right to access healthcare records**, as mandated by both Federal and California law. *See* 45 C.F.R. § 164.524; Cal. Health & Saf. Code §§123100, 123100(a).

- The injunction **upholds the law** by requiring **ALTERA to comply with federal statutes and regulations prohibiting** "**information blocking**."  *See* 42 U.S.C. § 300jj–11(c)(5)(D); 45 C.F.R. § 170.401; *see also Cook*, 191 F. Supp. 3d at 1077.

These compelling public interests favor the issuance of a preliminary injunction to compel ALTERA to provide within 30 days all of PVHD's health information stored on the System. Moreover, the harm to PVHD and the public (Anaya Decl., ¶¶5-14; Van Noll Decl., ¶¶ 31–32, 37) is far greater than any harm ALTERA would suffer if required to provide to PVHD health information which it is legally and contractually obligated to do.

In sum, the four *Winter* factors have been satisfied by the evidence and the law and favor a mandatory injunction for return of PVHD's health information to it.

## C.   <u>No Bond Should Be Required of PVHD</u>

The Court has discretion to waive the bond requirement for a preliminary injunction under Federal Rule of Civil Procedure 65: "The district court retains discretion 'as to the amount of security required, ***if any***.'" *Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011) (quoting *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (internal quotation marks and citations omitted) (emphasis in the original)) (finding "no error" because "district court considered the arguments and properly invoked its discretion not to have plaintiffs post a bond in this matter"); *see Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).

In **public interest** litigation, "requiring nominal bonds is perfectly proper," (*Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1126 (9th Cir. 2005)), and "[c]ourts routinely impose no bond or minimal bond in public interest ... cases." *City of South Pasadena v. Slater*, 56 F.Supp.2d 1106, 1148 (C.D. Cal. 1999).  Thus, for example, a

---

[10] *See also infra* footnote 8.

bond is not required for cases that enforce health and welfare statutes or for injunctions that protect the public's right to healthcare, safety, and well-being.  *See, e.g.*, *Pharm. Soc. of State of New York, Inc. v. New York State Dept. of Social Services*, 50 F.3d 1168, 1174–75 (2nd Cir. 1995) (exception to bond requirement to enforce state's compliance with federal Medicaid Act); *see also Marshall v. Amuso*, 571 F. Supp. 3d 412, 430 (E.D. P.A. 2021).

Bonds are also frequently waived in cases involving **non-profit organizations**, such as this one.  *See, e.g., California Indep. Sys. Operator Corp. v. Reliant Energy Servs., Inc.*, 181 F. Supp. 2d 1111, 1130 (E.D. Cal. 2001) (waiving bond because the plaintiff is "a not-for-profit public benefit corporation"); *Erisat-Eritrean Satellite Television v. Henok Tekle Gebrekidan, et al.*, No. CV241121DMGAJRX, 2024 WL 1202245, at *6 (C.D. Cal. Mar. 5, 2024) (no bond because plaintiff is non-profit.)

Here, the requested injunction is needed to safeguard several compelling public interests: to protect the public's fundamental right to healthcare and their right to access their healthcare records, as mandated by both California and Federal law; to protect PVHD's right and obligation to provide essential healthcare services to the public, ensuring the safety, health, welfare, and overall well-being of the community it serves; and to protect against inaccurate billing, which has resulted and will continue to result in the misuse and waste of public/taxpayer funds.[11]  The requested injunction ensures that ALTERA's actions do not disrupt healthcare operations and patient care, or result in financial mismanagement.  Thus, no bond should be required.

Further, a bond is not required where "there is **no realistic likelihood of harm** to the defendant from enjoining his or her conduct."  *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003); *Connecticut General Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003) ("bond amount may be zero if there is no evidence the party will suffer damages from the injunction"); *accord Warner Bros. Ent. Inc. v. Tusa*, No. 221CV05456VAPASX, 2021 WL 4815947, at *4 (C.D. Cal.

---

[11] *See infra* footnote 8.

SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFF'S APPLICATION FOR PRELIMINARY INJUNCTION
CASE NO. 5:24-CV-00666-FLA (DTBx)

Aug. 16, 2021) (no bond where there is insufficient evidence that the defendant will incur any injury because of the injunction); *Zeetogroup, LLC v. Fiorentino*, No. 19-CV-458 JLS (NLS), 2019 WL 2090007, at *7 (S.D. Cal. May 13, 2019) (same).

As explained above, there exists no reasonable likelihood that ALTERA will suffer substantial harm from the issuance of a narrowly tailored preliminary injunction that merely protects PVHD's ability to provide vital medical services to the Blythe community and protecting the public's right to healthcare.  However, should the Court find that a bond is necessary, it should be minimal, considering PVHD's status as a non-profit public entity and the compelling public interests involved, with minimal risk of harm to ALTERA, as explained above.  *See Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999) ("The district court did not err in requiring the plaintiffs to post a nominal bond of $1,000").

## V.

## CONCLUSION

Based on the foregoing, a preliminary injunction should be issued as requested in this application and no bond required of PVHD.

Dated: March 29, 2024                    GREENE & ROBERTS LLP


                                         By:*/s/ Maria C. Roberts*
                                         Maria C. Roberts
                                         Noel J. Meza
                                         Attorneys for Plaintiff
                                         Palo Verde Healthcare District