Jennifer S. Romano (SBN 195953)
  JRomano@crowell.com
CROWELL & MORING LLP
515 South Flower Street, 40th Floor
Los Angeles, CA 90071
Telephone:  213.622.4750
Facsimile:  213.622.2690

Molly A. Jones (SBN 301419)
  MoJones@crowell.com
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
Telephone:  415.986.2800
Facsimile:  415.986.2827

Attorneys for Defendant
Altera Digital Health Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PALO VERDE HEALTHCARE DISTRICT, a public entity,<br><br>Plaintiff,<br><br>v.<br><br>ALTERA DIGITAL HEALTH INC., a Delaware Corporation, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 5:24-cv-00666-FLA-DTB<br><br>Hon. Fernando L. Aenlle-Rocha<br><br>**DEFENDANT ALTERA DIGITAL HEALTH INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Date:   August 16, 2024<br>Time:  1:30 p.m.<br>Ctrm.: 6B, 6th Floor<br>Judge: Hon. Fernando L. Aenlle-Rocha<br><br>Complaint Filed: March 26, 2024<br>FAC Filed: April 24, 2024 |

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................... 9

RELEVANT PLEADINGS ..................................................................................... 10

    A.    Altera Licenses Digital Health Software To Hospitals. ...................... 10

    B.    The Agreement Between Altera And Plaintiff. .................................... 11

    C.    In 2023, Plaintiff Stopped Paying Under The Agreement, And Altera Gave Notice That It Intended To Exercise Its Right To Terminate The Agreement. ............................................................... 13

    D.    Plaintiff Filed Suit And Obtained An Injunction Requiring Altera To Continue To Provide The Software Services. ..................... 14

LEGAL STANDARD ............................................................................................. 14

ARGUMENT ........................................................................................................... 15

I.    Plaintiff's Claims Should Be Stayed Or Dismissed Because Plaintiff Agreed To Arbitrate Them. .......................................................... 15

    A.    Plaintiff Agreed To Arbitrate Its Claims Against Altera. ................... 16

    B.    The Agreement To Arbitrate Encompasses The Entire Dispute Between Plaintiff And Altera. ............................................................ 17

II.    Even If Plaintiff's Claims Were Not Subject To Mandatory Arbitration, Plaintiff Fails To Plead Facts Sufficient To State a Claim. ........................... 20

    A.    Plaintiff's Claims Are Time-Barred Under The Agreement's Contractual Limitations Provision. .................................................... 20

    B.    Plaintiff's Breach of Contract Claim Fails Because It Is Based On Stale Claims And Allegations That Contradict The Express Terms Of The Agreement. ............................................. 21

    C.    Plaintiff Does Not State A Claim Under The UCL Because This Case Involves A Contract Between Commercial Parties. ........... 22

    D.    Plaintiff Fails To State A Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing Because It Is Based On The Same Facts As The Breach of Contract Claim And Relies On Conduct Permitted Under The Agreement. ............... 23

    E.    Plaintiff Fails To State A Claim For Unjust Enrichment Because There Is No Such Independent Claim, And No Quasi-Contract Claim Can Stand When the Parties Agreed To An Express Agreement. ........................................................................................ 24

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-2-

MEMORANDUM ISO ALTERA'S MOTION TO
COMPEL ARBITRATION AND TO DISMISS FAC;
CASE NO. 5:24-CV-00666-FLA-DTB

F.    Plaintiff Fails To State A Claim For Breach Of Express Warranty Because The Parties Agreed To A Limited Express Warranty. ..........25

G.    Plaintiff Fails To State A Claim For Breach Of Implied Warranty Because The Parties Disclaimed Any Implied Warranties. .................26

H.    Plaintiff Fails To Plead A Claim For Fraud With Particularly, As Required Under Rule 9. ........................................................................26

I.    Plaintiff's Conversion Claim Fails Because It Violates The Economic Loss Rule, And Plaintiff Cannot Plausibly Plead An Exclusive Right To Access The Data, Interference With That Right, Or Resulting Damages. .......................................................................27

J.    Plaintiff Fails To State A Claim For Intentional Interference With Contractual Relations Because Plaintiff Merely Recites The Elements Without Facts. .................................................................30

III.    Plaintiff Should Not Be Granted Leave To Amend. .......................................30

CONCLUSION.........................................................................................................31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................ 15

*Astiana v. Hain Celestial Grp., Inc.*,
    783 F.3d 753 (9th Cir. 2015) ......................................................... 24

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) ........................................................................ 15

*Balen v. Holland Am. Line Inc.*,
    583 F.3d 647 (9th Cir. 2009) ......................................................... 14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................. 15, 30

*Brennan v. Opus Bank*,
    796 F.3d 1125 (9th Cir. 2015) ....................................................... 17

*Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*,
    94 Cal. App. 4th 151 (2001) .......................................................... 25

*Callen v. Resonant Inc.*,
    2023 WL 9348105 (C.D. Cal. Dec. 27, 2023) ............................... 26

*Carma Devs. (Cal.), Inc. v. Marathon Dev. Cal., Inc.*,
    2 Cal. 4th 342 (1992) ..................................................................... 21

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
    207 F.3d 1126 (9th Cir. 2000) ....................................................... 15

*Coto Settlement v. Eisenberg*,
    593 F.3d 1031 (9th Cir. 2010) ....................................................... 15

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-4-

MEMORANDUM ISO ALTERA'S MOTION TO
COMPEL ARBITRATION AND TO DISMISS FAC;
CASE NO. 5:24-CV-00666-FLA-DTB

*Daugherty v. Am. Honda Motor Co.*,
   144 Cal. App. 4th 824 (2006) ................................................................. 25

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985) ............................................................................... 16

*Fairchild v. Nat'l Home Ins. Co.*,
   17 F. App'x 631 (9th Cir. 2001) ............................................................ 19

*Fine v. Kansas City Life Ins. Co.*,
   627 F. Supp. 3d 1153 (C.D. Cal. 2022) ................................................. 28

*Fremont Indem. Co. v. Fremont Gen. Corp.*,
   148 Cal. App. 4th 97 (2007) .................................................................. 28

*Frenzel v. AliphCom*,
   76 F. Supp. 3d 999 (N.D. Cal. 2014) .................................................... 25

*G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*,
   958 F.2d 896 (9th Cir. 1992) ................................................................. 29

*Hambrecht & Quist Venture Partners v. Am. Med. Int'l., Inc.*,
   38 Cal. App. 4th 1532 (1995) ................................................................ 20

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   586 U.S. 63 (2019) ................................................................................. 17

*Hopkins & Carley, ALC v. Thomson Elite*,
   2011 WL 1327359 (N.D. Cal. Apr. 6, 2011) .......................................... 18

*In re iPhone App. Litig.*,
   844 F. Supp. 2d 1040 (N.D. Cal. 2012) ................................................. 29

*Janda v. T-Mobile USA, Inc.*,
   378 F. App'x 705 (9th Cir. 2010) .......................................................... 20

