Maria C. Roberts, SBN 137907
mroberts@greeneroberts.com
Noel J. Meza, SBN 331169
nmeza@greeneroberts.com
GREENE & ROBERTS
402 West Broadway, Suite 1025
San Diego, CA 92101
Telephone:  (619) 398-3400
Facsimile:   (619) 330-4907

Attorneys for Plaintiff
Palo Verde Healthcare District

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| PALO VERDE HEALTHCARE DISTRICT, a California public entity,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>ALTERA DIGITAL HEALTH INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>　　　　　Defendants. | Case No. 5:24-cv-00666-FLA (DTBx)<br><br>Dist. Judge:　Hon. Fernando Aenlle-Rocha<br>Mag. Judge:　Hon. David P. Bristow<br>Action Date:　March 26, 2024<br>Trial Date:　Not Set<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF PLAINTIFF PALO VERDE HEALTHCARE DISTRICT FOR AN AWARD OF ATTORNEYS' FEES IN THE AMOUNT OF $150,565.00 FOR PREVAILING ON OBTAINING PROVISIONAL EQUITABLE REMEDIES**<br><br><u>**ACCOMPANYING DOCUMENTS:**</u><br>NOTICE OF MOTION AND MOTION; DECLARATIONS OF MARIA C. ROBERTS, LAUREN S. CARTWRIGHT, NICOLAS J. ECHEVESTRE; NOEL J. MEZA, DOMINICK J. SAWAYA AND WILLIAM VAN NOLL; (PROPOSED) ORDER<br><br>Hearing Date:　July 5, 2024<br>Time:　　　　1:30 p.m.<br>Department:　6B |

# **TABLE OF CONTENTS**

I.   INTRODUCTION ...................................................................................... 1

II.  STATEMENT OF FACTS ......................................................................... 1

    A.   ALTERA and PVHD Enter Into the Agreement for Software .................... 1

    B.   The Agreement Entitles the "Prevailing Party" to Recover Attorneys' Fees for Obtaining a "Provisional Equitable Remedy" ................................ 2

    C.   ALTERA Materially Breached the Agreement by Providing Defective Software and Repeatedly Failing to Fix the EHR System ........... 3

    D.   ALTERA Engaged in Illegal "Information-Blocking" ............................... 4

    E.   PVHD is Forced to Take Legal Action to Obtain a Preliminary Injunction to Require ALTERA to Provide PVHD With Continued Access to the EHR System and to Return to PVHD All Data and Patient Health Information ........................................................................ 6

    F.   ALTERA Refused to Resolve the Issues Even *After* PVHD Obtained a TRO ...................................................................................................... 8

    G.   PVHD Obtained All of the "Provisional Equitable Remedies" Sought ....... 9

    H.   ALTERA Returned PVHD's Data to It ..................................................... 9

III. LEGAL ARGUMENT ............................................................................ 11

    A.   As the Prevailing Party in Obtaining "Provisional Equitable Remedies," PVHD is Entitled to Attorneys' Fees under the Agreement ...................... 11

        1. Section 15.2 of the Agreement Provides for Recovery of Attorneys' Fees to the Prevailing Party in Obtaining Equitable Remedies ...................... 11

        2. PVHD's Status as a "Prevailing Party" Also Aligns with PVHD's "Objectively Reasonable Expectation" .................................................. 13

    B.   PVHD Prevailed in Obtaining the Provisional Equitable Relief It Sought 14

    C.   PVHD's Attorneys' Fees are Reasonable .................................................. 19

        1. PVHD's Counsel Charged Reasonable Hourly Rates ............................. 19

        2. The Hours Expended by PVHD's Counsel Are Reasonable ................... 21

        3. The *Kerr* Factors Weigh in Favor of Finding the Fees are Reasonable .. 22

        4. PVHD's Fees Are Also Proportional to the Relief Obtained ................. 23

IV. CONCLUSION ...................................................................................... 24

# TABLE OF AUTHORITIES

## Cases

*3500 Sepulveda, LLC v. RREEF Am. Reit II Corp. BBB*
  No. 2:17-CV-08537-AFM, 2023 WL 6150271 (C.D. Cal. July 19, 2023) ...............20

*ACS Sys., Inc. v. St. Paul Fire & Marine Ins. Co.*
  147 Cal.App.4th 137 (2007).................................................................... 13, 14

*AK Futures LLC v. Smoke Tokes*
  No. 8:21-CV-01061-JVS (ADSx), 2022 WL 3574280 (C.D. Cal. Jan. 13, 2022) .....20

*Anderson v. State Farm Mut. Auto. Ins. Co.*
  270 Cal.App.2d 346 (1969)........................................................................ 13

*Bank of the W. v. Superior Ct.*
  2 Cal. 4th 1254 (1992)............................................................................. 13

*Carson v. Billings Police Dep't*
  470 F.3d 889 (9th Cir. 2006).................................................................... 20

*Carter v. Caleb Brett* LLC
  757 F.3d 866 (9th Cir. 2014).................................................................... 22

*Chalmers v. City of Los Angeles*
  796 F.2d 1205 (9th Cir. 1986)............................................................. 19, 23

*Chaudhry v. City of Los Angeles*
  751 F.3d 1096 (9th Cir. 2014)................................................................... 19

*Cohen v. Aetna Life Ins. Co.*
  2021 WL 2070205 (C.D. Cal. May 18, 2021) ............................................ 20

*Cooper Cos. v. Transcontinental Ins. Co.*
  31 Cal.App.4th 1094 (1995)...................................................................... 13

*Ford v. Hyundai Motor Am.*
  No. 8:20-CV-00890-FLA (ADSx), 2021 WL 7448507 (C.D. Cal. Oct. 5, 2021)....15

Gonzalez v. City of Maywood
  729 F.3d 1196 (9th Cir. 2013).................................................................. 19

*Gracie v. Gracie*
  217 F.3d 1060 (9th Cir. 2000)................................................................... 19

*Hensley v. Eckerhart*
  461 U.S. 424 (1983).......................................................................19, 21, 22, 23

*Higher Taste, Inc. v. City of Tacoma*
  717 F.3d 712 (9th Cir. 2013)................................................................... 19

*Hiken v. Dept of Def.*
    836 F.3d 1037 (9th Cir. 2016) ................................................................. 20

*Hillsman v. Sutter Comm. Hosp.*
    153 Cal.App.3d 743 (1984) ...................................................................... 11

*Jang v. Sagicor Life Ins. Co.*
    No. EDCV 17-1563-JGB-KKX, 2018 WL 4326463 (C.D. Cal. Sept. 10, 2018) ..... 10

*Lydo Enterprises, Inc. v. City of Las Vegas*
    745 F.2d 1211 (9th Cir. 1984) ................................................................. 15

*Masimo Corp. v. Tyco Health Care Group, L.P.*
    No. CV 0204770-MRP (AJWx), 2007 WL 5279897 (C.D. Cal. Nov. 5, 2007) ....... 21

*Oumere, LLC v. Zarpas*
    No. 821CV00224DOCJDEX, 2021 WL 4902199 (C.D. Cal. July 30, 2021) ........... 20

*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.*
    107 Cal.App.4th 516 (2003) ..................................................................... 13

*Perdue v. Kenny A. ex rel. Winn*
    559 U.S. 542 (2010) ................................................................................. 19

*Perfect 10, v. Giganews, Inc.*
    2015 WL 1746484 (C.D. Cal. 2015) ......................................................... 21

*Principal Mutual Life Ins. Co. v. Vars, Pave, McCord & Freedman*
    65 Cal.App.4th 1469 (1998) ..................................................................... 11

*R.J. Reynolds Tobacco Co. v. Cnty. of San Diego*
    529 F.Supp.3d 1147 (S.D. Cal. 2021) ...................................................... 15