*Kim v. Tinder, Inc.*,
   2018 WL 6694923 (C.D. Cal. July 12, 2018) ........................................ 17

*Klein v. Chevron U.S.A., Inc.*,
   202 Cal. App. 4th 1342 (2012) .............................................................. 25

Crowell
& Moring LLP
ATTORNEYS AT LAW

-5-

MEMORANDUM ISO ALTERA'S MOTION TO
COMPEL ARBITRATION AND TO DISMISS FAC;
CASE NO. 5:24-CV-00666-FLA-DTB

*Klein v. Delbert Servs. Corp.*,
   2015 WL 1503427 (N.D. Cal. Apr. 1, 2015).......................................................16

*Kulesa v. PC Cleaner, Inc.*,
   2012 WL 12886844 (C.D. Cal. Oct. 12, 2012) ..................................................27

*Landucci v. State Farm Ins. Co.*,
   65 F. Supp. 3d 694 (N.D. Cal. 2014)...................................................................24

*Las Vegas Sands, Inc. v. Culinary Workers Union Loc. #226*,
   82 F. App'x 580 (9th Cir. 2003) ..........................................................................19

*Lemberg v. LuLaRoe, LLC*,
   2018 WL 6927836 (C.D. Cal. Mar. 1, 2018) ......................................................14

*Linear Tech. Corp. v. Applied Materials, Inc.*,
   152 Cal. App. 4th 115 (2007)...............................................................................23

*Mediterranean Enters., Inc. v. Ssangyong Corp.*,
   708 F.2d 1458 (9th Cir. 1983) .............................................................................18

*Misha Consulting Grp., Inc. v. Core Educ. & Consulting Sols., Inc.*,
   2013 WL 6073362 (N.D. Cal. Nov. 15, 2013)....................................................22

*Moore v. Regents of Univ. of Cal.*,
   51 Cal. 3d 120 (1990) ...........................................................................................29

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ..................................................................................................15

*Motivo Eng'g, LLC v. Black Gold Farms*,
   2022 WL 3013227 (C.D. Cal. June 27, 2022)....................................................28

*Narvasa v. U.S. Bancorp*,
   713 F. App'x 728 (9th Cir. 2018)........................................................................15

*Open Text, Inc. v. Northwell Health, Inc.*,
   2021 WL 1235254 (C.D. Cal. Feb. 19, 2021) ....................................................23

*PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*,
   150 Cal. App. 4th 384 (2007)...............................................................................29

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-6-

MEMORANDUM ISO ALTERA'S MOTION TO
COMPEL ARBITRATION AND TO DISMISS FAC;
CASE NO. 5:24-CV-00666-FLA-DTB

*Philips Med. Cap., LLC v. Med. Insights Diagnostics Ctr., Inc.*,
  471 F. Supp. 2d 1035 (N.D. Cal. 2007)........................................................30

*PowerAgent, Inc. v. U.S. District Court for N. District of Cal.*,
  210 F.3d 385 (9th Cir. 2000) ..............................................................30, 31

*Prager Univ. v. Google LLC*,
  85 Cal. App. 5th 1022 (2022)................................................................24

*Punak v. Indoor Lab, LLC*,
  2024 WL 1652624 (C.D. Cal. Mar. 28, 2024) ..................................24

*Reeves v. Hanlon*,
  33 Cal. 4th 1140 (2004)........................................................................30

*Romero v. Watkins & Shepard Trucking, Inc.*,
  2021 WL 3675074 (9th Cir. Aug. 19, 2021) ......................................16

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) ...............................................................26

*Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*,
  368 F.3d 1053 (9th Cir. 2004)..............................................................16

*Tracer Rsch. Corp. v. Nat'l Env't Serv. Co.*,
  42 F.3d 1292 (9th Cir. 1994) ...............................................................18


**Statutes**

Cal. Civ. Proc. Code § 337 .........................................................................21

Cal. Comm. Code § 2316(3)(a) ..................................................................26

Cal. Comm. Code § 2719 ............................................................................25

Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 *et seq*........................15, 16

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-7-

MEMORANDUM ISO ALTERA'S MOTION TO
COMPEL ARBITRATION AND TO DISMISS FAC;
CASE NO. 5:24-CV-00666-FLA-DTB

**Other Authorities**

45 C.F.R. Part 171 ................................................................................................ 11

45 C.F.R. § 171.205 ............................................................................................. 12

45 C.F.R. § 171.301 ............................................................................................. 12

CACI Jury Instruction No. 2201 .......................................................................... 30

Fed. R. Civ. P. 9 .................................................................................................... 26

Fed. R. Civ. P. 12 .................................................................................................. 14

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-8-

MEMORANDUM ISO ALTERA'S MOTION TO
COMPEL ARBITRATION AND TO DISMISS FAC;
CASE NO. 5:24-CV-00666-FLA-DTB

# INTRODUCTION

This is a contract dispute. In 2015, the parties entered into a Master Client Agreement under which Altera agreed to license its electronic health record and billing software to Plaintiff and to provide certain equipment and support services. In return, Plaintiff agreed to make monthly and other specified payments. The parties amended the agreement through delivery orders, including in 2021 when Plaintiff agreed to upgrade to new software (the Master Client Agreement, amendments and delivery orders are collectively referred to as the "Agreement").

In mid-2023, Plaintiff stopped paying Altera. Altera repeatedly requested payment, provided notice that it would terminate the Agreement if Plaintiff failed to pay, and cautioned Plaintiff to "make any arrangements necessary to backup, store, and continue using [the] data prior to" termination of the services. But Plaintiff did not pay Altera; instead, it ran to Court seeking an injunction requiring Altera to continue to provide access to the software and other services without payment.[1]

Altera contends that it fulfilled all obligations under the Agreement and should not be required to indefinitely provide Plaintiff access to Altera's software and professional and support services (at significant expense to Altera) *for free*. In contrast, Plaintiff contends that it should be excused from paying under the Agreement because it claims one aspect of the software no longer is performing. Despite the system's purported flaws, Plaintiff claims it should continue to have access to Altera's software and services for free for as long as it wants.

While the parties dispute whether each complied with their obligations under the Agreement, one thing is beyond dispute: the parties agreed to arbitrate all

---

[1] Contrary to Plaintiff's bald assertions, Plaintiff's FAC is not about access to data or any obligations under information blocking law. It is about Plaintiff's claim for indefinite, continued access to the data *through* Altera's proprietary software applications *enabled by Altera's professional and support services* for which Plaintiff stopped paying almost a year ago.

<u>disputes under the Agreement</u>. Other than this Court's role in enforcing or dissolving the preliminary injunction order, this Court lacks jurisdiction to decide the remainder of the dispute. This Court should thus dismiss or stay all of Plaintiff's claims pending their resolution in arbitration.

Should this Court determine that it has jurisdiction over any of Plaintiff's claims, it should nevertheless dismiss them because they are barred by the Agreement's one-year contractual limitations period, and Plaintiff otherwise fails to plead the essential elements of its claims.