*Relman Colfax PLLC*
    2021 WL 1895905 .................................................................................... 21

*Renee J. v. Superior Ct.*
    26 Cal.4th 735 (2001) .............................................................................. 13

*Safeco Ins. Co. v. Robert S.*
    26 Cal.4th 758 (2001) .............................................................................. 11

*Schwarz v. Sec. of Health & Human Servs.*
    73 F.3d 895 (9th Cir. 1995) ..................................................................... 19

*ScripsAmerica, Inc. v. Ironridge Global LLC*
    2016 WL 6871280 (C.D. Cal. Jan. 2, 2016) .............................................. 21

*Shaw v. Regents of University of California*
    58 Cal.App.4th 44 (1997) ........................................................................ 11

*Sole v. Wyner*
   551 U.S. 74 (2007) ........................................................................ 19

*United Steelworkers of Am. v. Phelps Dodge Corp.*
   896 F.2d 403 (9th Cir. 1990) ....................................................... 20

*Washington v. ViacomCBS, Inc.*
   2021 WL 6134375 (C.D. Cal., Dec. 9, 2021) ............................ 20

*Watson v. Cnty. of Riverside*
   300 F.3d 1092 (9th Cir. 2002) ..................................................... 19

**Statutes**

42 U.S.C. §300jj-11(c)(5)(D) ............................................................ 14

42 U.S.C. §300jj-52 ........................................................................... 14

42 U.S.C. §300jj-52(b) ...................................................................... 14

45 C.F.R. § 170.401 .......................................................................... 14

Cal. Civ. Code §1636 ........................................................................ 11

Cal. Civ. Code §1641 ........................................................................ 13

Cal. Civ. Code §1643 ........................................................................ 13

Cal. Civ. Code §1649 ........................................................................ 13

Cal. Civ. Code §1654 ........................................................................ 12

# I.

## INTRODUCTION

Palo Verde Healthcare District ("PVHD") moves for attorneys' fees in the amount of $150,565.00 as the prevailing party on its applications for temporary and preliminary injunctive relief.  Section 15.2 of the 2015 Master Services Agreement between Defendant Altera Digital Health Inc. ("ALTERA") and PVHD, entitles the party that prevails in obtaining equitable remedies to recover its attorneys' fees and costs.  PVHD successfully secured all of the equitable remedies and relief sought within the first 30 days of this action being filed, obtaining temporary injunctive relief on March 29, 2024, and a preliminary injunction on April 26, 2024.  This relief was granted despite ALTERA's vigorous opposition and its demand for a $1.85 million bond and $138,000 monthly payment while the preliminary injunction is in effect.

Under section 15.2 of the Agreement (drafted by ALTERA), PVHD is now entitled to recover its attorneys' fees incurred in pursuing and obtaining this critical relief.  PVHD seeks $121,515 for fees incurred in securing the temporary and preliminary injunctions and an additional $29,050 for preparing and prosecuting this fee motion.  Pursuant to the express terms of the Agreement, this motion should be granted and PVHD awarded fees totaling $150,565. (Roberts Decl. ¶35, Exhs. 15-16; Cartwright Decl. ¶3; Echevestre Decl. ¶3; Meza Decl. ¶3, Sawaya Decl. ¶3.)

# II.

## STATEMENT OF FACTS

### A.    ALTERA and PVHD Enter Into the Agreement for Software

PVHD is a California public healthcare district that operates Palo Verde Hospital, which provides critical healthcare services to the rural community of Blythe, California. (Van Noll Decl. ¶3.)

On **March 31, 2015**, PVHD and ALTERA entered into a Master Services Agreement ("Agreement") which required ALTERA to provide PVHD with an electronic health record and financial management system and related software ("EHR

System"). (Dkt. 37-1; Van Noll Decl. ¶4.)[1]  The EHR System was intended to enhance PVHD's healthcare and financial management operations. (*Id*.) The material terms of the Agreement included the following:

- ALTERA would provide PVHD with professional, technical, and support services for the implementation and operation of the EHR System and related software. (Dkt. 37-1, §6.)

- ALTERA would provide consulting and training services to PVHD relating to the EHR System, and agreed to fix any errors, defects, or issues relating to the operability or performance of the EHR System. (*Id*., §6.2.)

- As consideration, PVHD would pay ALTERA for the EHR System. (*Id*., §1.2.)

- PVHD had the right to withhold payment to ALTERA if there was a good faith dispute as to any payment until the dispute was resolved. (*Id*., §7.6.)

- ALTERA agreed and warranted that its performance under the Agreement would be in accordance with all applicable laws and regulatory requirements. (Dkt. 37-1, §11.1.)

- If the Agreement ended, ALTERA would return to PVHD all of its data and patient health information and records. (*Id*., §14.2.)

- The parties have the right to seek equitable remedies in court. (*Id*., §15.2.)

- Any party who prevailed in seeking equitable remedies was entitled to recover the attorneys' fees they incurred in obtaining that relief. (*Id*., §15.2.)

## B. The Agreement Entitles the "Prevailing Party" to Recover Attorneys' Fees for Obtaining a "Provisional Equitable Remedy"

The Agreement explicitly entitles the "prevailing party" to recover attorneys' fees if they successfully obtain any "provisional equitable remedy" against the other. (Dkt. 37-1, §15.2.)  The relevant language of the Agreement states:

> Notwithstanding anything else, **either Party may (a) seek equitable remedies from a court of competent jurisdiction and, if the disputes are urgent, seek provisional equitable remedies without following the informal dispute resolution terms of Section 15.1 …. The prevailing Party … shall be entitled to recover from the other the costs of arbitration or court proceedings and its attorneys' fees and expenses, provided that the arbitrator(s) or judge may eliminate or reduce such recovery on grounds that it is unreasonable or disproportionate to the harm suffered**. …

(Dkt. 37-1, §15.2, emphasis added; Van Noll Decl. ¶4.)

---

[1] On **April 26, 2024**, this Court directed PVHD to file under seal a complete copy of the Agreement, as well as the March 2015 Delivery Order and October 2021 Delivery Order between ALTERA and PVHD. (*See* Dkt. 34; Dkt. 37 to 37-3.)

## C.   ALTERA Materially Breached the Agreement by Providing Defective Software and Repeatedly Failing to Fix the EHR System

PVHD relies on the EHR System as a critical tool for facilitating the seamless recording, retrieval, and coordination of medical information, managing medical billing, and, most importantly, providing and ensuring safe and precise patient care. (Van Noll Decl. ¶4; Exh. 1, ¶¶4-7.) However, the EHR System at PVHD has been fraught with issues and challenges that, in 2023, PVHD discovered had caused it to suffer many millions of dollars in billing and financial losses. (Van Noll Decl. ¶5.)

In **July 2023**, PVHD's new CFO, William Van Noll, began to have concerns about potential problems with the financial management side of the EHR System. (Van Noll Decl. ¶5.) PVHD was in dire financial straits at that time and Mr. Van Noll suspected this may have been caused by problems with the EHR System. He began to ask questions of and demand answers from ALTERA. (*Id*.) As the investigation into the EHR System unfolded, it revealed serious errors, irregularities and problems. (*Id*.)

At Mr. Van Noll's request, an ALTERA employee traveled to PVHD in August 2023, analyzed the EHR System and its functionality, and described the System as one of the "worst" she had ever seen.  (Van Noll Decl., ¶6.) Other ALTERA employees later did a "deep dive" into the way ALTERA had constructed the EHR System and disclosed to PVHD that they identified errors in the way the System was built and the primary problems on the billing side of the EHR System were actually **hidden** from and could not have been discovered by PVHD.  (*Id*., ¶7.) ALTERA employees also conceded the problems with the EHR System and how it was set up were not "best practices" and had this caused PVHD millions of dollars in losses.  (*Id*., ¶8.)