**RELEVANT PLEADINGS**

**A.    Altera Licenses Digital Health Software To Hospitals.**

Plaintiff operates Palo Verde Hospital. FAC ¶ 5. Altera develops and licenses digital health software to hospitals to help them maintain their electronic health records and conduct billing operations. *Id.* ¶ 1. On March 31, 2015, the parties executed the Master Client Agreement, under which Altera agreed to license its software to Plaintiff and to provide equipment and professional and support services in exchange for Plaintiff's agreement to pay the specified fees. *Id.* ¶¶ 10-11; Ex. 1, §§ 1, 7.1.[2] On the same day, the parties executed a delivery order for the specific software and services to be provided, and they agreed it was "incorporated by reference into the [Master Client] Agreement as of the Order Date" (the "2015 Delivery Order"). Ex. 2, § 3.

In May 2016, Plaintiff's electronic health record (EHR) system went live. FAC ¶ 12. Three years later, in 2019, Plaintiff agreed to upgrade the EHR system. *Id.* ¶ 13. Two years later, in 2021, based on Plaintiff's needs, Plaintiff chose to upgrade to Altera's software solution called SunComm. *Id.* ¶ 14. On October 22, 2021, the parties negotiated and executed another Delivery Order (the "2021

---

[2] Except as otherwise noted, all exhibits are attached to the Declaration of Elliott Bryant, filed herewith.

Delivery Order") (collectively with the Master Client Agreement and 2015

Delivery Order, the "Agreement"). FAC ¶ 15; Ex. 3.

### B.    The Agreement Between Altera And Plaintiff.

The Agreement sets forth the rights and responsibilities relevant to this

dispute.

<u>Software Replacement and Upgrades</u>. The Agreement gives Altera the right,

"*at its discretion*, [to] require [Plaintiff] to replace any Software for the balance of

the then-applicable term with a reasonably comparable substitute on substantially

similar terms." Ex. 1, § 3.4 (emphasis added). The terms further provide that Altera

could require software updates "at [Plaintiff's] expense." *Id.* § 6.2.

<u>Suspension and Termination</u>. The Agreement gives Altera the right to

suspend or terminate the services for nonpayment. Altera's suspension of services

to Plaintiff was proper upon fourteen-days' notice if Plaintiff's "account is sixty

(60) days or more overdue." *Id.* § 7.7. Either party also could terminate the

Agreement for a material breach, such as nonpayment by Plaintiff, upon sixty-days'

notice of the material breach. *Id.* § 14.1.

<u>Data Maintenance</u>. The Agreement provides that it is Plaintiff's "sole

responsibility to provide for disaster recovery and business continuity with respect

to . . . data back-up." *Id.* § 8.1.3. The Agreement provides that upon termination,

Altera could *either* return *or* destroy Plaintiff's data. *Id.* § 14.2, HIPAA Business

Associate Addendum ("BAA") § 5.2 (emphasis added). The Agreement contains no

language requiring Altera to return or create copies of Plaintiff's data.[3] *See*

*generally id.*

_____

[3] Plaintiff's reference to "information blocking" in asserting that Altera must
provide access to its software *services* in perpetuity is a red herring. 45 C.F.R. Part
171 provides that a health IT developer is not allowed to interfere with access,
exchange, or use of electronic health *information* in certain circumstances. It does
not require the provision of health IT *services* when the service provider is not

-11-

<u>Warranties, Error Correction, and Limitation of Liability</u>. The Agreement contains a limited express warranty, which provides that the software "will substantially conform to the material functional descriptions in the applicable Specifications [or] . . . Documentation." *Id.* § 11.2. Plaintiff's sole remedy if the software does not conform is to seek an "Error Correction" under the Agreement by "promptly advis[ing Altera] in writing of any known *or reasonably suspected* Error within thirty (30) days of discovery." *Id.* §§ 6.1, 11.2 (emphasis added). Besides the limited express warranty, the parties agreed that Altera would provide the software and services "AS-IS," and they disclaimed all other express and implied warranties, including implied warranty of fitness for a particular purpose and "ANY WARRANTY OF UNINTERRUPTED, TIMELY, OR ERROR-FREE OPERATION OF ANY SOFTWARE OR PROVISION OF SERVICES." *Id.* § 11.3. The parties also agreed to a limitation of liability: neither party may recover special, incidental, consequential, exemplary, punitive, or other indirect damages, "INCLUDING, BUT NOT LIMITED TO, LOSS OF REVENUE OR PROFITS, REPLACEMENT COSTS OR LOST BUSINESS, EVEN IF THE PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES." *Id.* § 13.1.

<u>Arbitration and Contractual Limitations</u>. The Agreement provides that the parties must attempt to negotiate "any dispute hereunder" in good-faith, and that "[e]ach dispute that is not resolved under Section 15.1 shall be decided by binding arbitration administered by the AAA under its then-current Commercial Arbitration Rules." *Id.* §§ 15.1-15.2. Further, "no action . . . arising hereunder, may be brought

---

being paid. And, the regulation contains clear exceptions from the definition of information blocking where, among other things: (1) the health IT developer provides the electronic health *information* in a manner that complies with 45 C.F.R. § 171.301 (which Altera did on May 1 when it sent a copy of the data to Plaintiff per the Court's injunction order), or (2) where there are temporary access interruptions due to IT maintenance in compliance with 45 C.F.R. § 171.205.

by either Party against the other more than one year after the cause of action has accrued." *Id.* § 15.2.

**2021 Delivery Order Monthly Payments.** Under the 2021 Delivery Order for the SunComm upgrade, Plaintiff agreed to begin payments of the "Monthly Fee . . . for the license and support services for the Software" immediately "beginning upon Order Date and monthly thereafter for the Term." Ex. 3, Attachment 1 § 1.1(b)(3). The Order Date was October 22, 2021. *Id.* § 2, p. 91. Thus, Plaintiff's payment obligation for the SunComm upgrade, related integration services, and third-party and other hosting services began on the Order Date, and it was not contingent on completion of the upgrade. *Id.* During this time, Plaintiff was entitled to continue using the legacy EHR system. *See generally id.*

**C.    In 2023, Plaintiff Stopped Paying Under The Agreement, And Altera Gave Notice That It Intended To Exercise Its Right To Terminate The Agreement.**

Plaintiff alleges that problems began "almost immediately" after the 2016 EHR system go-live date, and they persisted from 2016 through the present. FAC ¶¶ 12-15. Plaintiff alleges the issues relate solely to billing functions, but Plaintiff does not allege that it ever gave Altera written notice of any failure to comply with the specifications in the Agreement. *Id.* ¶¶ 2, 4, 12, 17, 20, 22-28, 30-31.