In **August 2023**, after discovering and admitting how flawed the EHR System was, ALTERA promised to fix it.  (Van Noll Decl. ¶9.)  ALTERA directed PVHD to allow it to fix the EHR System so that PVHD could get cash in the door and to enable it to see how well the System could function, before deciding whether to upgrade or transition to another EHR system.  (*Id*.)

On **August 29, 2023**, ALTERA presented a memo to PVHD of steps to rectify some of the billing issues, again, to help PVHD "get cash in the door." (Van Noll Decl. ¶10.) ALTERA also agreed to fix other errors and problems with the way the System was built. (*Id*.) ALTERA assigned a new employee (Kelly Johnson) to provide "Managed IT Services" to PVHD to replace the employee who had been in that role (James O'Brien), whom ALTERA described as lacking expertise. (*Id.*)

As of **August 2023**, PVHD had paid ALTERA more than $10 million for an EHR system that was not properly functioning and had caused it many millions of dollars in losses. (Van Noll Decl., ¶11.) ALTERA was also charging PVHD millions of dollars since October 2021 for a new EHR System that ALTERA failed to deliver. (*Id*.) The decision was, thus, made in August 2023 to stop paying the $180,000/month being charged by ALTERA, until such time as the EHR System was fixed and PVHD was able to bill properly for services provided. The Agreement's fee dispute provision and California Commercial Code section 2717 allowed PVHD to withhold payment because of the good faith dispute and until the dispute resolved. (*Id*.; Dkt. 37-1, §7.6)

Beginning in **September 2023**, PVHD began having weekly and even bi-weekly calls and conferences with members of the ALTERA team assigned to address and rectify the problems with the EHR System. (Van Noll Decl. ¶12.) But, in early **October 2023**, Kelly Johnson was pulled off the team completely and her role was assigned to individuals working in India, who proved to be non-responsive and not helpful. (*Id*.) Despite ALTERA's assurances to make the promised fixes to the errors in the EHR System, no meaningful progress was made. (*Id*. at ¶13.) As the months passed, PVHD continued to experience the problems with the System it had addressed with ALTERA in July and August 2023 and *ALTERA became less and less responsive to PVHD*. (*Id*.) The longer the System failed, the more money was lost. (*Id*.)

D.  **ALTERA Engaged in Illegal "Information-Blocking"**

On **November 21, 2023**, against the backdrop of continued failures of the EHR System, ALTERA demanded payment of more than $400,000 from PVHD and

threatened it would cut off all Managed IT Services if that payment was not made by PVHD within two weeks. (Van Noll Decl. ¶14.) As PVHD continued to be crushed financially from the defective EHR System and ALTERA's failure to fix it, ALTERA simultaneously demanded huge payments that it knew PVHD could not pay and was contractually excused from paying.  (*Id*.) On **December 4, 2023**, ALTERA followed through with its threats and cut off all Managed IT Services to PVHD.  (*Id.*)

On the weekend of **January 14, 2024**, ALTERA locked PVHD out of the EHR System altogether, which prevented PVHD from accessing critical health information about its patients, being able to add patient information to the system, and tracking services provided to patients for billing purposes. (Van Noll Decl. ¶15.) This placed patient lives at risk and PVHD involved its outside counsel who communicated with an ALTERA Vice President and its in-house lawyers.  (*Id*.)  After two days with no EHR access and multiple communications, ALTERA restored PVHD's access.  (*Id*.)

On **January 31, 2024**—after ALTERA failed to make any of the promised fixes to the EHR System and after cutting off all Managed IT Services to PVHD— ALTERA's Executive VP, Elliott Bryant, wrote to PVHD, demanded payment of more than $1.33 million from PVHD, and threatened that if payment in that amount was not received within 60 days, ALTERA would terminate the Agreement and that PVHD:

> … **will cease to have any access to any Altera systems and therefore to any data stored therein** …. Altera strongly encourages you to … backup, store, and continue using your data prior to the expiration of the cure period referenced above (**at which time you will no longer have access through Altera**). (Van Noll Decl. ¶16; Exh. 2, emphasis added.)

On **February 13, 2024**, PVHD responded to the January 31, 2024 letter from ALTERA's Executive VP, Elliott Bryant, with a 10-page response that addressed the falsehoods in his letter and described point-by-point ALTERA's contract breaches and misrepresentations.  (Van Noll Decl. ¶17; Roberts Decl., ¶4; Exh. 3.)  The letter also requested that ALTERA agree not cut off PVHD's access to the EHR System and advised that if these issues were not resolved, PVHD would be forced to initiate legal action against ALTERA and to seek all relief available.  (*Id*.)

Three weeks later, on **March 5, 2024**, ALTERA's associate general counsel, Louise Pearson, responded by letter blaming PVHD for the problems with the EHR System, reiterating ALTERA's demand for payment of more than $1.33 million and threatening to cut off all access to the EHR System if payment was not made before April 1, 2024. (Van Noll Decl. ¶18; Roberts Decl., ¶5; Exh. 4.)  Notably, although Pearson's March 5, 2024 letter agreed to return all of PVHD data and patient health information stored on the EHR System, ALTERA steadfastly refused to return it. (*Id*.)

On **March 11, 2024**, PVHD's counsel responded to Ms. Pearson and, again, asked that ALTERA not follow-through with its threats to lock PVHD out of the EHR System for at least 3 more months so that PVHD could get its data returned to it and would have the time to try to set up a replacement EHR system. The letter requested that ALTERA return PVHD's electronically-stored data as soon as possible and invited ALTERA **again** to mediate the disputes it had with PVHD. (Roberts Decl. ¶6; Exh. 5.) Pearson never responded to the letter.  (Roberts Decl., ¶6.)

**E.**   **PVHD is Forced to Take Legal Action to Obtain a Preliminary Injunction to Require ALTERA to Provide PVHD With Continued Access to the EHR System and to Return to PVHD All Data and Patient Health Information**

Despite PVHD's repeated requests that ALTERA not lock PVHD out of its own EHR System and that it return PVHD's health information, ALTERA refused. (Van Noll Decl. ¶19; Roberts Decl. ¶7.)  Faced with the impending threat of having access to its EHR System terminated on April 1, 2024, PVHD had no choice but to file this lawsuit and seek an emergency injunction. (Van Noll Decl. ¶20.)

On **March 27, 2024**, four court days before ALTERA's threatened termination date, PVHD filed this lawsuit and an *ex parte* application for a temporary restraining order and preliminary injunction against ALTERA in Superior Court for the County of Riverside. (Dkt. 1-3; Roberts Decl. ¶8.)  The *ex parte* application sought an order:

1. enjoining ALTERA from removing, restricting, impeding, obstructing, or hindering PVHD's access to and use of the EHR System in place at Palo Verde Hospital;

2. enjoining ALTERA from removing, restricting, impeding, obstructing, or hindering PVHD's access to and use of any related software, software modules, content, and materials identified or referenced in the Agreement;

3. requiring ALTERA to return PVHD's EHR data to PVHD in human, readable format within 30 days. (*Id*.)

The California Superior Court set PVHD's *ex parte* application for hearing on Friday, March 29, 2024 at 8:30 a.m. in Palm Springs. (Dkt. 1-3; Roberts Decl. ¶9.) On **March 28, 2024**, the evening before the hearing on PVHD's *ex parte* application and ***after*** PVHD's counsel had traveled to Palm Springs for the hearing, ALTERA removed this action to federal court.  (Dkt. 1; Roberts Decl. 9.)