In July 2023, Plaintiff stopped paying Altera. *Id.* ¶¶ 28-30; *see also* Ex. 4 at 148. Consequently, in November 2023, Altera notified Plaintiff that failure to pay the past-due fees within fourteen days would result in suspension of the services. FAC ¶ 28. When Plaintiff did not pay, in December 2023, Altera suspended support services but continued to provide software access. *Id.* On January 31, 2024, Altera notified Plaintiff that its nonpayment of licensing fees materially breached the Agreement, and, if Plaintiff did not agree to cure the breach, Altera would terminate the Agreement for cause and turn off software access on April 1, 2024. *Id.* ¶ 30; Ex. 4. The January 31 notice also stated: "Altera

strongly encourages you to make any arrangements necessary to backup, store, and continue using your data prior to the expiration of the cure period." Ex. 4 at 149.

### D.    Plaintiff Filed Suit And Obtained An Injunction Requiring Altera To Continue To Provide The Software Services.

Rather than backing up its data to use after termination of the Agreement, Plaintiff filed suit on March 26 and obtained a temporary restraining order requiring that Altera continue to provide Plaintiff software services. D.I. 1-3; D.I. 11.

Plaintiff brings nine claims:  (1) breach of contract; (2) violation of the UCL under the "unfair" prong; (3) breach of the implied covenant of good faith and fair dealing; (4) unjust enrichment; (5) breach of express warranty; (6) breach of implied warranty; (7) fraud; (8) conversion; and (9) intentional interference with contractual relations. All of the claims rely on three core allegations: (A) the EHR system was defective; (B) Altera should have fixed the legacy EHR system instead of requiring Plaintiff to upgrade systems; and (C) Altera should have provided Plaintiff a copy of its data.

On April 29, 2024, the Court issued a preliminary injunction requiring Altera to continue Plaintiff's software access for an additional 90 days despite Plaintiff's continued failure to pay. D.I. 35.

### LEGAL STANDARD

Rule 12 is the proper vehicle to move to compel arbitration based on the parties' agreement to arbitrate. *Lemberg v. LuLaRoe, LLC*, No. ED CV17-02102-AB-SHKx, 2018 WL 6927836, at *3 (C.D. Cal. Mar. 1, 2018) ("While courts may disagree as to whether a motion to compel arbitration constitutes a motion pursuant to Rules 12(b)(1), 12(b)(3), or 12(b)(6), courts generally agree that such a motion is a Rule 12(b) motion."); *Balen v. Holland Am. Line Inc.*, 583 F.3d 647, 652 (9th Cir. 2009) (affirming Rule 12(b)(3) motion as one seeking to compel arbitration).

Regarding Altera's Rule 12(b)(6) motion, dismissal is warranted where Plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its

-14-

face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to avoid dismissal. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts are not "required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Narvasa v. U.S. Bancorp*, 713 F. App'x 728, 729 (9th Cir. 2018). The Court thus may consider the Agreement and other communications that are incorporated by reference, and necessarily relied on, in the FAC, the authenticity of which is not in dispute. *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).

## ARGUMENT

### I.     Plaintiff's Claims Should Be Stayed Or Dismissed Because Plaintiff Agreed To Arbitrate Them.

Plaintiff cannot pursue its claims in this Court past the interim relief stage because Plaintiff agreed to binding arbitration. The Agreement requires Plaintiff to arbitrate all disputes thereunder, including the question of arbitrability.

The Federal Arbitration Act (FAA) codifies a strong federal policy favoring arbitration, "ensur[ing] that private arbitration agreements are enforced according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 334 (2011); 9 U.S.C. § 2 (making arbitration provisions "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract"). Section 2 of the FAA creates a heavy presumption of arbitrability, requiring courts to address arbitrability "with a healthy regard for the federal policy favoring arbitration" and to resolve "any doubt concerning the scope of arbitral issues . . . in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

On a motion to compel arbitration, this Court's inquiry is limited to determining: "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v.*

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-15-

MEMORANDUM ISO ALTERA'S MOTION TO
COMPEL ARBITRATION AND TO DISMISS FAC;
CASE NO. 5:24-CV-00666-FLA-DTB

*Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Upon such a showing, the court must order the parties to arbitration. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (FAA "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed"). The court may then stay or dismiss the court proceedings. *See* 9 U.S.C. § 3 (court "shall" stay trial of an action of arbitrable claim); *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1060 (9th Cir. 2004) (affirming dismissal rather than a stay of claims pending arbitration); *Klein v. Delbert Servs. Corp.*, No. 15-cv-00432-MEJ, 2015 WL 1503427, at *6 (N.D. Cal. Apr. 1, 2015) ("[C]ourts have discretion under 9 U.S.C. § 3 to dismiss claims that are subject to an arbitration agreement."). Altera satisfies both requirements to compel arbitration.

## A.    Plaintiff Agreed To Arbitrate Its Claims Against Altera.

To compel arbitration, a defendant must show that the parties executed an arbitration agreement by showing that the parties entered into an agreement that includes an arbitration provision. *See Romero v. Watkins & Shepard Trucking, Inc.*, No. 20-55768, 2021 WL 3675074, at *1 (9th Cir. Aug. 19, 2021).

Plaintiff concedes that it "entered into an agreement (the 'Agreement') with" Altera, and it describes the terms of the Agreement throughout the FAC. FAC ¶¶ 1, 11, 13, 33, 46. Indeed, Plaintiff's first claim is for breach of the Agreement. *Id.* ¶¶ 32-37. While Plaintiff fails to acknowledge the Agreement's arbitration provision, it cannot deny its existence. Section 15.1 requires that "[t]the Parties shall attempt in good faith to resolve any dispute hereunder," and Paragraph 15.2 provides that "[e]ach dispute that is not resolved under Section 15.1 shall be *decided by binding arbitration administered by the AAA* under its then-current Commercial Arbitration Rules . . . ." Ex. 1, §§ 15.1-15.2 (emphasis added). Altera satisfies the first requirement to compel arbitration.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-16-

MEMORANDUM ISO ALTERA'S MOTION TO
COMPEL ARBITRATION AND TO DISMISS FAC;
CASE NO. 5:24-CV-00666-FLA-DTB

**B.    The Agreement To Arbitrate Encompasses The Entire Dispute Between Plaintiff And Altera.**

**1.    The Arbitration Provision Delegates The Question Of Arbitrability To The Arbitrator.**

Once assent is established, the Court must determine whether the plaintiff's claims fall within the scope of the arbitration provision. Where, as here, the parties clearly and unmistakably delegated arbitrability questions to the arbitrator, the Court *need not* reach this inquiry. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). Indeed, when a contract delegates threshold questions of arbitrability to the arbitrator, a court *must* honor the parties' contractual intent and refer the matter to arbitration *without exception* and without making its own determinations about arbitrability. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 71 (2019).

The arbitration provision in the parties' Agreement incorporates the "then-current AAA Commercial Arbitration Rules" (Ex. 1, § 15.2), which state: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court." Request for Judicial Notice, filed herewith, Ex. 5 at R-7(a). This "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan*, 796 F.3d at 1130; *Kim v. Tinder, Inc.*, No. CV 18-03093 JFW, 2018 WL 6694923, at *3 (C.D. Cal. July 12, 2018) ("Where, as in this case, an arbitration agreement incorporates AAA Rules, a provision in the Rules delegating the question of arbitrability to the arbitrator is enforceable.").