Because PVHD faced the same threat of having access to its EHR System terminated on April 1, 2024 and was at risk of losing all data and patient health information, PVHD's counsel worked throughout the night to prepare an emergency *ex parte* application for the same injunctive relief requested in the state court *ex parte* papers. (Roberts Decl. ¶10; Meza Decl. ¶3; Cartwright Decl. ¶3.)  This required work throughout the night to research legal standards and procedures for emergency relief under United States Supreme Court and Ninth Circuit authority, the Federal Rules of Civil Procedure, Central District of California Local Rules, and this Court's rules and standing order. (*Id*.)  On the morning of **March 29, 2024**, PVHD completed and filed in this Court its emergency *ex parte* application for injunctive relief against ALTERA. (*See* Dkt. 6; Roberts Decl. ¶11.)

In response to PVHD's emergency *ex parte* application, ALTERA's lawyers demanded the application be withdrawn because their offices were closed, the markets were closed, and ALTERA purportedly would not terminate access to the EHR system on April 1, 2024.  (Roberts Decl. ¶12; Exh. 6.) The letter failed to address the months of threats to terminate EHR access on April 1, 2024. (*Id*.)

A few hours after PVHD filed its emergency application, this Court granted the TRO against ALTERA, finding PVHD's evidence showed likely success on its claims and noted the relief was necessary to protect PVHD's "ability to provide essential medical and healthcare services" and "patient health." (Dkt. 11 at 4.)  The TRO

1   required ALTERA to show cause why a preliminary injunction should not issue, set a
2   briefing schedule and did not impose a bond against PVHD. (*Id*.)

3   **F.      ALTERA Refused to Resolve the Issues Even *After* PVHD Obtained a TRO**

4          Even after the TRO was issued, ALTERA refused to withdraw its threats to
5   terminate PVHD's access to the EHR System and refused to return PVHD's health
6   information data. (Roberts Decl. ¶13.)  Consequently, PVHD spent a week working
7   on a lengthy application for preliminary injunction, supported by five comprehensive
8   declarations and exhibits, which was filed April 5, 2024. (*Id*.; Meza Decl. ¶3; Sawaya
9   Decl. ¶3; Dkt. 14.)

10          On **April 12, 2024**, ALTERA's lawyer wrote to PVHD's counsel and admitted
11   PVHD had the right to its health information electronically stored on the EHR System
12   and continued access to the EHR System, but that this would come at a cost to PVHD.
13   (Roberts Decl. ¶14; Exh. 7.) This was further information blocking in violation of
14   federal law. Upon being pressed, ALTERA's lawyers advised PVHD would have to
15   pay ALTERA $138,000/month for continued access to the System, an outrageous
16   demand that was contrary to the Agreement.  (Van Noll Decl. ¶21; Dkts. 37-2, 37-3.)

17          On **April 15, 2024**, one business day after admitting PVHD was entitled to
18   continued access of the EHR System and the return of its health information data,
19   ALTERA filed 281 pages in opposition to PVHD's application, arguing that no
20   injunctive relief should be issued and forcing PVHD to continue to incur further fees
21   pursuing the injunction. (Roberts Decl., ¶15; Dkts. 18, 19.)  ALTERA resorted to
22   making inflammatory attacks against PVHD and blaming it for the problems with the
23   EHR System relying on misrepresentations, obfuscation, and inadmissible hearsay
24   from outdated websites and articles, which was refuted by ALTERA's own letters,
25   emails, recorded statements, etc.  (*Id*.)

26          Notably, even after being given an extra week to oppose PVHD's application
27   for preliminary injunction (through April 15, 2024), ALTERA failed to timely file
28   most of its opposition, including the Bryant, McCabe, Young, and Price declarations.

ALTERA also failed to attach any of the evidence referenced in the four declarations. (Roberts Decl. ¶16; Dkts. 18-19.) PVHD addressed these deficiencies in its reply and objections to evidence. (Roberts Decl. ¶17; Dkt. 21-9.)

On **April 23, 2024**—8 full days *after* its opposition was due—ALTERA filed more than 200 pages of new documents in support of its opposition under the guise of being a "Notice of Errata." (Roberts Decl., ¶18; Dkt. 22.) This was not an "errata," but an untimely attempt to remedy ALTERA's inexcusable failure to comply with Court-ordered deadlines, which required the opposition to be filed by April 15, 2024. (Roberts Decl., ¶19; Dkt. 16.) This violated the Court-ordered deadline, prejudiced and deprived PVHD of its due process rights. (*Id*.) As a result, PVHD was forced to *again* expend fees preparing an objection and motion to strike the purported "notice of errata" and new evidence submitted with it. (Roberts Decl. ¶20; Dkt. 26.)

**G.** **PVHD Obtained All of the "Provisional Equitable Remedies" Sought**

On **April 26, 2024**, the Court granted PVHD's application for preliminary injunction in its entirety. (Roberts Decl.,¶21; Dkt. 35.) PVHD prevailed on all "provisional equitable remedies" sought and the Court imposed no bond obligation on PVHD. (*Id*.) The parties were ordered to file a joint status report at least ten (10) days prior to the end of the 90 day period to address ALTERA's return of PVHD's data and PVHD's transition to a new EHR system. (*Id*.) Assuming PVHD continues to make progress, the injunction will continue for a total of two additional months. (*Id*.)

**H.** **ALTERA Returned PVHD's Data to It**

On **May 1, 2024**, ALTERA's lawyer, Robert Little, emailed PVHD's counsel Maria Roberts to advise that encrypted hard drives from ALTERA, containing PVHD's data and health information, were scheduled to be delivered to her office the following day. (Roberts Decl.,¶22; Exh. 8.) Little instructed Ms. Roberts to promptly call him as soon as she received the hard drive and a related email to confirm receipt:

> Upon receiving confirmation of signed delivery to you from FedEx, a computer engineer will send you a secure email at mroberts@greeneroberts.com providing you with the padlock combinations and PIN for the data locker to be provided to your client.

We cannot be responsible if you, your personnel, or your server blocks the secure email containing the padlock combinations and PIN. . . .

Please call me personally on the telephone at +1 (213) 393-2042 to orally confirm the padlock combinations and PIN you have received by secure email for verification, as discussed in open court before Judge Aenlle-Rocha at the April 26, 2024 hearing.

A mere email or attempted delegation to an underling to fulfill your duty by proxy to personally call me for verification is neither appropriate nor compliant for this extremely important and sensitive oral confirmation. . . .

Please call me tomorrow, May 2, 2024, after you receive the encrypted drive and the secure email containing the padlock combinations and PIN for the data locker (see below for chronology of steps). (*Id*.)

The following day, **May 2, 2024**, defense counsel received the delivery from ALTERA, but did not receive the promised email with the padlock combinations or PIN. (Roberts Decl. ¶23.) Thus, Ms. Roberts emailed attorney Little twice within 75 minutes of receipt of the hard drive to advise she had not received the email from, as Mr. Little directed would occur. (*Id*., Exhs. 9.) About 30 minutes later, an email was received from an ALTERA employee with Padlock and PIN information. (Roberts Decl. ¶24; Exh. 10.) However, in reviewing the email thread sent by the ALTERA employee, it revealed that minutes earlier, ALTERA's lawyer, Robert Little sent an email to several ALTERA employees, including 2 lawyers from its General Counsel's office, 3 attorneys from Little's firm and someone from another company, stating:

Can we please get the secure email out with the padlock combination and PIN as soon as possible to this **insane person named Maria Roberts**?

**We get the EHI to her four days early, and she tries to set us up for another information blocking claim**.

(Roberts Decl., ¶25, Exh. 10, p. 3, emphasis added.)