Plaintiff's assent to the Agreement thus ends the Court's arbitrability inquiry. Whether each of Plaintiff's particular claims falls within the scope of the Agreement is a question that must be resolved by the arbitrator, not this Court.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-17-

MEMORANDUM ISO ALTERA'S MOTION TO
COMPEL ARBITRATION AND TO DISMISS FAC;
CASE NO. 5:24-CV-00666-FLA-DTB

### 2. Even If The Arbitration Provision Did Not Delegate Questions Of Arbitrability To The Arbitrator, All Of Plaintiff's Claims Must Be Arbitrated.

Even if the parties had left it for the Court to decide arbitrability, all of Plaintiff's claims fall within the parties' arbitration agreement. Plaintiff agreed to arbitrate "any dispute hereunder . . . ." Ex. 1, §§ 15.1-15.2. The arbitration provision's language is all-encompassing. *See Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983) (arbitration clauses referring to disputes "arising under the Agreement" or "hereunder" extend to cover all claims that "relat[e] to the interpretation and performance of the contract itself"); *Tracer Rsch. Corp. v. Nat'l Env't Serv. Co.*, 42 F.3d 1292 (9th Cir. 1994) (same). "*Tracer* and *Mediterranean Enterprises* suggest that 'arising under' or 'arising out of' language covers claims that require reference to the underlying contract, interpretation of the parties' agreement, or examination of performance under the contract, but not claims for wrongs that are *only indirectly related to the parties' contractual relationship*." *Hopkins & Carley, ALC v. Thomson Elite*, No. 10-cv-05806-LHK, 2011 WL 1327359, at *6-7 (N.D. Cal. Apr. 6, 2011) (emphasis added).

Here, each of Plaintiff's claims is directly related to the Agreement, requiring an interpretation of the Agreement and an examination of Altera's performance thereunder.

Breach of Contract. Plaintiff cannot dispute that its breach of contract claim is related to the Agreement, as Plaintiff seeks relief for Altera's alleged breach of the Agreement itself.

UCL; Breach of the Implied Covenant; Unjust Enrichment. In support of these three claims, Plaintiff alleges that Altera failed to provide Plaintiff "with a functioning EHR System"; refused to fix defects in the system; failed to provide support; overcharged; withdrew support services; and threatened to cut off access to

the system. FAC ¶¶ 40, 47, 52-53. These allegations go straight to Altera's performance under the Agreement. *See Las Vegas Sands, Inc. v. Culinary Workers Union Loc. #226*, 82 F. App'x 580, 584 (9th Cir. 2003) (reversing order denying arbitration of breach of implied covenant claim because it required interpretation of "the nature of the contractual relationship and what the parties expected from one another"); *Fairchild v. Nat'l Home Ins. Co.*, 17 F. App'x 631, 634 (9th Cir. 2001) (arbitration agreement applied to UCL claim where the factual allegations "are integrally related to defendants' compliance with the" terms of the warranty or contract).

Breach of Express and Implied Warranty. These claims rely on the same allegation that the EHR system Altera licensed to Plaintiff under the Agreement was "not as represented and warranted" by Altera; "did not perform as stated or promised"; and "did not measure up to [Altera's] promises." FAC ¶¶ 55, 62, 70. This is yet another way Plaintiff seeks relief for an alleged breach of the Agreement.

Fraud. Plaintiff's fraud claim is similarly based on Plaintiff's allegations regarding all of "the problems and defects in the original software" that Plaintiff purchased from Altera under the Agreement. *Id.* ¶ 75. Plaintiff alleges that Altera fraudulently led Plaintiff to agree to upgrade its software to the SunComm software. *Id.* ¶ 75. But this directly contradicts the Agreement's plain language, which permits Altera, *at its sole discretion*, to sunset older software versions and require upgrades by its customers. *See* Ex. 1, § 3.4. Plaintiff's fraud allegations require the factfinder to interpret the Agreement with respect to replacement and/or upgrade of the software, and to examine the parties' performance under these terms.

Conversion. Plaintiff alleges that it entrusted its records and data to Altera *under the Agreement*, and Altera refused to give it back (which Altera disputes). The Agreement obligates Plaintiff to maintain a copy of its own data, and grants

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-19-

MEMORANDUM ISO ALTERA'S MOTION TO
COMPEL ARBITRATION AND TO DISMISS FAC;
CASE NO. 5:24-CV-00666-FLA-DTB

Altera a license to store Plaintiff's data and to destroy it upon termination. *Id.* §§ 8.1.3, 9.2, 14.2, BAA § 5.2. And, Altera provided a copy of Plaintiff's data on May 1 per the Court's order. Whether Altera's retention of the data constitutes a conversion or mere compliance with the Agreement requires interpretation of the parties' obligations and analysis of their performance under the Agreement.

      <u>Interference with Contractual Relations</u>. Plaintiff alleges Altera interfered with certain undisclosed contracts with unidentified third parties as a result of the alleged defects in the EHR system. This is merely a repackaging of the same complaints about Altera's performance under the Agreement.

      All of Plaintiff's claims relate directly to the Agreement and are subject to the arbitration agreement. They should be dismissed or stayed pending arbitration of this dispute.

**II.  Even If Plaintiff's Claims Were Not Subject To Mandatory Arbitration, Plaintiff Fails To Plead Facts Sufficient To State a Claim.**

    **A.  Plaintiff's Claims Are Time-Barred Under The Agreement's Contractual Limitations Provision.**

      In agreeing to arbitrate its claims under the Agreement, Plaintiff also agreed to a one-year contractual limitations period, which states: "No action, regardless of form, arising hereunder, may be brought by either Party against the other more than one year after the cause of action has accrued." Ex. 1, § 15.2. "California courts accord contracting parties substantial freedom to modify the length of the statute of limitations." *Hambrecht & Quist Venture Partners v. Am. Med. Int'l., Inc.*, 38 Cal. App. 4th 1532, 1548 (1995); *Janda v. T-Mobile USA, Inc.*, 378 F. App'x 705, 709 (9th Cir. 2010) (one-year contractual limitations is enforceable).

      Except for its conversion claim, all of Plaintiff's claims arise from the core allegations that the system did not work according to the Agreement's specifications, and that Altera purportedly told Plaintiff it would need to pay for new, upgraded SunComm software. FAC ¶¶ 35, 40, 47, 52, 62, 70, 75, 77-78, 95.

But Plaintiff admits that it knew about the purported defects "almost immediately" after the May 2016 go-live date, nearly eight years before Plaintiff brought suit. *Id.* ¶ 12; D.I. 1-3. And, Plaintiff agreed to license the new SunComm software in 2021, more than two years before filing suit. *Compare id.* ¶ 15 (licensing on October 22, 2021) *with* D.I. 1-3 (file-stamped March 26, 2024). Plaintiff's claims are barred by the one-year contractual limitations provision.