The fact ALTERA's lawyer would call defense counsel "insane" or accuse her of trying to "set up" a legal claim against ALTERA is not only offensive, actionable and unprofessional,[2] but it was entirely unjustified, as Maria Roberts was simply doing as Little had demanded of her in his demeaning email sent the prior day. (Roberts Decl., ¶25, Exh. 8.) Thus, she responded:

---

[2] There is no situation in which name calling is appropriate between lawyers. *Jang v. Sagicor Life Ins. Co.*, No. EDCV 17-1563-JGB-KKX, 2018 WL 4326463, at *2 (C.D. Cal. Sept. 10, 2018), *aff'd*, 854 F. App'x 870 (9th Cir. 2021).

I followed your email to a "T," and you have the audacity to respond by calling me "an insane person," who is trying to set up another information blocking claim.  Is that how you treat all opposing counsel or just female opposing counsel?  This certainly belies your claimed professionalism and exposes your true nature.  I am offended by your abusive conduct and can only hope that by making these highly offensive remarks about me to your colleagues and clients, that they are as offended by your actions as I am.

We will make the Court aware of your incivility and defamatory comments about me and will be reporting this to the State Bar.  In the future, spare me and the Court your diatribes about ethics and professionalism.

(Roberts Decl., ¶26; Exh. 11.)  Tellingly, neither Little, nor anyone at the Buchalter firm, nor ALTERA ever responded or addressed the abusive email sent. (*Id*., at ¶27.)[3]

## III.

## LEGAL ARGUMENT

**A.     As the Prevailing Party in Obtaining "Provisional Equitable Remedies," PVHD is Entitled to Attorneys' Fees under the Agreement**

### 1.     Section 15.2 of the Agreement Provides for Recovery of Attorneys' Fees to the Prevailing Party in Obtaining Equitable Remedies

Courts must interpret contracts to "determine and give effect to the mutual intention of the parties." *Safeco Ins. Co. v. Robert S.*, 26 Cal.4th 758, 763 (2001); Cal. Civ. Code §1636. Where contract language is clear and does not lead to absurd results, courts "ascertain[s] intent from the written terms and go no further."  *Shaw v. Regents of University of California*, 58 Cal.App.4th 44, 53 (1997).

A contract extends only to those things concerning which it appears the parties intended to contract. Our function is to determine what, in terms and substance, is contained in the contract, not to insert what has been omitted. We do not have the power to create for the parties a contract which they did not make and cannot insert language which one party now wishes were there.

*Principal Mutual Life Ins. Co. v. Vars, Pave, McCord & Freedman*, 65 Cal.App.4th 1469, 1478 (1998).  Thus, a covenant "will not be implied against express terms or to supply a term on a matter as to which the contract is intentionally silent."  *Hillsman v. Sutter Comm. Hosp.*, 153 Cal.App.3d 743, 754 (1984).

---

[3] Two weeks later, the Buchalter firm was replaced by the Crowell firm. (Dkt. 42.)

In accordance with these rules, section 15.2 of the Agreement here explicitly allows either party to seek equitable remedies from a court of competent jurisdiction and entitles the prevailing party, as adjudged by the court, to its attorneys' fees/costs:

> Notwithstanding anything else, **either Party may (a) seek equitable remedies from a court of competent jurisdiction and, if the disputes are urgent, seek provisional equitable remedies without following the informal dispute resolution terms of Section 15.1**…. **The prevailing Party (if any, and as adjudged by the arbitrator(s) or judge) shall be entitled to recover from the other the costs of arbitration or court proceedings and its attorneys' fees and expenses,** provided that the … judge may eliminate or reduce such recovery on grounds that it is unreasonable or disproportionate to the harm suffered.

(Van Noll Decl., ¶4; Dkt. 37-1, §15.2, emphasis added.)  The placement of the attorneys' fees provision, immediately after the language discussing certain types of actions, including those for equitable remedies, establishes that the provision applies to those specific types of disputes and to no others. (*Id.*; *see also infra* §III(A)(2).)

There is also no language in section 15.2 that limits or provides for recovery under any other circumstance, such as language commonly used, *i.e.*, "***for any legal action to enforce this agreement***" or "***in any action relating to or arising from this agreement***." Absent such language, the location, structure, and wording of section 15.2 indicate the fee provision only applies to parties who prevail in actions for equitable or provisional equitable remedies, and in litigation over ownership or unauthorized use or disclosure of confidential information or intellectual property.[4] (*Id.*)  As such, the fee provision directly applies to PVHD as the "prevailing party," in obtaining the "provisional equitable remedies" sought and secured in this action.

---

[4] To the extent ALTERA argues a different interpretation, that would render section 15.2 and the meaning of "prevailing party" ambiguous and uncertain.  Under such circumstances, the meaning of "prevailing party" should be construed against ALTERA—the drafter of the Agreement—and in favor of PVHD.  *See* Cal. Civ. Code § 1654.  If construed in PVHD's favor, the most reasonable interpretation is that the prevailing party is the one who prevails in pursuit of equitable remedies or opposing such request.  This aligns with established principles of contract construction and interpretation, favoring the non-drafting party where there is an ambiguity. *See id.*; Cal. Civ. Code § 1649.

## 2.    PVHD's Status as a "Prevailing Party" Also Aligns with PVHD's "Objectively Reasonable Expectation"

As explained, the meaning of "prevailing party" can be determined from the plain language of section 15.2, which is the party who prevails in obtaining equitable relief is entitled to recover its attorneys' fees.  But even if the meaning of "prevailing party" was uncertain or ambiguous, its meaning must be interpreted in accordance with PVHD's "objectively reasonable expectations." *See,* Cal. Civ. Code §1649 (If a term of a promise is ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it). PVHD's reasonable expectation controls even if the parties had no actual mutual understanding regarding the disputed contract provision. *See, Cooper Cos. v. Transcontinental Ins. Co.*, 31 Cal.App.4th 1094, 1104 (1995).

To determine PVHD's objectively reasonable expectation, the meaning of "prevailing party" must be examined in context with regard to its intended function in section 15.2.  *See, Bank of the W. v. Superior Ct.*, 2 Cal. 4th 1254, 1265 (1992) (contract terms must be construed in the context of the instrument as a whole, and the circumstances of the case, not "in the abstract"). Courts apply various rules of contract interpretation to make this determination (Cal Civ. Code §§1641, 1643 *et seq*.).

The "last antecedent rule" is instructive and provides that qualifying words, phrases and **clauses** in a contract are applied to words or phrases **immediately preceding** and are not to be construed as extending to or including "others more remote." *ACS Sys., Inc. v. St. Paul Fire & Marine Ins. Co.*, 147 Cal.App.4th 137, 150 (2007) (emphasis added & internal quotations omitted) (quoting *Renee J. v. Superior Ct.*, 26 Cal.4th 735, 743 (2001)(citing *People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.*, 107 Cal.App.4th 516, 530 (2003)). The last antecedent rule applies "where there exist uncertainties and ambiguities. . . .  [I]f the clear intent of the parties is opposed to the application of the rule, the rule must yield." *Anderson v. State Farm Mut. Auto. Ins. Co.*, 270 Cal.App.2d 346, 349–50 (1969).

Applying the last antecedent rule here, the sentence in section 15.2 that states:

The prevailing Party (if any, and as adjudged by the arbitrator(s) or judge) shall be entitled to recover from the other the costs of arbitration or court proceedings and its attorneys' fees and expenses

is **immediately preceded** by only two specific scenarios:

1.   Seeking equitable remedies in court.

2.   Litigating disputes concerning ownership or unauthorized use or disclosure of confidential information or intellectual property. (Dkt. 37-1, §15.2)

Per the last antecedent rule, the phrase "The prevailing Party" pertains to the ***immediately preceding*** scenarios—seeking equitable remedies and litigating specific disputes in court.  This means the entitlement to recover attorneys' fees applies to the party prevailing in these contexts and ***these contexts only***.  Under the same rule, the prevailing party clause is "not to be construed as extending to" anything other than these contexts.  *ACS Sys.*, 147 Cal. App. 4th at 150.  Even if the meaning of "prevailing party" was ambiguous (which it is not), under the last antecedent rule, "prevailing party" means the party that obtains equitable remedies, which is PVHD.