### B.    Plaintiff's Breach of Contract Claim Fails Because It Is Based On Stale Claims And Allegations That Contradict The Express Terms Of The Agreement.

Plaintiff cannot maintain its breach of contract claim because it relies on stale factual allegations that contradict the Agreement's terms.

First, Plaintiff alleges that Altera breached the Agreement by failing to provide Plaintiff "with a functioning EHR system" and refusing "to fix the many defects." FAC ¶ 35. As discussed above, Plaintiff concedes it knew about these issues nearly eight years before Plaintiff brought suit. *Id.* ¶ 12. Even if the one-year contractual limitations provision was somehow inapplicable, the four-year statute for breach of contract bars this claim. Cal. Civ. Proc. Code § 337.

Second, Plaintiff cannot pursue this claim based on the allegations that Altera withdrew support services, threatened to terminate services, and did not return Plaintiff's data because they conflict with the terms of the Agreement. A plaintiff cannot assert a breach of contract based on conduct that the contract expressly allows. *Carma Devs. (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 374 (1992) ("[I]f defendants were given the right to do what they did by the express provisions of the contract there can be no breach.") (citation omitted). Here, the Agreement authorizes Altera to suspend all services for nonpayment by Plaintiff (Ex. 1, § 7.7), and upon sixty-days' notice, to terminate the Agreement altogether for Plaintiff's failure to cure the material breach (*id.* §14.1). Plaintiff admits that it stopped making payments under the Agreement. FAC ¶¶ 28-30; Ex. 4. Therefore,

Altera had a contractual right to suspend services. Ex. 1, § 7.7. As for the data, the Agreement provides that Plaintiff had an *independent* obligation to maintain its own data. *Id*. § 8.1.3. In addition, upon termination of the Agreement, and after providing a copy of the data to Plaintiff, the parties agreed that Altera could elect to destroy all confidential information. *Id.* § 14.2, BAA § 5.2. Contrary to Plaintiff's allegation that Altera refused to return Plaintiff's data, Altera's January 31, 2024 breach notice, which is incorporated by reference into the FAC and can be considered in ruling on this Motion, confirms that Altera "strongly encourage[d] [Plaintiff] to make any arrangements necessary to backup, store, and continue using your data prior to the" termination of the services. *Compare* FAC ¶ 30 *with* Ex. 4 at 2.[4] After nearly six months of providing Plaintiff free access to the software and support services because Plaintiff had stopped paying, Altera was permitted to suspend the services and terminate access to the EHR system.

Plaintiff also cannot maintain a breach of contract claim based on a theory that Altera failed to provide a "qualified" employee to support its EHR system. Plaintiff does not identify any provision in the Agreement that it relies on for this purported breach. *See Misha Consulting Grp., Inc. v. Core Educ. & Consulting Sols., Inc*., No. C-13-04262-RMW, 2013 WL 6073362, at *1 (N.D. Cal. Nov. 15, 2013) ("The complaint must identify the specific provision of the contract allegedly breached by the defendant."). The bare assertion that Altera assigned an "IT generalist" does not plausibly support a claim for breach of any obligation to Plaintiff.

### C. Plaintiff Does Not State A Claim Under The UCL Because This Case Involves A Contract Between Commercial Parties.

Plaintiff lacks statutory standing to bring a claim under the UCL. The UCL

---

[4] As confirmed by the exhibits filed with Plaintiff's own preliminary injunction briefing, Altera repeatedly reaffirmed its intention of providing Plaintiff a copy of its data. *E.g.* D.I. 14-11 at 3, 14-12 at 5.

was enacted to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services, and California courts consistently hold that non-competitor corporate plaintiffs lack standing to bring a UCL claim under the "unfairness" prong (as alleged here) based on contracts "not involving either the public in general or individual consumers who are parties to the contract." *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 135 (2007); *Open Text, Inc. v. Northwell Health, Inc.*, No. 2:19-CV-09216-SB-AS, 2021 WL 1235254, at *2 (C.D. Cal. Feb. 19, 2021) ("[A] dispute between commercial parties over their economic relationship does not give rise to a UCL claim." (citation omitted)). In *Open Text*, a software licensor sued a hospital licensee for overextension of a license, and the hospital filed a counterclaim alleging violation of the UCL. The Court dismissed the counterclaim with prejudice on the ground that (1) the parties were large corporate entities, (2) the parties were not competitors but rather had a licensor-licensee relationship, and (3) the hospital had not alleged "that any individual consumers were affected by the parties' disputed transactions." *Open Text*, 2021 WL 1235254, at *2.

As in *Open Text*, the parties here "are large corporate entities in a squabble over the use of software licensed under a contract." *Id*. Plaintiff is neither a "powerless, unwary consumer[]," nor a competitor. *See id*. And Plaintiff's UCL claim does not embrace any public interest. Rather, Plaintiff's entire case is based on its allegation that it was harmed by the defects in the EHR system's billing functions. *E.g.*, FAC ¶¶ 2, 4, 12, 17, 20, 22-28, 30-31, 40-42. Like in *Open Text*, this dispute centers on the economic relationship between two commercial parties. 2021 WL 1235254, at *2. Plaintiff cannot state a claim under the UCL.

### D. Plaintiff Fails To State A Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing Because It Is Based On The Same Facts As The Breach of Contract Claim And Relies On Conduct Permitted Under The Agreement.

Plaintiff's breach of the implied covenant claim fails because it is based on

the same conduct that allegedly constitutes a breach of the Agreement. "[W]here it is the same conduct that breaches the covenant and the contract, the breach of the covenant of good faith and fair dealing claim is superfluous and must be dismissed." *Punak v. Indoor Lab, LLC*, No. 8:23-CV-01775-DOC-KESx, 2024 WL 1652624, at *4 (C.D. Cal. Mar. 28, 2024) (dismissing implied covenant claim where the plaintiff failed to "identify any actions that Defendants took, apart from the conduct that breached the Agreement"); *see Landucci v. State Farm Ins. Co.*, 65 F. Supp. 3d 694, 716 (N.D. Cal. 2014) (citation omitted). Plaintiff's breach of contract and breach of the implied covenant claims assert the same breaches— almost verbatim. *Compare* FAC ¶ 35 *with* ¶ 47. The implied covenant claim is therefore "superfluous and must be dismissed." *See Punak*, 2024 WL 1652624, at *4.

Further, the covenant "will not be read into a contract to prohibit a party from doing that which is expressly permitted by the agreement itself." *Prager Univ. v. Google LLC*, 85 Cal. App. 5th 1022, 1039 (2022). Here, Plaintiff bases its implied covenant claim on Altera's alleged threat to cut off access to the EHR system and failure to return Plaintiff's data. FAC ¶ 47. As discussed above in Section II.B., even if true, the Agreement authorizes this conduct. No claim can stand based on conduct that was permitted under the Agreement.