**B.**   **PVHD Prevailed in Obtaining the Provisional Equitable Relief It Sought**

Federal law strictly prohibits ALTERA, from taking any action against PVHD that constitutes "information blocking," which is defined as ***any practice*** that "interferes with, prevents, restricts or materially discourages access to electronic health information."  *See* 42 U.S.C. §300jj-11(c)(5)(D), 300jj-52; 45 C.F.R. § 170.401. "Information blocking" includes:

(1) restricting or limiting access to electronic health information needed for patient treatment/billing or transition from one system to another;

(2) substantially increasing the complexity or burden of accessing, exchanging or using electronic health information;

(3) implementing health IT that restricts access, exchange, or use of electronic information with respect to exporting information sets or in transitioning between health IT systems or leads to public fraud, waste, or abuse.

*Id.*  Not only is ALTERA prohibited from "information blocking," but such conduct is so dangerous it can result in $1 million in penalties. 42 USC §300jj-52(b).

1    PVHD's success in obtaining a TRO and preliminary injunction falls squarely

2    within the law and section 15.2 of the Agreement, entitling it to recover its attorneys'

3    fees, because it obtained a TRO and preliminary injunction, which are forms of

4    provisional equitable relief. *See, Lydo Enterprises, Inc. v. City of Las Vegas*, 745 F.2d

5    1211, 1212 (9th Cir. 1984); *R.J. Reynolds Tobacco Co. v. Cnty. of San Diego*, 529

6    F.Supp.3d 1147, 1153 (S.D. Cal. 2021) (same); *Ford v. Hyundai Motor Am.*, No.

7    8:20-CV-00890-FLA (ADSx), 2021 WL 7448507, at *28 (C.D. Cal. Oct. 5, 2021)

8    (equitable relief included injunctive relief) (Aenlle-Rocha, J.).

9    It also bears noting the injunctive relief PVHD secured was the most urgent and

10   primary relief it sought for ***months*** before filing its lawsuit and in its lawsuit: *e.g.*,

11   continued access to the EHR system until it could transition to a new system and its

12   data from ALTERA. (Roberts Decl., ¶¶28; Exhs. 3, 5, 12-14.) The operative

13   complaint sought the same relief as the applications for TRO and injunction:

14        WHEREFORE, PVHD prays for judgment against ALTERA as follows:

15             . . .

16        4.  That the Court enter an injunction that enjoins and prohibits ALTERA
            from removing, restricting, impeding, obstructing, or hindering

17          PVHD's access to the EHR System and requiring ALTERA to
            promptly provide to PVHD all of its data contained within the EHR

18          System in human, readable format. (Dkt. 1-3 at p. 8, emphasis added.)

19        Further, **for months** before this case was filed, PVHD requested ALTERA

20   withdraw its threats to cut off EHR access, return PVHD's data and mediate with

21   PVHD to avoid the cost and necessity of litigation, to no avail. (Roberts Decl., ¶29.)

22        •  On **January 15, 2024**, PVHD's counsel communicated to ALTERA
            about its EHR System access being cut-off and advising that legal action

23          would be taken if access was not restored.  (Roberts Decl., ¶29; Exh. 12,
            pp. 4-6.)

24

25        •  On **January 16, 2024**, PVHD's counsel communicated further about
            EHR System access being cut-off and advised again that if access was
            not restored, legal action would have to be taken.  (Roberts Decl., ¶29;

26          Exh. 12, pp. 3-4.)

27        •  On **January 16, 2024**, PVHD's counsel communicated with ALTERA's
            legal department, reiterated the urgency of restoring access to the EHR

28

System and suggested the parties mediate their differences.  (Roberts Decl., ¶29; Exh. 12, pp. 2-3.)

- On **February 13, 2024**, in response to a January 31, 2024 letter from ALTERA's Executive VP that threatened to permanently cut off all EHR System access and all access to PVHD's data, PVHD's counsel wrote to ALTERA, in part, stating that if the threatened termination was actually intended/taken, PVHD would be forced to take legal action to prevent it . (Roberts Decl., ¶29; Exh. 3, p. 9.)

- On **March 11, 2024**, in response to a March 5, 2024 letter from ALTERA's corporate counsel reiterating prior threats to cut off all access to the EHR System unless millions of dollars was paid to ALTERA, PVHD's counsel wrote requesting the threatened termination of EHR access be withdrawn or delayed, PVHD's data be returned and:

  o "On behalf of PVHD, we invite Altera to endeavor to resolve the financial claims and legal disputes with PVHD informally, including with the benefit of a neutral mediator in Riverside County, CA.  This should be preferable to both parties as a means of avoiding what could be protracted, contentious and costly litigation." No response was received from ALTERA.

  (Roberts Decl., ¶29; Exh. 3, p. 3.)

- On **March 15, 2024**, PVHD's counsel responded to an email from ALTERA's outside lawyer at the Buchalter firm, writing, in part:

  I really appreciate your involvement and your overture.  But, as set forth in painful detail in repeated communications from our side to yours, Altera knows the issues and concerns and, in response has given PVHD no basis to see a path forward with it. **…** [Altera] has cut off support and intermittently cut off EHR access and, in the latest letter, appears to be threatening permanent removal of all access by <u>April 1.</u> **…**

  We also need to hear back from Altera on the requests made in my March 11, 2024 letter.  That is of utmost importance, and we need to hear back from Altera on those points as soon as possible.

  In the end, we believe having a third party help us resolve the pending issues without further harm to PVHD is best. The only other option, as indicated in my last letter, is immediate and protracted litigation (good for lawyers, bad for clients) and further harm to PVHD and the community it serves.  That should be avoided, in my opinion, if at all possible.

  (Roberts Decl., ¶29; Exh. 13, p. 1.)

- When no response was received from the Buchalter lawyer for five days, PVHD's counsel wrote to him again on **March 20, 2024**:

  o Eric, I have not received a response from you to my email below and this is concerning to me. If Altera does not intend on extending the time within which my client has access to its electronic health

16

record system, I need to know that immediately. If they are going to refuse to provide all of the data in the format requested and [not] give us adequate time to confirm we have all of the data in the system, I need confirmation of that as well. It looks like we're gonna be forced to go the litigation route, which is unfortunate for all concerned.

(Roberts Decl., ¶29; Exh. 14, p. 4.)

- On **March 21, 2024**, the Buchalter lawyer responded that the email sent was caught in spam, but he would review it with Altera and respond "before the end of the day." No further response was received that day. (Roberts Decl., ¶29; Exh. 14, pp. 4-5.)

- On **March 22, 2024**, when no response was received from the Buchalter lawyer, PVHD's counsel wrote again to him:

  o Eric I did not hear from you late yesterday and have not heard from you today. What is your client's position? Again, time is of the essence. Thanks. Maria

(Roberts Decl., ¶29; Exh. 14, p. 4.)

- On **March 25, 2024**, just five days before the date ALTERA threatened to cut off PVHD's access to the EHR System, PVHD's counsel wrote to the Buchalter lawyer, pleading for a response:

  o We still have not heard from you or Altera in response to our letters dated February 13, 2024 and March 11, 2024, despite your knowledge (and Altera's) of what is at stake and that time is of the essence.

  We have been requesting responses from Altera for more than a month on crucial issues. Of particular concern, Altera's threat to potentially cut off PVHD's access to its entire electronic health record system on April 1, 2024 and its refusal to date to provide to PVHD all of the patient and other data in the electronic health record system and to do so in human, readable format.