**E.      Plaintiff Fails To State A Claim For Unjust Enrichment Because There Is No Such Independent Claim, And No Quasi-Contract Claim Can Stand When the Parties Agreed To An Express Agreement.**

California law does not provide for an "unjust enrichment" claim. For that reason alone, this claim should be dismissed.

Should this Court interpret Plaintiff's claim to be one based on quasi-contract seeking restitution, *see Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015), it still fails because "a quasi-contract action for unjust enrichment does not lie where, as here, express binding agreements exist and define the parties'

rights," *Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*, 94 Cal. App. 4th 151, 172 (2001). And while "a plaintiff may plead inconsistent claims that allege both the existence of an enforceable agreement and the absence of an enforceable agreement, that is not what occurred here." *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1389–90 (2012) (dismissing unjust enrichment claim where plaintiffs failed to allege that the contract is unenforceable).

Plaintiff does not contend the Agreement is unenforceable. To the contrary, in support of its unjust enrichment claim, Plaintiff alleges that it paid $10 million *under the Agreement*, and Altera failed to deliver a "functioning EHR System" as required *under the Agreement*. FAC ¶¶ 33, 51-52. Because Plaintiff's unjust enrichment claim arises *under the Agreement*, it cannot support relief under a quasi-contract theory.

**F.    Plaintiff Fails To State A Claim For Breach Of Express Warranty Because The Parties Agreed To A Limited Express Warranty.**

Plaintiff does not state an express warranty claim because the parties agreed to a limited express warranty with an exclusive remedy, and Plaintiff's allegations directly contradict the Agreement. A breach of express warranty claim sounds in contract, such that a seller may "limit its liability for defective goods by disclaiming or modifying a warranty." *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 830 (2006) (citation omitted). In California, where a remedy "'is expressly agreed to be exclusive, . . . it is the sole remedy.'" *E.g.*, *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1020 (N.D. Cal. 2014) (citing Cal. Comm. Code § 2719).

The parties agreed under the Agreement to limit the warranty to the "material functional descriptions in the applicable Specifications [or] . . . Documentation." Ex. 1, § 11.2; *see also* § 3.1 (defining "Specification," "Documentation"). The parties expressly disclaimed "ANY WARRANTY OF UNINTERRUPTED, TIMELY, OR ERROR-FREE OPERATION OF ANY SOFTWARE OR PROVISION OF SERVICES," among other things. *Id.* § 11.3. And they agreed

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-25-

MEMORANDUM ISO ALTERA'S MOTION TO
COMPEL ARBITRATION AND TO DISMISS FAC;
CASE NO. 5:24-CV-00666-FLA-DTB

that if Plaintiff notified Altera of a deviation between the Specification and the EHR system, Plaintiff's exclusive remedy is repair. *Id.* § 11.2 (referring to "Error Correction in accordance with Section 6").

Plaintiff does not allege that Altera breached the express warranty or that Plaintiff ever notified Altera of a deviation between the agreed specification and Plaintiff's EHR system. *See* FAC ¶¶ 55, 57-59. Thus, Plaintiff does not state a warranty claim.

### G.    Plaintiff Fails To State A Claim For Breach Of Implied Warranty Because The Parties Disclaimed Any Implied Warranties.

Plaintiff also fails to plead a breach of implied warranty claim because the Agreement disclaims any implied warranties. "Unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like 'as is.'" Cal. Comm. Code § 2316(3)(a).

The Agreement contains an "as-is" disclaimer in all capital letters:  "ALL SOFTWARE, EQUIPMENT, AND SERVICES ARE PROVIDED 'AS IS', AND ALLSCRIPTS EXPRESSLY DISCLAIMS ANY AND ALL OTHER WARRANTIES, EXPRESS OR IMPLIED." *See* Ex. 1, § 11.3. Because this disclaimer is in writing and conspicuous, no implied warranties were created by the Agreement.

### H.    Plaintiff Fails To Plead A Claim For Fraud With Particularly, As Required Under Rule 9.

Plaintiff fails to plead its fraud claim with particularity. "[W]here a complaint includes allegations of fraud, Federal Rule of Civil Procedure 9(b) requires more specificity including an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). "Further, a pleader must identify the individual who made the alleged representation and the content of the alleged representation." *Callen v. Resonant Inc.*, No. 2:22-cv-03403-FLA (ASx),

2023 WL 9348105, at *5 (C.D. Cal. Dec. 27, 2023) (Aenlle-Rocha, J.).

In support of its fraud claim, Plaintiff alleges that "during 2021," Altera misrepresented to Plaintiff's leadership "that the original software it had purchased needed to be completely replaced," rather than repaired. FAC ¶ 75; *see also id.* ¶¶ 13-14. Plaintiff further alleges that Altera failed to disclose that implementing the new software "would drag on for years, would never be completed," and Plaintiff would never use the new software. *Id.* at ¶ 77. These allegations do not state "who" made the representations, "when" they were made (other than sometime "during 2021"), or "what [Altera] *actually said*." *See Kulesa v. PC Cleaner, Inc.*, No. SACV-12-725-JVS (ANx), 2012 WL 12886844, at *5 (C.D. Cal. Oct. 12, 2012) (dismissing fraud claim against software company where plaintiff only "summarizes" misleading statement). These vague "fraud" allegations also contradict the Agreement, which provides that Altera "may, at its discretion" require Plaintiff to replace any software. Ex. 1, § 3.4. The parties' Agreement authorizes Altera's alleged conduct, and thus, it was not fraudulent.

Further, Plaintiff's allegation that Altera "began charging [Plaintiff] prematurely for the new SunComm system in violation of the Delivery Order" (FAC ¶ 76) is not plausible because Plaintiff agreed to make monthly payments to Altera for the SunComm software immediately upon executing the 2021 Delivery Order. *See* Ex. 3, Attachment 1 § 1.1(b)(3) ("[Plaintiff] shall pay [Altera] the Monthly Fee set forth above for the license and support services for the Software *beginning upon Order Date* and monthly thereafter for the term." (emphasis added)). Plaintiff cannot plausibly allege that Altera's request for payments that Plaintiff agreed to make is fraudulent.

**I.    Plaintiff's Conversion Claim Fails Because It Violates The Economic Loss Rule, And Plaintiff Cannot Plausibly Plead An Exclusive Right To Access The Data, Interference With That Right, Or Resulting Damages.**

Plaintiff's conversion claim should be dismissed because it runs afoul of the

economic loss rule, and Plaintiff otherwise fails to plead facts to support each element of the claim.

The economic loss rule requires a party "to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." *Fine v. Kansas City Life Ins. Co.*, 627 F. Supp. 3d 1153, 1161 (C.D. Cal. 2022). The rule precludes recovery for conversion where the duties at issue arise from contract rather than in principles of tort. *Motivo Eng'g, LLC v. Black Gold Farms*, No. 2:22-cv-01447-CAS-JCx, 2022 WL 3013227, at *4 (C.D. Cal. June 27, 2022). In *Motivo Eng'g*, the plaintiff engineering firm filed suit against a customer for payment of development costs, and the defendant counterclaimed for conversion, alleging the plaintiff withheld software, inventions, and other deliverables under the contract until defendant paid the costs. *Id.* at *1, *4. The Court held that the defendant's right of access to the deliverables arose under the Master Services Agreement, and therefore, the economic loss rule barred the defendant's conversion counterclaim.