  If Altera is simply refusing to respond to our communications directly or through your office and plans to eliminate all PVHD access to the electronic health record system on April 1, 2024, can you please extend us the courtesy of confirming that today in writing? Likewise, if Altera is refusing to timely and in a proper format provide data contained in the EHR system to PVHD, we would ask that you kindly confirm that in writing today as well.

  Unfortunately, because of Altera's conduct and its failure to respond to our letters, our client has no choice but to initiate legal action against Altera this week and it is imperative that we have a clear record for the Court of what was been requested of Altera and its response or failure to respond.

(Roberts Decl., ¶29; Exh. 14, pp. 2-3.)

- On **March 25, 2024**, the Buchalter lawyer emailed PVHD's counsel insisting he had been responding by his prior emails indicating he was conferring with his client. (Roberts Decl., ¶29; Exh. 14, p. 2.)

- On **March 26, 2024**, just four court days before the date ALTERA was to terminate all of PVHD's access to the EHR System, PVHD's counsel sent one last email to the Buchalter lawyer, writing in part:

   o Thank you for your response/nonresponse on behalf of Altera and for confirming its position remains the same:  that it intends to fulfill its threat to lock PVHD out of its electronic health record and finance system on April 1, 2024, unless PVHD pays millions to Altera.  **. . .**

   With Altera's April 1, 2024 deadline looming and every indication from you that Altera will take the threatened action, PVHD has no alternative but to seek court intervention to prevent the irreparable harm that PVHD, it patients and the Blythe community will suffer if Altera carries out its threat to cut off PVHD's access to all of its patient health and billing information, while refusing to provide that data to PVHD.

No response was ever received to this email. (Roberts Decl., ¶29; Exh. 14, p. 1.)

As is clear, PVHD was forced to initiate this action and pursue injunctive relief to avoid the doomsday consequences of ALTERA's months-long threats to terminate EHR System access without return of PVHD's electronically-stored data. (Van Noll Decl., ¶20.) ALTERA had every opportunity to avoid this litigation by simply agreeing to return PVHD's data to it and allow PVHD's access to the EHR System long enough for it to set up a new system. (Roberts Decl., ¶30.) ALTERA also was invited to mediate with PVHD but refused. (*Id*.) This left litigation as the only option.

It was not until after this lawsuit was filed, the TRO issued, PVHD's brief for a preliminary injunction was filed, and a complaint made about ALTERA with the OIG for Dept. of Health & Human Services for its information blocking, that ALTERA, through an email sent by its lawyers, conceded PVHD was entitled to relief sought:

   Concerning the return of PVHD's information, we are happy to provide the data stored on the EHR system in a standard electronic format (e.g. a flat file on a hard drive).  **. . .**  It will likely take about a week to download everything and get it to you.  **. . .**

   PVHD's Proposed Order also asks for PVHD's access to the software/system for five months. Altera can continue to provide PVHD access for this period provided that PVHD agrees to cover associated costs, **. . .**  We look forward to your thoughts.

(Roberts Decl., ¶31; Exh. 7.) This email proves the fees PVHD incurred for pursuit of injunctive relief and even this motion could have been avoided.  (Meza Decl., ¶4.)

1  Fortunately, PVHD's success in obtaining this injunctive relief obviated the

2  need for further litigation on the "provisional equitable remedies," thus entitling it

3  under the Agreement to recover its related fees and costs.  *See Watson v. Cnty. of*

4  *Riverside*, 300 F.3d 1092, 1096 (9th Cir. 2002)(affirming attorneys' fees to plaintiff

5  who prevailed on preliminary injunction where permanent injunctive relief "**was**

6  **rendered <u>moot</u>** … **after the preliminary injunction had done its job**").[5]

7  **C.    PVHD's Attorneys' Fees are Reasonable**

8       **1.    <u>PVHD's Counsel Charged Reasonable Hourly Rates</u>**

9  When district courts are required to determine whether attorneys' fees are

10 reasonable they generally begin by calculating the "lodestar" amount, which is the

11 product of multiplying the number of hours reasonably expended on the litigation by a

12 reasonable hourly fee. *See, Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Perdue v.*

13 *Kenny A. ex rel. Winn*, 559 U.S. 542, 546 (2010); *Gracie v. Gracie*, 217 F.3d 1060,

14 1070 (9th Cir. 2000).  The hours reasonably expended include time spent conducting

15 research, drafting and revising motions, attending hearings.  *Hensley*, 461 US at 435.

16 To establish a reasonable hourly rate, courts are guided by the rate in the

17 community "for similar work performed by attorneys of comparable skill, experience,

18 and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1211 (9th Cir. 1986);

19 *See, Gonzalez v. City of Maywood*, 729 F.3d 1196, 1200 (9th Cir. 2013); *Chaudhry v.*

20 *City of Los Angeles*, 751 F.3d 1096, 1110 (9th Cir. 2014). The relevant community is

21 the community in which the court sits.  *See Schwarz v. Sec. of Health & Human*

22 *Servs.*, 73 F.3d 895, 906 (9th Cir. 1995). Courts also considers experience, reputation,

23

24 [5] Under Ninth Circuit authority, PVHD is the "prevailing party" entitled to recover its
   fees for obtaining a preliminary injunction because securing that relief mooted claims
25 for further injunctive relief on the same issue. *See Watson*, 300 F.3d at 1096; *see also
   Higher Taste, Inc. v. City of Tacoma*, 717 F.3d 712, 715 (9th Cir. 2013) ("[W]hen a
26 plaintiff wins a preliminary injunction and the case is rendered moot before final
   judgment, either by the passage of time or other circumstances beyond the parties'
27 control, the plaintiff is a prevailing party eligible for a fee award."). In addition, there
   is no risk here that the preliminary injunction would be "reversed, dissolved, or
28 otherwise undone by the final decision in the same case" (see *Sole v. Wyner*, 551 U.S.
   74, 83 (2007)), reinforcing the *finality* of the injunctive relief obtained by PVHD. All
   this further confirms PVHD's status as the prevailing party.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PVHD'S MOTION FOR ATTORNEYS' FEES
CASE NO. 5:24-CV-00666-FLA (DTBx)

and ability of attorneys; outcome of the proceedings; customary fees; and novelty or difficulty of the issues presented. *Hiken v. Dept of Def.*, 836 F.3d 1037, 1044 (9th Cir. 2016). That a lawyer charges a particular hourly rate, and gets it, reflects the market rate because the lawyer and clients are part of the market. *Carson v. Billings Police Dep't*, 470 F.3d 889, 892 (9th Cir. 2006). Rate determinations in other cases are evidence of "the prevailing market rate, particularly those setting a rate for the [movant's] attorney." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

Here, PVHD is represented by Greene & Roberts, primarily by attorneys Maria Roberts and Noel Meza.  The hourly rate for lead counsel, Maria Roberts, is $750/hour, which is reasonable for a partner with nearly 36 years of experience who has tried more than 50 cases to verdict and/or judgment. She developed, coordinated, and executed the litigation strategy.  Ms. Roberts was assisted by 3 attorneys with rates of $650/hour: Lauren Cartwright with 35 years of litigation experience; Nicholas Echevestre with 13 years of litigation experience; and Noel Meza almost 4 years of litigation experience. Newer attorney Dominick Sawaya's rate is $400/hour. (Roberts Decl. ¶32; Cartwright Decl. ¶3; Echevestre Decl. ¶3; Meza Decl. ¶3; Sawaya Decl. ¶3.)