Here, too, Plaintiff's conversion claim is based on the allegation that it had a right under the Agreement to the data in the EHR system, and Altera could not withhold it. *See* FAC ¶¶ 1, 87. Because Plaintiff's right to the data in the EHR system, and Altera's purported obligation to return it, "flowed from [the] contract," *Motivo Eng'g*, 2022 WL 3013227, at *4, Plaintiff's conversion claim is precluded by the economic loss rule.

Even if Plaintiff can overcome the economic loss rule, it still does not plead the elements of conversion: "(1) the plaintiff's ownership or right to possession of personal property; (2) the defendant's disposition of the property in a manner that is inconsistent with the plaintiff's property rights; and (3) resulting damages." *Fremont Indem. Co. v. Fremont Gen. Corp.*, 148 Cal. App. 4th 97, 119 (2007).

*First*, the purported property at issue – "certain records, data, and information

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-28-

MEMORANDUM ISO ALTERA'S MOTION TO
COMPEL ARBITRATION AND TO DISMISS FAC;
CASE NO. 5:24-CV-00666-FLA-DTB

relating to [Plaintiff's] patients" – is not "capable of exclusive possession or control," and Plaintiff has no "legitimate claim of exclusive[ity]." *G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 902–03 (9th Cir. 1992); *see In re iPhone App. Litig.*, 844 F. Supp. 2d 1040, 1075 (N.D. Cal. 2012) (dismissing conversion claim where personally identifiable information was not "capable of exclusive possession or control"). Rather, the Agreement provides that Plaintiff granted Altera a license to "reproduce, distribute, disclose, store, de-identify and otherwise modify, and . . . use" the data. Ex. 1, §§ 9.5, 14.2, BAA § 5.2. And, Plaintiff had access to the data and an obligation to "provide for disaster recovery and business continuity with respect to . . . data back-up." *Id.* § 8.1.3. Thus, Plaintiff has no "exclusive" right of possession or control over the data.

 *Second*, Plaintiff does not plausibly allege that Altera interfered with its exclusive property rights. "[A]ctual interference with [Plaintiff's] ownership or right of possession" is required. *Moore v. Regents of Univ. of Cal.*, 51 Cal. 3d 120, 136 (1990) (emphasis and citation omitted). The interference must be so serious that the plaintiff is justified in recovering the "full value of the property," "in effect forcing the defendant to buy it." 5 Witkin, Summary 11th Torts § 810 (2020). Plaintiff merely alleges that it had some interruption in access to the data in January, *see* FAC ¶ 29, and it omits that Altera "strongly encourage[d] [Plaintiff] to make any arrangements necessary to backup, store, and continue using [the] data prior to the" termination. Ex. 4 at 149. Plaintiff cannot plausibly allege that it was so deprived of the data such that Altera should in effect be forced to "buy it," since it is Altera that has been begging Plaintiff to take the data and conduct its operations without continuing to use Altera's services for free.

 *Third*, a claim "for conversion [also] requires allegations of . . . damage to plaintiff." *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*, 150 Cal. App. 4th 384, 395 (2007). Here, Plaintiff does not allege facts

showing *any* damages caused by Altera's alleged withholding of data. *See, e.g.*, Witkin § 810. Thus, Plaintiff cannot plausibly plead a claim for conversion.

### J.    Plaintiff Fails To State A Claim For Intentional Interference With Contractual Relations Because Plaintiff Merely Recites The Elements Without Facts.

To plead a claim for intentional interference with contractual relations, a plaintiff must allege: "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1148 (2004). A formulaic recitation of a claim's elements is insufficient. *Twombly*, 550 U.S. at 555.

Plaintiff baldly alleges that it had contracts and business relationships with four government agencies and "others," and Altera's actions "prevented performance or made performance more expensive or difficult." FAC ¶ 95. This merely parrots the CACI jury instruction without any facts regarding the third-party contracts at issue, what Altera knew about them, or how third-party contracts were impacted. *See* CACI No. 2201. These allegations are deficient on their face and should be dismissed. *See Philips Med. Cap., LLC v. Med. Insights Diagnostics Ctr., Inc.*, 471 F. Supp. 2d 1035, 1046 (N.D. Cal. 2007) (tortious interference claim dismissed where complaint alleges only "conclusory language that merely repeats the elements of the[] tort[]").

### III.    Plaintiff Should Not Be Granted Leave To Amend.

A plaintiff is not permitted to amend a complaint to avoid application of an arbitration agreement. *See PowerAgent, Inc. v. U.S. District Court for Northern District of California*, 210 F.3d 385 (9th Cir. 2000). "If a plaintiff could drop factual allegations in an amended complaint to circumvent a previously issued order compelling arbitration, every order compelling arbitration would become merely

1   provisional, subject to plaintiff's 'right' to amend to defeat the order." *Id.*

2       Because Plaintiff is bound by the arbitration provision and the other

3   provisions of the Agreement, it cannot amend its claims to avoid dismissal. Any

4   request for leave to amend should be denied.

5                       **CONCLUSION**

6       This case should be dismissed in its entirety, or in the alternative, stayed

7   because the parties agreed to arbitrate their claims. If the Court determines that any

8   of Plaintiff's claims evade arbitration, they should nevertheless be dismissed

9   because they are untimely, contradict the parties' Agreement, and are otherwise

10   deficient. To the extent the Court orders that one or more claims are not subject to

11   arbitration and survive a motion to dismiss, Altera requests that those remaining,

12   non-arbitrable claims be stayed pending the conclusion of arbitration.

13

14   Dated:  May 29, 2024             CROWELL & MORING LLP

15

16                     By: */s/ Jennifer S. Romano*

17                       Jennifer S. Romano
                           Molly A. Jones

18                       Attorneys for Defendant
                         Altera Digital Health Inc.

19

20

21

22

23

24

25

26

27

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-31-

MEMORANDUM ISO ALTERA'S MOTION TO
COMPEL ARBITRATION AND TO DISMISS FAC;
CASE NO. 5:24-CV-00666-FLA-DTB

1

## **<u>L.R. 11-6.2 Certificate of Compliance</u>**

2     The undersigned, counsel of record for Defendant Altera Digital Health Inc.,

3  certifies that this brief contains 6,993 words, which complies with the word limit of

4  L.R. 11-6.1.

5                                     */s/ Jennifer S. Romano*

6                                     Jennifer S. Romano

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-32-

MEMORANDUM ISO ALTERA'S MOTION TO
COMPEL ARBITRATION AND TO DISMISS FAC;
CASE NO. 5:24-CV-00666-FLA-DTB