Hourly rates ranging from $400 to $750 are, as a matter of law, reasonable in the Central District of California. *See, e.g.*, *Cohen v. Aetna Life Ins. Co.*, 2021 WL 2070205, at *6 (C.D. Cal. May 18, 2021) ($750/hour reasonable for partner); *Oumere, LLC v. Zarpas*, No. 821CV00224DOCJDEX, 2021 WL 4902199, at *2 (C.D. Cal. July 30, 2021) (same); *AK Futures LLC v. Smoke Tokes*, No. 8:21-CV-01061-JVS (ADSx), 2022 WL 3574280, at *2 (C.D. Cal. Jan. 13, 2022) (hourly rates of $1,137.50 for experienced counsel, $962.50 for 11-year partner, $809.38 for 7-year associate, and $590.63 for 2-year associates approved); *3500 Sepulveda, LLC v. RREEF Am. Reit II Corp. BBB*, No. 2:17-CV-08537-AFM, 2023 WL 6150271, at *6 (C.D. Cal. July 19, 2023) (approving $746 to $950 for partners, $789 to $860 for counsel, $222 to $771 for associates); *Washington v. ViacomCBS, Inc.*, 2021 WL 6134375, at *5 (C.D. Cal., Dec. 9, 2021) (approving rates of $1,000 for partner/$745 for associate); *Relman Colfax*

20

*PLLC*, 2021 WL 1895905, at *4-5 (approving rates up to $1,130/hour); *ScripsAmerica, Inc. v. Ironridge Global LLC*, 2016 WL 6871280, at *4-5 (C.D. Cal. Jan. 2, 2016) (approving partner rate of $950 and associate rate of $700); *Perfect 10, v. Giganews, Inc.*, 2015 WL 1746484, at *15, *20 (C.D. Cal. 2015) ($350-$690/hour for associates in L.A. in 2015), *aff'd*, 847 F.3d 657 (9th Cir. 2017); *Masimo Corp. v. Tyco Health Care Group, L.P.*, No. CV 0204770-MRP (AJWx), 2007 WL 5279897 (C.D. Cal. Nov. 5, 2007)(rate of $1,002.96 is reasonable for attorney with valuable skill set). The billing rates sought by PVHD for work by Greene & Roberts are beyond reproach and should be approved for use in the lodestar calculation.

**2.     The Hours Expended by PVHD's Counsel Are Reasonable**

In determining reasonableness, the Ninth Circuit emphasizes that counsel "is not required to record in great detail how each minute of his time was expended," but rather to provide enough evidence to show "the claimed hours were reasonably expended." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  Here, PVHD's counsel diligently and efficiently managed and prosecuted the litigation and requests for injunctive relief, engaged in extensive research and briefing, conducted numerous witness interviews, prepared lengthy declarations, responded to late and improper filings by ALTERA, attended hearings out of town in both Palm Springs and Los Angeles, obtained all of the injunctive relief sought, and prepared and prosecuted the instant fee motion. (Roberts Decl. ¶¶33; Cartwright Decl. ¶3; Echevestre Decl. ¶3; Meza Decl. ¶3; Sawaya Decl. ¶3.)  The total hours sought for all of this work is 222.6 hours, broken down as follows: Maria Roberts: 95.5 hours; Lauren Cartwright: 7.9 hours; Nicolas Echeveste: 11.4 hours; Noel Meza: 93.1 hours; Dominick Sawaya: 14.7 hours. (*Id*.)

As required by section 7(e) of the Court's Standing Order, the detailed billing summaries in table form of the hours worked by and billing rates of each attorney demonstrates that the time spent was essential and reasonable to prevail on and secure the TRO and preliminary injunction in this case.  (Roberts Decl. ¶34; Exhs. 15-16.) Thus, the time expended by PVHD's counsel is reasonable.

**3.    The *Kerr* Factors Weigh in Favor of Finding the Fees are Reasonable**

Although the lodestar is presumptively reasonable, courts may consider some or all of the *Kerr* factors in determining attorney fee awards. *See Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975); *Carter v. Caleb Brett* LLC, 757 F.3d 866, 869 (9th Cir. 2014). The relevant factors include: the amount involved and the results obtained; the time and labor required; the skill requisite to perform the legal service properly; the experience, reputation, and ability of the attorneys; the novelty and difficulty of the questions involved; time limitations imposed; and the customary fee paid to attorneys in this district.  As shown in the detailed billing summaries submitted to the court and Ms. Roberts' declaration, each of these factors weighs in favor of the fees sought in this case, with two factors being more notable.

"[T]he most critical factor" to an award of attorneys' fees "is the degree of success obtained."  *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983). This case involves is high stakes litigation. PVHD achieved **complete success** in securing "provisional equitable relief" and did so efficiently and almost immediately after the case was filed. Such success shows a lodestar award of attorneys' fees is reasonable.  *See id*. at 429–30.

Moreover, all of the fees sought relate to work directed at seeking and obtaining "provisional equitable relief." (*See* Roberts Decl. ¶33; Cartwright Decl. ¶3; Echevestre Decl. ¶3; Meza Decl. ¶3; Sawaya Decl. ¶3.)  PVHD's tables of work sorted based on attorney and on the task performed, also demonstrates the fees sought were incurred in connection with seeking the TRO and preliminary injunction and preparing and prosecuting this motion.  (Roberts Decl., ¶34; Exhs. 15-16.)  This work was not just reasonable and justified, it was imperative given that ALTERA had repeatedly threatened to terminate PVHD's access to the EHR System and refused to return to PVHD its data and patient health information.  (Van Noll. Decl. ¶20.)  Accordingly, this Court should award the full fees sought by PVHD.

/ / /

/ / /

### 4.    **PVHD's Fees Are Also Proportional to the Relief Obtained**

Again, the Ninth Circuit has repeatedly affirmed that "the most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Hensley*, 461 U.S. at 436. Once again, PVHD achieved all equitable relief sought through the TRO and preliminary injunction, highlighting the proportionality and reasonableness of the attorneys' fees relative to the success achieved. The relief obtained was critically important and was the only available means for ensuring PVHD had continued access to the EHR system and return of its data. This safeguarded its ability to provide and the public's right to be provided with healthcare services and to have access to their patient health information. This outcome resulted from the vigorous and proactive efforts of PVHD's counsel, against ALTERA's strenuous opposition.

ALTERA's refusal to stipulate to the injunctive relief sought and its vigorous opposition to that relief even though the law compels it; its failure to abide by court-ordered deadlines and resulting delays; and its attempt to coerce millions of dollars from PVHD in exchange for ending its unlawful information blocking, forced PVHD to expend considerable fees and resources to protect its interests and those of its patients. This also makes clear the reasonableness of PVHD's attorneys' fees. Indeed, in the Ninth Circuit "when the defendant's conduct has unnecessarily prolonged litigation, the hours expended by the plaintiff's attorney may be deemed reasonable." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1215 (9th Cir. 1986).

ALTERA's tactics prolonged and compounded the litigation and complexity of PVHD's legal efforts. Again, PVHD sought the same relief it sought in its *ex parte* application **over and over and over again**. But ALTERA and its counsel refused, only to concede months later. This constitutes textbook bad faith litigation tactics.

/ / /

/ / /

/ / /

/ / /

**IV.**

**CONCLUSION**

The attorneys' fees sought by PVHD are both reasonable and justified.  The rates are consistent with prevailing market rates for similar legal services in the community. The hours expended were necessary and directly related to the "provisional equitable relief" obtained and were a direct result of the bad faith conduct of ALTERA and its counsel, which further necessitated the vigorous efforts of PVHD's counsel.  Based on the foregoing, the Court should award the full attorneys' fees of $150,565 incurred related to the pursuit of the injunctive relief obtained and in pursuing this motion.  Based on the foregoing, this motion should be granted and attorneys' fee in the amount of $150,565 should be awarded to PVHD for successfully obtaining "provisional equitable relief" under the Agreement.

Dated: May 29, 2024                          GREENE & ROBERTS LLP

                                             By:/s/ Maria C. Roberts
                                                Maria C. Roberts
                                                Noel J. Meza
                                                Attorneys for Plaintiff